1  Michael G. Marderosian, No. 077296
   Heather S. Cohen, No. 263093
2  MARDEROSIAN & COHEN
   1260 Fulton Mall
3  Fresno, CA 93721
   Telephone: (559) 441-7991
4  Facsimile: (559) 441-8170

5  Virginia Gennaro, No. 138877
   City Attorney
6  CITY OF BAKERSFIELD
   1501 Truxtun Avenue
7  Bakersfield, CA 93301
   Telephone: (661) 326-3721
8  Facsimile: (661) 852-2020

9  Attorneys for: Defendants CITY OF BAKERSFIELD, OFFICER VERION COLEMAN (sued
                  herein as OFFICER COLEMAN) and OFFICER ANTHONY McCARTHY (sued
10                herein as OFFICER McCARTHY)

11

12                        UNITED STATES DISTRICT COURT

13                     EASTERN DISTRICT / FRESNO DIVISION

14  KENT WILLIAMS,                          )  Case No. 1:14-CV-01955-JLT
                                            )
15                 Plaintiff,               )  **DEFENDANTS' MEMORANDUM OF**
                                            )  **POINTS AND AUTHORITIES IN**
16            v.                            )  **SUPPORT OF THEIR MOTION FOR**
                                            )  **SUMMARY JUDGMENT OR IN THE**
17  CITY OF BAKERSFIELD, OFFICER            )  **ALTERNATIVE, PARTIAL SUMMARY**
    COLEMAN, OFFICER McCARTHY,              )  **JUDGMENT**
18  and DOES 1 to 100, inclusive,           )
                                            )  **DATE: February 13, 2017**
19                 Defendants.              )  **TIME: 9:30 a.m.**
                                            )  **LOCATION:**
20                                          )  **510 19th Street, Bakersfield, CA**
                                            )  **JUDGE: Hon. Jennifer L. Thurston**
21                                          )
                                            )  *Trial Date: May 2, 2017*
22  _____ )

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

PROCEDURAL HISTORY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

CERTIFICATION OF MEET AND CONFER. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

LEGAL ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    A.    SUMMARY JUDGMENT IS APPROPRIATE WHERE
           THERE ARE NO GENUINE ISSUES OF MATERIAL FACT. . . . . . . . . . . . . . 8

    B.    DEFENDANTS ARE ENTITLED TO JUDGMENT AS A
           MATTER OF LAW ON PLAINTIFF'S FIRST CAUSE OF
           ACTION FOR ARREST, SEARCH AND SEIZURE IN
           VIOLATION OF THE FOURTH AMENDMENT, PURSUANT
           TO 42 U.S. U.S.C. SECTIONS 1983 and 1988. . . . . . . . . . . . . . . . . . . . . . . . . 9

          1.    The Individually Named Officers Are Not Liable
               For Violation of Plaintiff's Fourth Amendment Rights. . . . . . . . . . . . . . 9

               a.    The Defendants Are Not Liable For A Fourth
                     Amendment Violation As A Result of their Initial
                     Investigation and "Detention" Of Plaintiff. . . . . . . . . . . . . . . . . 9

               b.    The Defendants Are Not Liable For A Fourth
                     Amendment Violation As A Result of Their
                     Arrest of Plaintiff. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

               c.    The Search of the Plaintiff Did Not Violate Fourth
                     Amendment Rights. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

               d.    Defendant McCarthy Cannot Be Liable For Arresting
                     Plaintiff As He Was Not Present When the Plaintiff
                     Was Arrested. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

               e.    The Plaintiff Fraudulently Procured His Concealed
                     Weapons Permit and Should Not Be Permitted
                     To Seek Relief For Violation of His Fourth
                     Amendment Rights. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

               f.    The Individually Named Defendants Are
                     Entitled to Qualified Immunity. . . . . . . . . . . . . . . . . . . . . . . . . 13

                   1.    Defendants Are Entitled To Qualified Immunity
                     Regarding The "Search And Seizure of Plaintiff". . . . . . . 14

                   2.    Defendants Are Entitled to Qualified Immunity
                     Regarding the Arrest of the Plaintiff. . . . . . . . . . . . . . . . 14

MARDEROSIAN & COHEN
1260 FULTON MALL
FRESNO, CA 93721

i

2. There Is No Evidence To Support Plaintiff's
*Monell* Claim against the City of Bakersfield. . . . . . . . . . . . . . . . . . . 15

C.   THE DEFENDANTS ARE ENTITLED TO JUDGMENT
AS A MATTER OF LAW AS TO PLAINTIFF'S SECOND
CAUSE OF ACTION – VIOLATION OF THE RIGHT TO
BEAR ARMS  UNDER THE SECOND AMENDMENT,
PURSUANT TO 42 U.S.C. SECTIONS 1983, 1988. . . . . . . . . . . . . . . . . . 17

1. There Is No Right To Bear Arms In Public. . . . . . . . . . . . . . . . . . . 17

2. There is No Second Amendment Right To Any
Particular Gun and the Taking of Plaintiff's Guns
Does Not Implicate The Second Amendment. . . . . . . . . . . . . . . . . . 19

3. Even If There Was A "Second Amendment Right"
To Plaintiff's Specific Guns, Cal. Penal Code Requires
the *Plaintiff* To Take Affirmative Steps To Recover
His Firearms.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

4. In The Alternative, The Defendants Are Entitled
To Qualified Immunity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

5. There is No Evidence To Support A Claim for
Violation of the Second Amendment Against the
City of Bakersfield.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

D.   DEFENDANTS ARE ENTITLED TO JUDGMENT AS
A MATTER OF LAW IN REGARD TO PLAINTIFF'S
THIRD CAUSE OF ACTION FOR DEPRIVATION OF
PLAINTIFF'S PROPERTY WITHOUT DUE PROCESS
OF LAW IN VIOLATION OF THE FOURTEENTH
AMENDMENT PURSUANT TO 42 U.S.C SECTIONS 1983, 1988. . . . . . . . 22

1. The Plaintiff's Fourteenth Amendment Rights
Were Not Deprived By the Individually Named Officers. . . . . . . . . . . 22

2. The Individual Officers Are Entitled To Qualified
Immunity Because There is No Published Authority
Which Would Provide That The Fourteenth Amendment
Procedural Due Process Rights Had Been Violated
Given The Facts and Circumstances Present in This Case. . . . . . . . . . 23

3. There Is No Evidence To Support A Fourteenth
Amendment Claim Against the City of Bakersfield. . . . . . . . . . . . . . . 24

E.   DEFENDANTS ARE ENTITLED TO JUDGMENT
AS A MATTER OF LAW AS TO PLAINTIFF'S FOURTH
CAUSE OF ACTION FOR VIOLATION OF THE RALPH
CIVIL RIGHTS ACT, CALIFORNIA CIVIL CODE SECTION 51.7. . . . . . . . 24

F.   DEFENDANTS ARE ENTITLED TO JUDGMENT AS
A MATTER OF LAW AS TO PLAINTIFF'S FIFTH
CAUSE OF ACTION FOR VIOLATION OF THE UNRUH
CIVIL RIGHTS ACT, CALIFORNIA CIVIL CODE SECTION 51,
AND/OR CALIFORNIA CIVIL CODE SECTION 51.5 . . . . . . . . . . . . . . . . . 25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

G.  THE PLAINTIFF'S NINTH CAUSE OF ACTION
    FOR FALSE ARREST/FALSE IMPRISONMENT
    FAILS AS A MATTER OF LAW.....................................26

H.  THE PLAINTIFF'S TENTH CAUSE OF ACTION
    FOR POSSESSION OF PERSONAL PROPERTY
    AND FOR DAMAGES AND ELEVENTH
    CAUSE OF ACTION FOR CONVERSION FAIL
    AS A MATTER OF LAW............................................27

I.  PLAINTIFF'S THIRTEENTH CAUSE OF ACTION
    FOR NEGLIGENCE FAILS AS A MATTER OF LAW...................29

    1.  The Individually Named Officers Are Not
        Liable Under a Theory of Negligence.........................29

    2.  The City of Bakersfield Is Not Liable Under
        Plaintiff's Theory of Negligence.............................29

CONCLUSION............................................................30

**CASES**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Asgari v. City of Los Angeles*,15 Cal. 4th 744 (1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Ashcroft v. al-Kidd*, 131 S. Ct. 2074 (2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Atwater v. City of Lago Vista*, 532 U.S. 318 (2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Beck v. Ohio*, 379 U.S. 89 (1964). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Billington v. Smith*, 292 F.3d 1177 (9th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Blankenhorn v. City of Orange*, 485 F.3d 463 (9th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . 26

*Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397 (1997). . . . . . . . . . . . . . . 16

*Brown v. Zydek*, 2016 U.S. Dist. Lexis 108207 (N.D. IL Aug. 16, 2016). . . . . . . . . . . . . . . 20, 21

*Canton v. Harris*, 489 U.S. 378 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Celotex Corp. v. Catrett,* 477 U.S. 317 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Christie v. Iopa*, 176 F.3d 1231 (9th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Church of Scientology v. Armstrong*, 232 Cal. App. 3d 1060 (1991). . . . . . . . . . . . . . . . . . . . . 28

*City & Cnty of San Francisco v. Sheehan*, 135 S. Ct 1765 (March 23, 2015). . . . . . . . . . . . . . 13

*City of Oklahoma City v. Tuttle*, 471 U.S. 808 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*City of San Jose v. Rodrigues*, 2015 Cal. App. Unpub. Lexis 2315 (Apr. 2, 2015). . . . . . . . . . 21

*Coello v. City of Hermosa Beach*, 2009 U.S. Dist. Lexis 13142 (C.D. CA Feb 19, 2009). . . . . . 11

*Collin v. Am. Empire Ins. Co.*, 21 Cal. App. 4th 787 (1994). . . . . . . . . . . . . . . . . . . . . . . . . 27, 28

*Daniels v. Williams*, 474 U.S. 327 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*District of Columbia v. Heller*, 554 U.S. 570 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

*Drake v. Filko*, 724 F.3d 426 (3d Cir. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Eastburn v. Regional Fire Protection Authority,* 31 Cal. 4th 1175 (2003). . . . . . . . . . . . . . . . . 30

*Easton v. Sutter Coast Hosp.*, 80 Cal. App. 4th 485 (Cal. Ct. App. 2000). . . . . . . . . . . . . . . . 26

*Elder v. Holloway* 510 U.S. 510 (1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Ellis v. City of Chi.*, 2016 U.S. Dist. LEXIS 5817(N.D. IL Jan. 19, 2016). . . . . . . . . . . . . . . . . 19

*Florida v. Royer*, 460 U.S. 491 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Fogel v. Collins*, 531 F.3d 824 (9th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Fuller v. Jewelry*, 950 F.2d 1437 (9th Cir.1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.*,
958 F.2d 896 (9th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Garcha v. City of Beacon*, 351 F. Supp. 2d 213 (S.D. NY 2005). . . . . . . . . . . . . . . . . . . . . . . . . 19

*Garcia v. City of Santa Clara*,
2015 U.S. Dist. LEXIS 120086 (N.D. CA Sept. 9, 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Harper v. City of Los Angeles*, 533 F.3d 1010 (9th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Harris v. Capital Growth Investors XIV*, 52 Cal.3d 1142 (1991). . . . . . . . . . . . . . . . . . . . . . . . . 26

*Harris v. Smith*, 157 Cal. App. 3d 100 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Houston v. City of Philadelphia*,
2015 U.S. Dist. Lexis 93752 (E.D. PA July 20, 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Hunter v. Cnty of Sacramento*, 652 F. 3d 1225 (9th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Hunter v. Bryant*, 502 U.S. 224 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Jaramillo v. City of San Mateo*, 76 F. Supp. 3d 905 (N.D. CA 2014). . . . . . . . . . . . . . . . . . . 16, 30

*Jeffers v. Gomez*, 267 F.3d 895 (9th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Johnson v. City of Berkeley*, 2016 U.S. Dist. LEXIS 31887 (N.D. CA Mar. 11, 2016). . . . . . . . 25

*Jones v. Williams*, 297 F.3d 930 (9th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Justin v. City & Cnty. of San Francisco*,
2008 U.S. Dist. LEXIS 36468 (N.D. CA May 5, 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Kachalsky v. Cty. of Westchester*, 701 F.3d 81 (2d Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Kaminsky v. Schriro*, 2016 U.S. Dist. Lexis 80178 (D. CN June 21, 2016). . . . . . . . . . . . . . . . . 20

*Khachatourian v. Hacienda La Puente Unified Sch. Dist.*,
572 F.App'x 556 (9th Cir. 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Knapps v. City of Oakland*, 647 F. Supp. 2d 1129 (N.D. CA 2009). . . . . . . . . . . . . . . . . . . . . . . 25

*Lie v. Phillips*, 234 F.3d 55 (1st Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Lovi v. Village of Arlington Heights*, 62 F. Supp. 3d 756 (N.D. IL Aug. 1, 2014). . . . . . . . . . . 20

*Mackey v. Montrym*, 443 U.S. 1 (1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Malley v. Briffs*, 475 U.S. 335 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). . . . . . . . . . . . . . . . 8

*McDade v. West*, 223 F.3d 1135 (9th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*McSherry v. City of Long Beach*, 584 F.3d 1129 (9th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . 17

*Memphis Light, Gas and Water Division v. Craft*, 436 U.S. 1 (1978). . . . . . . . . . . . . . . . . . . . . 22

*Messerschmidt v. Millender*, 565 U.S. 535 (2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Metal Jeans, Inc. v. California,*
2016 U.S.Dist.LEXIS 143494 (C.D. CA Oct. 17, 2016). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658 (1978). . . . . . . . . . . . . . . . . . . . . . 15, 16, 17, 21

*Motley v. Parks*, 432 F.3d 1072 (9th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Mullenix v. Luna*, 136 S. Ct. 308 (2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Munoz v. City of Union City*, 120 Cal. App. 4th 1077 (2004). . . . . . . . . . . . . . . . . . . . . . . . . 30

*Mustola v. Toddy*, 253 Or. 658 (1969). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*O'Toole v. Superior Court,* 140 Cal. App. 4th 488 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Outdoor Media Dimensions Inc., v. Oregon*, 326 Or. 627 (1997). . . . . . . . . . . . . . . . . . . . . . . 28

*Parratt v. Taylor*, 451 U.S. 527 (1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Pearson v. Callahan*, 129 S.Ct. 808 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Peng v. Mei Chin Penghu*, 335 F.3d 970 (9th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Perez v. City of Placerville,*
2008 U.S. Dist. Lexis 83172 (E.D.CA Sept. 9, 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Peruta v. County of San Diego*, 824 F.3d 919 (9th Cir. 2016). . . . . . . . . . . . . . . . . . . . . . 18, 21

*Peterson v. Martinez*, 707 F.3d 1197 (10th Cir. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Peterson v. Farrow*, 2016 U.S. Dist. Lexis 89029 (E.D. CA July 7, 2016). . . . . . . . . . . . . . . . . 18

*Portman v. County of Santa Clara*, 995 F.2d 898 (9th Cir. 1993). . . . . . . . . . . . . . . . . . . . . . 22

*Price v. Sery*, 513 F.3d 962 (9th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 21, 24

*Rawlings v. Kentucky,* 448 U.S. 98 (1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Richer v. Parmelee*, 2016 U.S. Dist. Lexis 72883 (D. RI June 1, 2016). . . . . . . . . . . . . . . . . . . 20

*Robinson v. City of San Diego*, 954 F. Supp. 2d 1010 (S.D. CA 2013). . . . . . . . . . . . . . . . . . . 29

*Romero v. Kitsap County* 932 F.2d 624 (9th Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Saucier v. Katz*, 55 U.S. 194 (2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Save CCSF v. Lim*, 2015 U.S. Dist. LEXIS 69195(N.D. CA May 27, 2015). . . . . . . . . . . . . . . 25

*Shanks v. Dressel*, 540 F.3d 1082 (9th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Shields v. Tracy*, 2005 U.S. Dist. LEXIS 49157 (E.D. CA June 21, 2005). . . . . . . . . . . . . . . . . . 9

*St. Louis v. Praprotnik*, 485 U.S. 112 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Sutterfield v. City of Milwaukee*, 751 F. 3d 542 (7th Cir. 2014). . . . . . . . . . . . . . . . . . . . . . . 19, 20

*T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,*
809 F.2d 626 (9th Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Tekle v. United States*, 511 F.3d 839 (9th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Terry v. Ohio*, 392 U.S. 1 (1968). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Thrifty-Tel, Inc. v. Bezenek*, 46 Cal.App.4th 1559 (1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Trevino v. Gates*, 99 F.3d 911 (9th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Trevino v. City of Bakersfield,*
2016 U.S. Dist. Lexis 36457 (E.D. CA Mar. 21, 2016). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*United States v. Rideau*, 969 F.2d 1572 (5th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Hoyos*, 892 F.2d 1387 (9th Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United States v. Robinson*, 536 F.2d 1298 (9th Cir. 1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Robinson*, 414 U.S. 218 (1973). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Smith*, 389 F.3d 944 (9th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Vaher v. Town of Orangetown, NY,* 916 F. Supp. 2d 404 (S.D. N.Y 2013). . . . . . . . . . . . . . . . 20

*Velarde v. Cnty. of Alameda,*
2016 U.S. Dist. LEXIS 53110 (N.D. CA Apr. 20, 2016). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Virginia v. Moore*, 553 U.S. 164 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Waggy v. Spokane County Wash*, 594 F.3d 707 (9th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Walters v. Wolf*, 660 F.3d 307 (8th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Wool v. Tandem Computers, Inc.,* 818 F.2d 1433 (9th Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . 8

*Woollard v. Gallagher*, 712 F.3d 865 (4th Cir. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Wyke v. Polk County Sch. Board*, 129 F.3d 560 (11th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . 16

*Zaslow v. Kroenert*, 29 Cal. 2d 541 (1946). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Zelig v. Cty. of Los Angeles*, 27 Cal. 4th 1112 (2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Zinermon v. Burch*, 494 U.S. 113 (1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

**STATUTES**

42 U.S.C. Section 1983. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

42 U.S.C. Section 1988. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

California Civil Code Section 51. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 25

California Civil Code Section 1714. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

California Government Code Section 815. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

California Penal Code Section 626. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 7, 10, 11

California Penal Code Section 847. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

California Penal Code Section 33800. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 28

California Penal Code Section 33850. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 20, 21

California Penal Code Section 33855. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 20

California Penal Code Section 33865. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 20

Federal Rule of Civil Procedure 56. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

United States Constitution, Amendment II. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

United States Constitution, Amendment XIV. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

**OTHER**

California Civil Instructions (CACI) 2101. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Prosser & Keeton, Torts, Section 15. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

COMES NOW, Defendants CITY OF BAKERSFIELD, OFFICER VERION COLEMAN and OFFICER ANTHONY McCARTHY hereby submit this Memorandum of Points and Authorities in Support of Their Motion for Summary Judgment, or in the Alternative, Summary Adjudication.

**INTRODUCTION**

This case involves a very serious issue: bringing loaded handguns onto junior high school and high school campuses. In 2014, Plaintiff Kent Williams brought a loaded handgun to Tevis Jr. High, keeping it in an open backpack in his unlocked office. Bringing the handgun to school was, in and of itself, a violation of the Panama-Buena Vista School District's policies and the Gun Free Zone Act. At that time, there had been no resolution allowing teachers or other employees to bring guns to campus. Instead, it was a strict violation of the policy (and the law) to do so without prior approval from the School Board, which the Plaintiff did not have.

Making this situation even more perilous, is the fact that the Plaintiff had extensive psychological problems and made comments to his boss that he was "on suicide watch" and to co-workers that he was "going to get them before they got" him. These are not statements that should be made by someone with a loaded gun on a junior high school campus and as a result, the assistant superintendent called the Bakersfield Police to report that Plaintiff Kent Williams had a gun on campus.

Bakersfield Police Officers Verion Coleman and Anthony McCarthy went to the school to investigate and called their supervisor, Sergeant Joe Grubbs, who is not named as a Defendant in this case. Sergeant Grubbs considered all the information and concluded that Mr. Williams should be arrested and directed Officer Coleman accordingly. In addition, as a result of the comments that Mr. Williams had made, Officer McCarthy went to Mr. Williams' home, with Mr. Williams' authority, and collected the additional guns he had, so that Mr. Williams could not harm himself as he indicated he might do. Shortly after his arrest, and after consulting with the District Attorney, it was determined that because Mr. Williams had been issued a "concealed weapons permit" shortly before this incident, it was not a crime to have a gun on school campuses. Mr. Williams was then released. Following his release, Mr. Williams did not comply with the Penal Code to recover his guns and instead, has

///

1  initiated this lawsuit, alleging violations of the Fourth, Second, and Fourteenth Amendments, and a

2  plethora of state law claims.

3      Despite Mr. Williams' allegations, the law and the facts do not support these causes of action.

4  The evidence unequivocally establishes that the conduct of the Defendant officers was reasonable and

5  lawful and not discriminatory in any way.  What's more, is that the Plaintiff makes claims which are

6  legally flawed because there is no "Second Amendment" right to have a gun in public, because there

7  is no 'Second Amendment" right to any particular gun, and because the Plaintiff has failed to pursue

8  the retrieval of his guns despite being provided information on how to do it.

9      Further undermining the legitimacy of any of Plaintiff's claims is the fact that the Plaintiff's

10  concealed weapons permit was fraudulently procured by the Plaintiff.  Mr. Williams lied about two

11  very significant issues (the fact that he had been treated for mental illness and the fact that he smokes

12  marijuana) which led to the suspension and ultimate revocation of the permit by the Kern County

13  Sheriff's Department following this incident.

14      By and through this Motion, Defendants seek a judicial determination that there are no facts

15  or law to support the claims made by the Plaintiff in this case.

16                              **STATEMENT OF FACTS**

17      For approximately five (5) years, Plaintiff Kent Williams was the assistant vice principal at

18  Tevis Junior High, a school located within the Panama Buena Vista Union School District.

19  [Accompanying Joint Separate Statement of Undisputed Facts ("JSUF") No. 1].  The Panama Buena

20  Vista Union School District, including Tevis, has a gun free zone policy which prohibits the

21  possession of unauthorized fire arms within 1,000 feet of school grounds without the permission of

22  school authorities.  [Accompanying Defendants' Separate Statement of Undisputed Facts ("DSUF")

23  No. 1.]

24      In December 2013, the Plaintiff applied for and obtained a license to carry a concealed weapon

25  from the Kern County Sheriff's Department because he wanted to protect himself and his family.

26  [JSUF No. 2.]  When he applied for his concealed weapons permit, the Plaintiff was under psychiatric

27  care and had a medical marijuana card but did not disclose either of these things on his application for

28  his concealed weapons permit.  [DSUF No. 2.]

1    Following the issuance of his concealed weapons permit, Mr. Williams began bringing a

2    loaded Glock pistol to school nearly everyday. [JSUF No. 3.] Mr. Williams did not inform his

3    supervisors at the school district that he was bringing the loaded gun with him to school and did not

4    get permission from the School District to have a gun on campus. [DSUF No. 3.]

5    In or around late August 2014, Mr. Williams showed the gun to Eric Johnson, a teacher at the

6    opportunity class in Bakersfield. This occurred at Tevis during an "in-service training". [JSUF No.

7    4.] Mr. Williams showed Mr. Johnson the loaded gun that was in his backpack and told Mr. Johnson

8    that he always has his gun with him and that Mr. Williams "will get them before they get him". [DSUF

9    No. 4.] Approximately 10-12 days later, Mr. Johnson reported this to a school administrator, Randy

10    Miller, who then reported it to Geraldine Kinkaid, the assistant superintendent of educational services

11    for the School District. [DSUF No. 5.]

12    Days before the incident that gives rise to this lawsuit, the Plaintiff told school principal, Paul

13    Coons, that he was on suicide watch after having a rough day and that he had started counseling again

14    for depression because Mr. Williams was "messed up" in the head. When he made the statement about

15    being messed up in the head, Mr. Williams proceeded to put his fingers to his temple and make a noise

16    like a gun. [DSUF No. 6.]

17    On August 28, 2014, Panama- Buena Vista Union School District Assistant Superintendent,

18    Geraldine Kincaid, was informed by Randy Johnson what he had been told by Mr. Johnson. [DSUF

19    No. 7.] In turn, Ms. Kincaid called Bakersfield Police Officer Verion Coleman, who had been acting

20    as a school resource officer, to report that Mr. Williams had a gun on campus and that he had

21    displayed the gun to an "unidentified staff member" ( Eric Johnson). [JSUF No. 5.] Ms. Kincaid

22    indicated that Mr. Williams said something to the effect that he "would get them before they" got him.

23    [DSUF No. 8.] Ms. Kincaid was concerned about this because weapons are not permitted on campus.

24    [DSUF No. 9.]

25    Officer Coleman immediately contacted his Sergeant, Joseph Grubbs, and explained the

26    conversation he had had with Ms. Kincaid. Sergeant Grubbs informed Officer Coleman to get to the

27    school immediately to determine if Mr. Williams did, in fact, have a gun. [DSUF No. 10.]

28    ///

1    Officer Coleman then proceeded to a location where Officer McCarthy was and told him what

2    Ms. Kincaid had said and said that they needed to get to Tevis. [JSUF No. 6.]  Officer Coleman and

3    McCarthy then pulled over in a neighborhood close to the school and parked.  Officer Coleman did

4    a records check to see if Mr. Williams had any weapons registered to him and if he had a valid

5    concealed weapons permit.  Officer Coleman was told Mr. Williams had seven (7) guns and that he

6    had a concealed weapons permit.   [JSUF No. 7.]

7    Officer Coleman and Officer Anthony McCarthy proceeded to Tevis Junior High School and

8    ultimately made contact with Mr. Williams and went to his office. [JSUF No. 8.]  Officer Coleman

9    informed Mr. Williams that they were on campus because of a call that he might have a gun.  Officer

10   Coleman noticed a backpack approximately two feet away from where Mr. Williams was sitting.

11   [DSUF No. 11.]  Officer Coleman asked Mr. Williams if he had a firearm and Mr. Williams said he

12   did and indicated it was in the backpack. [DSUF No. 12.]  Mr Williams went to lean over, when

13   Officer Coleman asked if it would be ok if Officer McCarthy retrieved it. Officer McCarthy then

14   reached down and picked up the backpack and took out a Glock handgun.  McCarthy removed the

15   magazine and cleared it to ensure there were no bullets in the chamber.  [DSUF No. 13.]  Officer

16   Coleman told Mr. Williams that he was not under arrest but that he was being detained while they

17   figured everything out.  [DSUF No. 14.]

18   Officer Coleman then stepped out of Mr. Williams' office and about that time, Ms.  Kincaid

19   and another school official arrived.  The three of them then went into Principal Coon's office. [DSUF

20   No. 15.]  Officer Coleman confirmed Mr. Williams had a firearm, which caused serious concern.

21   [DSUF No. 16.]  In addition, Mr. Coon communicated to Officer Coleman Mr. Williams' comments

22   about being on "suicide watch" and about "being messed up in the head and made the same gesture

23   of a gun with his fingers that Mr. Williams had made.  [DSUF No. 17.]  Ms. Kincaid advised the

24   officers that Mr. Williams was violating the School Board's policy by having a gun on campus and

25   that he had not received permission to have a gun on campus. [DSUF No. 18.]

26   Officer Coleman indicated he wanted to call his supervisor, Sergeant Grubbs, about what to

27   do since Officer Coleman knew he had a CCW permit but it was on school campus.  [JSUF No. 10.]

28   Sergeant Gubbs indicated that he was on his way and that he had researched Penal Code 626.9 very

1  clearly numerous times in his career and that Kent Williams would still be in violation for having a

2  firearm on school grounds. [DSUF No. 19.] Officer Coleman asked Sergeant Grubbs what he wanted

3  him to do and Sergeant Grubbs replied that he was going to be there and asked if Officer Coleman had

4  a Penal Code book in his car and when Officer Coleman confirmed that he did, Sergeant Grubbs

5  directed him to get it. [JSUF No. 11.]

6      Officer Coleman went out to his car to retrieve the 2014 Penal Code book from his trunk.

7  [JSUF No. 12.] Sergeant Grubbs then arrived a short time later. He and Officer Coleman went to the

8  office with Gerrie Kincaid. Officer Coleman explained what had been done to that point and then

9  Sergeant Grubbs directed Officer Coleman to go into Mr. Williams' office and advise him of his

10  Miranda rights. [DSUF No. 20.] It was Sergeant Grubbs that made the decision that Mr. Williams

11  was going to be arrested following his review of the Penal Code and his belief that a concealed

12  weapons permit was not included in Cal. Penal Code 626.9 . [DSUF No. 21.] Officer Coleman did

13  as he was instructed by his supervisor and advised Mr. Williams of his Miranda rights. [DSUF No.

14  22.]

15      Officer Coleman then went to speak with Mr. Williams about his comments to Mr. Coons

16  about being suicidal and Mr. Williams indicated that he was taking anxiety medication but did not feel

17  like hurting himself. [DSUF No. 23.] Officer Coleman was concerned about Mr. Williams getting

18  out of jail and then going home and using one of his other guns to harm himself. [DSUF No. 24.]

19  Officer Coleman then asked Mr. Williams if he would mind if someone went to his home to get the

20  other guns. [DSUF No. 25.] Mr. Williams gave the Bakersfield police officers consent to go to his

21  home to get his other guns. This consent was given freely and voluntarily. [DSUF No. 26.] The

22  Plaintiff did not feel threatened or intimidated. [DSUF No. 27.] Officer McCarthy then went to the

23  home to retrieve Mr. Williams' additional guns. [JSUF No. 13.]

24      Ms. Kincaid wanted the gun gone and needed Mr. Williams to not be on campus until the

25  issue had been resolved. [DSUF No. 28.]

26      At the time of the arrest, the police did a pat down of the Plaintiff. The Plaintiff was

27  handcuffed and taken to the jail. [JSUF No. 14.] The officers did not perform a body cavity search

28  ///

1   and did not hit, kick, or used force that caused bruising or other injury to the Plaintiff. [DSUF No.

2   29.]

3       The Plaintiff was arrested and incarcerated for approximately six hours, which included time

4   spent getting medical clearance from Kern County Medical Center. [JSUF No. 15.]

5       At approximately 4 p.m., Officer Coleman contacted Sergeant Grubbs and expressed that he

6   thought there may have been an issue with the arrest. Sergeant Grubbs and Officer Coleman reviewed

7   the Penal Code again and found that there could be an exception in regard to not having a gun on

8   school campus if the individual possessed a valid concealed weapons permit. [DSUF No. 30.]

9       At that time, Sergeant Grubbs directed Officer Coleman to make arrangements to have Mr.

10  Williams released. [DSUF No. 31.] Officer Williams was then released and no charges were filed.

11  [DSUF No. 32.] Officer Coleman drove Mr. Williams home. [JSUF No. 16.]

12      After Mr. Williams was released, Sergeant Grubbs attempted to telephone Mr. Williams at

13  least twice in an effort to arrange for the return of his guns, which requires a particular process

14  established by the Department of Justice. [DSUF No. 33.] Mr. Williams has still not submitted the

15  required paperwork so that his guns may be returned.[1] [DSUF No. 34.]

16      Following this incident, the Plaintiff's permit to carry a concealed weapon was suspended and

17  then ultimately revoked by the Kern County Sheriff's Department because the Sheriff's Department

18  determined that Mr. Williams should have disclosed on his application, but failed to disclose, that he

19  ///

20

21      [1] When a law enforcement agency seizes a firearm, it issues the possessor a receipt describing the firearm and
    any serial or other identification on the firearm and the process for seeking the firearm's return. Cal. Penal Code §
22  33800. A claimant seeking its return must submit an application to the CalDOJ that includes identifying information
    about the claimant and descriptive information (make, model, serial number, etc.) about the firearm. Cal. Penal Code §
23  33850. The CalDOJ must respond within 30 days. Id. § 33865(b). It performs a background check to be sure the
    claimant is eligible for the firearm's return. Id. § 33865(a). (An example of a person not eligible for a firearm's return is
24  a convicted felon.) If the claimant is eligible, then the CalDOJ notifies the applicant and includes a description of the
    firearm by make, model, and serial number. If the firearm is not a handgun and does not have this identifying
25  information, the notice says that. If it is a handgun (and after January 1, 2014, any firearm), the CalDOJ enters a record
    of it into AFS. Id. § 33865(c) and (d). Only owners or legal possessors of a firearm are entitled to its return. Id. §
26  33855. The CalDOJ uses the make, model, and serial number to see if the firearm is recorded in the CalDOJ's
    Automated Firearms System ("AFS") and whether AFS shows that the claimant is the owner. Id. § 33865(c), 33855(b).
27  Some guns, such as long guns, are not required to be registered in AFS, and so the CalDOJ cannot determine their
    ownership from AFS. Id. § 28100(b)(3). If the gun is recorded in AFS in the name of an otherwise eligible person who
28  seeks its return, it is returned. Id. § 33855(b). Officer McCarthy provided Tina Williams with a property receipt for
    the weapons which could have been used by Plaintiff to request the return of his weapons pursuant to this procedure.
    [DSUF No. 35.]

had sought help for mental health or depression and had been taking Paxil and that he had a medical marijuana recommendation and had smoked marijuana three times a week.   [DSUF No. 36.]

**PROCEDURAL HISTORY**

This case was originally filed by the Plaintiff on December 8, 2014.  The operative complaint is the Second Amended Complaint which alleges causes of action for: (1) Arrest, Seizure and Unreasonable and Excessive Use of Force in Violation of the Fourth Amendment, Pursuant to 42 U.S. U.S.C Section 1983, 1988; (2) Violation of the Right to Bear Arms Under the Second Amendment, Pursuant to 42 U.S.C Sections 1983, 1988; (3) Deprivation of Plaintiff's Property Without Due Process of Law in Violation of the Fourteenth Amendment Pursuant to 42 U.S.C Sections 1983, 1988; (4) Violation of the Ralph Civil Rights Act, California Civil Code Section 51.7; (5) Violation of the Unruh Civil Rights Act, California Civil Code § 51, and/or California Civil Code § 51.5; (6) Violation of the Bane Civil Rights Act, California Civil Code § 52.1; (7) Assault, Under California Law; (8) Battery under California Law; (9) False Arrest/False Imprisonment Under California Law; (10) For Possession of Personal Property and For Damages Under California Law; (11) Conversion under California Law; (12) Intentional Infliction of Emotional Distress Under California Law; and (13) Negligence Under California Law.[2]  [See Exhibit A to the accompanying Request for Judicial Notice ("RJN"), Dkt No. 27.]

On June 8, 2015, Defendants filed their Answer to the Second Amended Complaint alleging forty (40) affirmative defendants including but not limited to: (1) failure to state a claim; (2) assumption of the risk; (3) failure to mitigate damages; (4) immunity under the government code and qualified immunity; (5) good faith; (6) unclean hands; and (7) the Gun Free School Done Act/ Penal Code § 626.9. [See Exhibit B to the RJN.]

**CERTIFICATION OF MEET AND CONFER**

Pursuant to this Court's Scheduling Conference Order [Dkt. No. 32], the Parties met and conferred regarding the substance of this motion and the other topics set forth at p. 4 of the Court's

---

[2] By way of Stipulation, the following causes of action were dismissed: (1) First Cause of Action for Excessive Use of Force in Violation of the Fourth Amendment; (2) Violation of the Sixth Cause of Action- Bane Act; (3) Seventh Cause of Action- Assault; (4) Eighth Cause of Action- Battery; and (5) Intentional Infliction of Emotional Distress. See Dkt No. 42 (Stipulation) and 43 (Order).

1    Scheduling Conference Order.  As a result of that meet and confer effort, the Plaintiff agreed to

2    dismiss certain claims as set forth in the Stipulation filed with this Court.  See Dkt. No. 42.

3                                    **LEGAL ARGUMENT**

4    **A.      SUMMARY JUDGMENT IS APPROPRIATE WHERE THERE ARE NO GENUINE
             ISSUES OF MATERIAL FACT**

5

6              Summary judgment is appropriate when it is demonstrated that there exists no genuine issue

7    as to any material fact, and that the moving party is entitled to judgment as a matter of law.  F.R.C.P.

8    56(c).  Under summary judgment practice, the moving party always bears the initial responsibility of

9    informing the District Court of the basis for its motion, and identifying those portions of "the

10   pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits,

11   if any," which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*

12   *v. Catrett,* 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden of proof at

13   trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on

14   the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  Id.

15             If the moving party meets its initial responsibility, the burden then shifts to the opposing party

16   to produce affirmative evidence sufficiently probative such that a jury could reasonably decide the

17   issue in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-586 (1986).

18   In attempting to establish the existence of this factual dispute, the opposing party may not rely upon

19   the denials, but **is required to tender actual  evidence** in support of its contention that the dispute

20   exists and that the disputed fact in contention was material.  Fed. R. Civ. Pro 56(e); *Matsushita*,

21   475 U.S. at 586 n.11; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc.*

22   *v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir. 1987); *Wool v. Tandem Computers,*

23   *Inc.,* 818 F.2d 1433, 1436 (9th Cir. 1987) [emphasis added].  While inferences from the facts must be

24   viewed in the light most favorable to the opposing party, that party "must do more than simply show

25   that there is some metaphysical doubt as to the material facts."  Id at 586.  If the opposing party's

26   "evidence is merely colorable, or is not significantly probative, summary judgment may be granted."

27   *Anderson*, supra, 477 U.S. 249-250.

28   ///

**B.** **DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW ON PLAINTIFF'S FIRST CAUSE OF ACTION FOR ARREST, SEIZURE AND UNREASONABLE AND EXCESSIVE USE OF FORCE IN VIOLATION OF THE FOURTH AMENDMENT, PURSUANT TO 42 U.S. U.S.C. SECTIONS 1983 and 1988**

The Plaintiff's first cause of action is for arrest and seizure in violation of the Fourth Amendment and is alleged against all Defendants.

**1.** **The Individually Named Officers Are Not Liable For Violation of Plaintiff's Fourth Amendment Rights**

**a.** **The Defendants Are Not Liable For A Fourth Amendment Violation As A Result of their Initial Investigation and "Detention" Of Plaintiff**

The determination of whether a police officer's detention and search of an individual violates the Fourth Amendment requires a three-part analysis. First, the Court must determine whether a "seizure" occurred. While the Fourth Amendment applies to all "seizures," not all encounters between a police officer and an individual constitute a "seizure." *Florida v. Royer*, 460 U.S. 491, 497-98 (1983).

Second, if a seizure has occurred, the Court must determine whether the seizure was reasonable. To be reasonable, seizures must generally be supported by "probable cause." *Terry v. Ohio*, 392 U.S. 1, 20 (1968). However, the Supreme Court has created certain exceptions to this requirement. For example, the Court ruled in *Terry v. Ohio* that officers can conduct a short, investigative stop of an individual based on a reasonable suspicion that the individual was engaged in criminal wrongdoing. Id. at 21-22; *Shields v. Tracy*, 2005 U.S. Dist. LEXIS 49157 (E.D. CA June 21, 2005).

Third, even if the Court finds that the seizure was reasonable, it must then determine whether a protective search of the individual was warranted in the situation. An officer need not be certain that the individual is armed; the issue is whether a reasonably prudent man could believe, based on 'specific and articulable facts,' that his safety or that of others is in danger." *United States v. Rideau*, 969 F.2d 1572, 1574 (5th Cir. 1992) (quoting *Terry*, 392 U.S. at 27); *Shields v. Tracy*, 2005 U.S. Dist. LEXIS 49157 (E.D. CA June 21, 2005)

In the case of a public employer, like a school district, intrusions on the constitutionally protected privacy interests of government employees for investigations of work-related misconduct

MARDEROSIAN & COHEN
1260 FULTON MALL
FRESNO, CA 93721

should be judged by the standard of reasonableness under all the circumstances. The reasonableness standard applies to a search that was initially conducted as part of an investigation into work-related misconduct, even if it later becomes an investigation of criminal misconduct. *Khachatourian v. Hacienda La Puente Unified Sch. Dist.*, 572 F.App'x 556, 557 (9th Cir. 2014).

Given the facts and circumstances of this case, the Defendant Officers' investigation and detention of the Plaintiff was entirely reasonable. The Defendant Officers had probable cause to investigate given the reports from school officials that the Plaintiff had a gun on campus and that he had made comments that caused serious concern about the safety and well being of not only third parties but also of the Plaintiff himself. He had told the principal shortly before this incident that he was on "suicide watch". These facts and circumstances absolutely warrant the initial investigation, detention, and/or "seizure" of the Plaintiff. Defendants are not liable to Plaintiff for a violation of the Fourth Amendment based on his initial search, seizure and detention.

**b. The Defendants Are Not Liable For A Fourth Amendment Violation As A Result of Their Arrest of Plaintiff**

In terms of the arrest, for an arrest to be lawful, it must be based on probable cause. "Probable cause exist[s] if 'at the moment the arrest was made . . . the facts and circumstances within [the police officer's] knowledge and of which [the police officer] had reasonably trustworthy information were sufficient to warrant a prudent man in believing' that [the arrestee] had violated [the law]." *Hunter v. Bryant*, 502 U.S. 224, 228, (1991) (quoting *Beck v. Ohio*, 379 U.S. 89, 91, (1964))."If an officer has probable cause to believe that an individual has committed **even a very minor criminal offense in his presence**, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354, (2001)[emphasis added](Fourth Amendment does not forbid warrantless arrest for "even a very minor criminal offense" committed in arresting officer's presence, such seatbelt violation); *Virginia v. Moore*, 553 U.S. 164, 171, (2008).

In *Khachatourian v. Hacienda La Puente Unified Sch. Dist.*, 572 F.App'x 556 (9th Cir. 2014), the 9th Circuit considered the arrest of a teacher who was found to be in possession of a gun and knife on school premises in violation of Cal. Penal Code §§ 626.9 and 626.10.

///

MARDEROSIAN & COHEN
1260 FULTON MALL
FRESNO, CA 93721

1   Indeed, Cal. Penal Code § 626.9, which is referred to as a the "Gun Free School Zone Act"

2   specifically prohibits bringing a firearm onto school premises. While it is anticipated that the Plaintiff

3   will argue that there is an exception for individuals with a "concealed weapons permit"[3], such

4   exception was unclear to the officers at the time of arrest and a police officer is not required to engage

5   in legal analysis at the scene of arrest. *Khachatourian*, supra, 572 F.App'x at 557.

6   It should also be noted and it is also very important in this case that the decision to arrest the

7   Plaintiff was made by Sergeant Joe Grubbs, who is not a party to this litigation. A "facially valid

8   direction from one officer to another" to perform a search or seizure insulates the complying officer

9   from assuming personal responsibility or liability for his act done in obedience to the direction. *United*

10  *States v. Robinson*, 536 F.2d 1298, 1299 (9th Cir. 1976); See also *Motley v. Parks*, 432 F.3d 1072,

11  1082 (9th Cir. 2005); *Coello v. City of Hermosa Beach*, 2009 U.S. Dist. Lexis 13142, at *12 (C.D. CA

12  Feb 19, 2009)[granting summary judgment to officers who were not made an arrest pursuant to the

13  direction of another officer and finding there was no Fourth Amendment violation by the officer who

14  was complying with direction from another officer.]

15  As such, because the decision to arrest was not based by one of the named defendants (and was

16  instead made by Joe Grubbs) and because it appeared that there was probable cause to arrest, the

17  individually named officers in this case cannot be liable for violation of a false arrest in violation of

18  the Fourth Amendment.

19          **c.      The Search of the Plaintiff Did Not Violate Fourth Amendment Rights**

20  "A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the

21  Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional

22  justification." *United States v. Robinson*, 414 U.S. 218, 235, 94 S. Ct. 467, 38 L. Ed. 2d 427 (1973).

23  It is immaterial that this search was done before plaintiff was formally under arrest. "So long

24  as an arrest that follows a search is supported by probable cause independent of the fruits of the

25  search, the precise timing of the search is not critical." *United States v. Smith*, 389 F.3d 944, 951 (9th

26  Cir. 2004) (citing *Rawlings v. Kentucky,* 448 U.S. 98, 111 (1980)).

27

28
_____

[3] In 2014, Cal. Pen. Code § 626.9(l) provided that the section did not apply to "a person holding a valid
license to carry the firearm pursuant to Chapter 4 (commencing with Section 26150) of Division 5 of Title 4 of Part 6.

1      While it is unclear if the Plaintiff is making a claim that the search as a result of his arrest

2  violated the Fourth Amendment, the clear facts confirm that a search of the Plaintiff was reasonable

3  and appropriate and did not violate the Fourth Amendment.

4          **d.**    **Defendant McCarthy Cannot Be Liable For Arresting Plaintiff As He Was Not Present When the Plaintiff Was Arrested**

5

6      At a minimum, Officer McCarthy cannot be liable for violation of the Fourth Amendment as

7  it arises from Plaintiff's arrest because Officer McCarthy was not involved in the arrest in any way.

8  He was not even present when it occurred.

9      To establish § 1983 liability, a plaintiff must show that the defendant was an "integral

10  participant" in the constitutional violation; a defendant's mere presence at the scene of the unlawful

11  conduct, without personal involvement, is insufficient. See *Jones v. Williams*, 297 F.3d 930, 936 (9th

12  Cir. 2002).

13      As such, at a minimum, Plaintiff's Fourth Amendment cause of action for unlawful arrest

14  against Defendant McCarthy should be dismissed.

15          **e.**    **The Plaintiff Fraudulently Procured His Concealed Weapons Permit and Should Not Be Permitted To Seek Relief For Violation of His Fourth Amendment Rights**

16

17      Another facet of this case is the fact that the Plaintiff fraudulently procured his concealed

18  weapons permit and it was subsequently revoked when it was discovered by the Kern County Sheriff's

19  Department that the Plaintiff had lied on his application multiple times.  It is contrary to the spirit and

20  intent of the Constitution and the rights conveyed thereunder to allow an individual to benefit or to

21  find some right exists when fraud was involved.  In essence, the Plaintiff has no standing to assert that

22  his rights were violated because he had a concealed weapons permit when, in fact, the concealed

23  weapons permit was procured fraudulently. As such, the Plaintiff should not be permitted to seek to

24  recover damages where he fraudulently procured the concealed weapons permit in the first place.  In

25  essence, it is allowing a car thief to assert Fourth Amendment rights in property he didn't lawfully

26  own.  Had the Plaintiff not had the concealed weapons permit, there would be no dispute as to the

27  propriety of Plaintiff bringing a loaded gun on school grounds.

28  ///

**f.    The Individually Named Defendants Are Entitled to Qualified Immunity**

Qualified immunity applies to Fourth Amendment claims, thereby giving a defendant police officer two levels of reasonableness protection, one under the Fourth Amendment and one under qualified immunity. *Saucier v. Katz*, 55 U.S. 194 (2001). Qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The issue of qualified immunity is "a pure question of law" and is intended to weed out insubstantial excessive force claims prior to trial. *Elder v. Holloway* 510 U.S. 510, 514 (1994); *Romero v. Kitsap County* 932 F.2d 624, 627-628 (9ᵗʰ Cir. 1991). Indeed, it was the Supreme Court's intent that qualified immunity provides a protection to officers such that it protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

When the defense of qualified immunity is raised, the Court must conduct a multi-prong inquiry: (1) do the undisputed facts make out a constitutional violation; and (2) was the law governing the officers' conduct clearly established. *Saucier,* supra, 533 U.S. at 201-202. The Supreme Court has instructed that district courts are no longer restricted to the order in which they address this two part test. *Pearson v. Callahan*, 129 S.Ct. 808 (2008). Furthermore, notwithstanding the two part inquiry in *Saucier*, there is also potential for a third inquiry as to whether a reasonable officer could have believed his conduct was lawful under the law. *Jeffers v. Gomez*, 267 F.3d 895, 910 (9ᵗʰ Cir. 2001).

The Supreme Court has consistently made it clear that the analysis of qualified immunity must be from the perspective of an objectively reasonable officer under the totality of the circumstances at the time and not some theory developed later on. It simply cannot be overstated that the question a court must decide as a matter of law is whether a reasonable officer under the circumstances could have reasonably believed, even mistakenly, that his conduct was justified. *Billington v. Smith*, 292 F.3d 1177, 1189 (9ᵗʰ Cir. 2002).

In a recent Supreme Court case, *City & Cnty of San Francisco v. Sheehan*, 135 S. Ct 1765 (March 23, 2015), Justice Alito noted, "Qualified immunity is intended to "give government officials

breathing room to make reasonable but mistaken judgments" by "protecting all but the plainly incompetent or those who knowingly violate the law". Id citing *Ashcroft v. al-Kidd,* 131 S. Ct. 2074 (2011). Justice Alito goes on to state "we have repeatedly told courts- and the Ninth Circuit in particular- not to define clearly established law at a high level of nature of *particular* conduct is clearly established." *Mullenix v. Luna*, 136 S. Ct. at 305, 308 (2015).

**1.    Defendants Are Entitled To Qualified Immunity Regarding The "Search And Seizure of Plaintiff"**

An officer may be immune from suit even if there was not probable cause for the arrest, if the officer reasonably believed probable cause was present. *Malley*, 475 U.S. at 344-45 (it is inevitable that law enforcement officers will sometimes reasonably but mistakenly conclude that probable cause is present and in those cases, the officer should not be held personally liable.); *Fuller v. Jewelry*, 950 F.2d 1437, 1443 (9th Cir.1991) ("even if the officers were mistaken that probable cause to arrest the [plaintiffs] existed, they are nonetheless immune from liability if their mistake was reasonable"). Probable cause exists when "the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a prudent person to believe a suspect has committed... a crime." *United States v. Hoyos*, 892 F.2d 1387, 1392 (9th Cir. 1989).

There is no question that the Defendant Officers reasonably believed they had probable cause to take the actions taken. There were reports that the Plaintiff had a gun on school campus, in violation of school policy, and that the Plaintiff had made statements about being on "suicide" watch and other statements that gave school officials concern. They, in turn, contacted the Bakersfield Police because the Plaintiff was not supposed to have a gun on school campus. The investigation and steps taken by the Defendant officers were entirely reasonable even if it is determined that, at the time, the Plaintiff could have had a gun on school campus, despite it being violative of school district policies.

**2.    Defendants Are Entitled to Qualified Immunity Regarding the Arrest of the Plaintiff**

The Defendant Officers are likewise entitled to qualified immunity regarding the *arrest* of the Plaintiff.

///

First, the conduct of the Defendant Officers was entirely reasonable, even if mistaken. **Before** arresting the Plaintiff, which was done pursuant to the direction of Sergeant Joe Grubbs, Defendant Coleman consulted the Penal Code and his supervisor, Sergeant Joe Grubbs about the Plaintiff's possession of a gun on school grounds. It was *Joe Grubbs*, who was not named in this lawsuit as a party, that made the decision that the Plaintiff should be arrested. An officer "may reasonably rely on a fellow officer or agent, who does (or by position should) know the substantive law and the facts and who (based on that knowledge) asserts" that some action is lawful. *Lie v. Phillips*, 234 F.3d 55, 57 (1st Cir. 2000). Reliance on a supervisor is a pertinent factor in considering the issue of qualified immunity. *Messerschmidt v. Millender*, 565 U.S. 535 (2012).

Defendant Coleman's reliance on a fellow (and superior) officer, entitles the Defendant Officers to qualified immunity. It was entirely reasonable to rely on Sergeant Grubbs, even if Sergeant Grubbs was mistaken.

Secondly, it was entirely clear that Mr. Williams had violated the School District's policies and that he did pose a threat to himself and possibly to others. The law is unsettled in this regard and there is no clear authority that provides that, in the alternative to detention pursuant to Section 5150, whether an arrest could be an appropriate mechanism.

### 2. There Is No Evidence To Support Plaintiff's *Monell* Claim Against the City of Bakersfield

As a preliminary matter, and as set forth above, there is absolutely no evidence that the Plaintiff's Constitutional rights were violated and as such, this cause of action fails. See *Monell v. Dep't. of Soc. Servs*., 436 U.S. 658, 690-92 (1978)[ "A plaintiff must prove... **that the actions alleged deprived the plaintiff of his or her rights under the Constitution** and that the officer acted pursuant to an expressly adopted official policy or longstanding practice or custom."]; *Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008).

Even if the Plaintiff could somehow proffer evidence that his Constitutional rights were violated, there is no evidence of any unlawful policy, practice or custom.

Municipal liability under 42 U.S.C. § 1983 may be premised on: (1) conduct pursuant to an expressly adopted official policy; (2) a longstanding practice or custom which constitutes the 'standard

MARDEROSIAN & COHEN
1260 FULTON MALL
FRESNO, CA 93721

operating procedure' of the local government entity; (3) a decision of a decision-making official who was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of the decision; or (4) an official with final policymaking authority either delegating that authority to, or ratifying the decision of, a subordinate. *Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008).

A "policy" is a deliberate choice to follow a course of action...made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question. *Fogel v. Collins*, 531 F.3d 824, 834 (9th Cir. 2008). A "custom" for purposes of municipal liability is a "widespread" practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law." *St. Louis v. Praprotnik*, 485 U.S. 112 (1988).

To recover damages against a municipality under this theory, the plaintiff must show the existence of a custom or policy and that the "enforcement of a municipal policy or custom was the moving force of the violation of federally protected rights." *Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397 (1997); *Canton v. Harris*, 489 U.S. 378, 385-391 (1989). The plaintiff must establish *each* requirement in order to establish municipal liability. *Wyke v. Polk County Sch. Board*, 129 F.3d 560, 568 (11th Cir. 1997).

Municipal liability cannot be based solely on a *single* incident of misconduct by an officer or on isolated or sporadic incidents. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985)[emphasis added]; *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1995); *McDade v. West*, 223 F.3d 1135, 1141 (9th Cir. 2000); *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999); *Jaramillo v. City of San Mateo*, 76 F. Supp. 3d 905 (N.D. CA 2014). Indeed, to support an allegation of a custom or practice, **the plaintiff must offer evidence of events which are similar and widespread or which are founded upon practices of sufficient duration, frequency, and consistency that such conduct has become the traditional method of carrying out a policy**. *Monell v. New York City Dep't of Social Services* 436 US at 658; *Trevino*, 99 F.3d 918; *McDade v. West*, 223 F.3d at1141; *Hunter v. Cnty of Sacramento*, 652 F. 3d 1225, 1233 (9th Cir. 2011).

///

There is absolutely no evidence or factual support to support this cause of action beyond the Plaintiff's own unfounded and unsupportable allegations. The Plaintiff cannot show that the Defendant Officers' conduct was pursuant to an unconstitutional "policy or custom" and cannot show evidence of a sufficient number of other incidents to support such a claim. See, e.g., *Waggy v. Spokane County Wash*, 594 F.3d 707 (9th Cir. 2010) (affirming summary judgment for county where plaintiff failed to provide any evidence of county policy, practice or custom, or of inadequate training and supervision that caused the alleged constitutional injury); *McSherry v. City of Long Beach*, 584 F.3d 1129, 1147 (9th Cir. 2009) (affirming summary judgment for city in § 1983 action where plaintiff failed to tender facts of policy or custom other than officers' alleged personal misdeeds); *Justin v. City & Cnty. of San Francisco*, 2008 U.S. Dist. LEXIS 36468 at *6-7 (N.D. CA May 5, 2008) (granting summary judgment on § 1983 claim in favor of city where the only support for plaintiffs' *Monell* claim were conclusory allegations and facts showing an isolated incident). In fact, in response to discovery seeking all facts to support Plaintiff's first cause of action against the City of Bakersfield, the Plaintiff simply responded that:

> Defendant City of Bakersfield instructed and allowed its employees, more specifically Officers Coleman and McCarthy to detain, arrest, and then book me knowing I had not committed a crime and without reasonable suspicion.
>
> [DSUF No. 37.]

On its face, it is apparent that the Plaintiff is attempting to allege that the City if vicariously liable for the alleged violation of Plaintiff's Fourth Amendment rights. Plaintiff has proffered no other evidence to support his *Monell* claim and as such, Plaintiff's first cause of action as alleged against the City of Bakersfield must be dismissed.

**C.    THE DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW AS TO PLAINTIFF'S SECOND CAUSE OF ACTION – VIOLATION OF THE RIGHT TO BEAR ARMS UNDER THE SECOND AMENDMENT, PURSUANT TO 42 U.S.C. SECTIONS 1983, 1988**

The Plaintiff's Second Cause of Action is for Violation of the Right to Bear Arms under the Second Amendment. This cause of action is alleged against all Defendants.

///

**1.     There Is No Right To Bear Arms In Public**

The Second Amendment provides:  "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. Amend. II.  The watershed case interpreting the Amendment is *District of Columbia v. Heller*, 554 U.S. 570 (2008). The plaintiff in *Heller* challenged a District of Columbia statute that entirely banned the possession of handguns in the home, and required that any lawful firearm in the home be "disassembled or bound by a trigger lock at all times, rendering it inoperable." Id. at 628.

Relying on the phrase "shall not be infringed," the Court in *Heller* viewed the Amendment as having "codified a pre-existing right." Id. at 592 (emphasis in original). The Court focused on the history leading to the adoption of the Amendment, and on the common understanding of the Amendment in the years following its adoption. The Court concluded that the "pre-existing right" to keep and bear arms preserved by the Second Amendment was in part an individual right to personal self-defense, not confined to the purpose of maintaining a well-regulated militia. The Court struck down the challenged statute, concluding that the Amendment preserves the right of members of the general public to keep and bear arms in their homes for the purpose of self-defense: "[W]e hold that the District's ban on handgun possession in the home violates the Second Amendment, as does its prohibition against rendering any lawful firearm in the home operable for the purpose of immediate self-defense." Id. at 635.

The Court in *Heller* was careful to limit the scope of its holding to one's home.  Indeed, following a very extensive opinion, the Ninth Circuit has concluded that "the Second Amendment **does not preserve or protect a right of a member of the general public to carry concealed firearms in public**." *Peruta v. County of San Diego*, 824 F.3d 919 (9th Cir. 2016) citing *Peterson v. Martinez*, 707 F.3d 1197 (10th Cir. 2013) (right to carry concealed weapons does not fall within the Second Amendment's scope); *Woollard v. Gallagher*, 712 F.3d 865 (4th Cir. 2013); *Drake v. Filko*, 724 F.3d 426, 429-30 (3d Cir. 2013) *Kachalsky v. Cty. of Westchester*, 701 F.3d 81 (2d Cir. 2012); See also *Peterson v. Farrow*, 2016 U.S. Dist. Lexis 89029 (E.D. CA July 7, 2016).

///

///

**2.     There is No Second Amendment Right To Any Particular Gun and the Taking of Plaintiff's Guns Does Not Implicate The Second Amendment**

Another fundamental flaw with the Plaintiff's Second Amendment claim is that Courts have routinely found that the 'right to bear arms' proffered by the Second Amendment is not the right to any particular gun but the right to a gun in general.

That is, in *Garcha v. City of Beacon*, 351 F. Supp. 2d 213 (S.D. NY 2005), a pre-*Heller* and *McDonald* case, the Court noted that 'the right to bear arms' is not a right to hold some particular gun." In *Garcha*, city police arrested the plaintiff in his home after answering a call about a domestic dispute. *Garcha*, 351 F. Supp. 2d at 214. Police seized a registered handgun that the plaintiff owned lawfully, as evidenced by a New York State pistol permit. Id. After the plaintiff's criminal charges were resolved, he attempted to regain possession of his pistol from the city but could not because the city destroyed the firearm pursuant to a city court order. Id. at 215. The plaintiff disputed whether the city had in fact destroyed the right weapon; he contended that the weapon destroyed had a different serial number than the one he sought to have returned. Id. The court dispensed with his Second Amendment claim by concluding that the Amendment's protections were not implicated because "the 'right to bear arms' is not a right to hold some particular gun" and the plaintiff was not prohibited "from acquiring another weapon." Id; See also *Ellis v. City of Chi*., 2016 U.S. Dist. LEXIS 5817 at *8 n.9 (N.D. IL Jan. 19, 2016) ("Even if Ellis had alleged in his complaint that the police wrongfully seized his firearm during his arrest, it is not clear that Ellis's Second Amendment rights would have been violated in that scenario either. Seizure claims are generally governed by the Fourth Amendment, not the Second. And the question of whether a seizure may also constitute an independent violation of an individual's Second Amendment rights is something that the courts are just now starting to address. Courts that have addressed this issue seem to agree that such seizures do not result in a Second Amendment violation.") (internal citations omitted); *Walters v. Wolf*, 660 F.3d 307 (8th Cir. 2011)[seizure of particular gun does not constitute a violation of the Second Amendment when the Plaintiff is later able to purchase another gun]; *Houston v. City of Philadelphia*, 2015 U.S. Dist. Lexis 93752, at * 6 (E.D. PA July 20, 2015); *Sutterfield v. City of Milwaukee*, 751 F. 3d 542, 571 (7th Cir. 2014).

1     In other words, the Second Amendment right to possess firearms is implicated only when an

2     individual is left unable to possess firearms at all. *Vaher v. Town of Orangetown, NY,* 916 F. Supp.

3     2d 404, 430 (S.D. N.Y 2013); *Kaminsky v. Schriro*, 2016 U.S. Dist. Lexis 80178 (D. CN June 21,

4     2016); *Richer v. Parmelee*, 2016 U.S. Dist. Lexis 72883 (D. RI June 1, 2016); *Lovi v. Village of*

5     *Arlington Heights*, 62 F. Supp. 3d 756 (N.D. IL Aug. 1, 2014).

6     The authority set forth above provides that there is no right to possess a particular gun and in

7     that regard, the Second Amendment is not implicated when police seize an individual's firearm.  As

8     such, the Defendant's seizure of the Plaintiff's firearm at school and in his home likewise does not

9     implicate the Second Amendment and this claim should be dismissed.

**3.    Even If There Was A "Second Amendment Right" To Plaintiff's Specific Guns, Cal. Penal Code Requires the *Plaintiff* To Take Affirmative Steps To Recover His Firearms**

12     Even if there was a Second Amendment Right to particular guns, Cal. Penal Code § 33850 et.

13     seq. provides a procedure for the return of firearms and which prevents the return of fire arms absent

14     the Plaintiff completing the requisite paperwork.

15     Specifically, Penal Code § 33850 specifically provides a "person who claims title to any

16     firearm" in law enforcement custody may seek the return of that firearm.  [Pen. Code § 33850, subd.

17     (a).]  The person seeking return of any firearms must file an application for a Penal Code § 33865

18     notification that specifies the make and model of the firearms that are being sought and provides

19     detailed information about any handguns.  [Pen. Code, §§ 33850, 33865, subd. (c)(3).] The firearms

20     **cannot be returned** by a court or law enforcement agency unless the person seeking them obtains a

21     Penal Code § 33865 notification that the person is eligible to  possess a firearm and "the firearm has

22     been recorded in the Automated Firearms System in the name of the individual who seeks its return."

23     [Pen. Code, § 33855, subd. (b).]  the Plaintiff has not taken any of the legally required steps and as

24     such, the Defendants are legally prohibited from returning his guns to him.

**4.    In The Alternative, The Defendants Are Entitled To Qualified Immunity**

26     In the alternative, Defendants are entitled to qualified immunity.  As is set forth in *Sutterfield*

27     *v. City of Milwaukee*, 751 F. 3d 542, 571 (7th Cir. 2014), the scope of the Second Amendment is "an

28     issue that is just beginning to receive judicial attention." Id; See also *Brown* v. Zydek, 2016 U.S. Dist.

Lexis 108207, at * 12 (N.D. IL Aug. 16, 2016)[Dismissing claim but finding in the alternative, that Defendants would be entitled to qualified immunity because the right is not 'clearly established'.  See Also *Peruta v. County of San Diego*, 824 F.3d 919 at *2 (9th Cir. 2016).  Notably, this case came out two years after this incident.  There is an abundance of out of circuit authority which holds that there is no Second Amendment right to a particular gun and Second Amendment rights are only implicated if the Plaintiff cannot go on to acquire future guns. The Defendants have not located a single "in circuit case" or any case which is remotely similar to the facts presented which unequivocally establishes that the taking of Plaintiff's guns could be a Second Amendment violation.  On that basis alone, Defendants are entitled to qualified immunity on this claim.

Furthermore, there is no published authority that rectifies the Second Amendment with the requirements of California's Penal Code. Specifically, there is an unpublished case[4] that specifically provides that the Plaintiff's Second Amendment rights **would not** be violated as a result of the failure to return the firearms in light of the requirements of Cal. Penal Code § 33850; however, Defendants have not located any published or unpublished case that holds to the contrary.

**5.      There is No Evidence To Support A Claim for Violation of the Second Amendment Against the City of Bakersfield**

As set forth in Section B2 above, a municipality cannot be liable for violation or deprivation of Constitutional Rights absent (1) conduct pursuant to an expressly adopted official policy; (2) a longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity; (3) a decision of a decision-making official who was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of the decision; or (4) an official with final policymaking authority either delegating that authority to, or ratifying the decision of, a subordinate.  *Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008).

There is no evidence to support such a contention.  Again, the Plaintiff's response to discovery appears to be one based on "vicarious liability" and Plaintiff has not identified any evidence to support a *Monell* claim for violation of the Second Amendment.  [DSUF No. 38.]  As such, this claim must be dismissed as to the City of Bakersfield.

---

[4] *City of San Jose v. Rodrigues*, 2015 Cal. App. Unpub. Lexis 2315 (Apr. 2, 2015)

MARDEROSIAN & COHEN
1260 FULTON MALL
FRESNO, CA 93721

**D.** **DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW IN REGARD TO PLAINTIFF'S THIRD CAUSE OF ACTION FOR DEPRIVATION OF PLAINTIFF'S PROPERTY WITHOUT DUE PROCESS OF LAW IN VIOLATION OF THE FOURTEENTH AMENDMENT PURSUANT TO 42 U.S.C SECTIONS 1983, 1988**

The Plaintiff's Third Cause of Action is for Deprivation of Plaintiff's Property Without Due Process in violation of the Fourteenth Amendment. This Cause of Action is alleged against all Defendants.

**1.** **The Plaintiff's Fourteenth Amendment Rights Were Not Deprived By the Individually Named Officers**

The Due Process Clause of the Fourteenth Amendment provides that a state shall not "deprive any person of life, liberty, or property, without due process of law[.]" U.S. Const. Amend. XIV, § 1. To succeed on a procedural due process claim, "the plaintiff must establish the existence of '(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process.'" *Shanks v. Dressel*, 540 F.3d 1082, 1090 (9th Cir. 2008) (quoting *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993)). Fundamentally, due process affords a person a right to notice and a hearing before the State can deprive the person of life, liberty, or property. *Zinermon v. Burch*, 494 U.S. 113, 127-28, 110 S. Ct. 975, 108 L. Ed. 2d 100 (1990). In a procedural due process claim, it is not the deprivation of life, liberty or property itself that is unconstitutional. *Zinermon*, 494 U.S. at 125. Rather, the unconstitutional conduct is the deprivation of those interests without due process of law. Id. Therefore, the actionable unconstitutional conduct "is not complete unless and until the State fails to provide due process." Id. at 126. Thus, a court must consider what process a State provided or must provide, and whether that process was or is constitutionally adequate. Id.

While ordinarily, due process law requires that an opportunity for a hearing be made available prior to the deprivation of a significant property interest., courts also recognize there exist situations where a postdeprivation remedy is sufficient to satisfy due process. *Zinermon*, 494 U.S. at 128; *Memphis Light, Gas and Water Division v. Craft*, 436 U.S. 1, 19 (1978). For example, the necessity of quick action by the State in effecting a deprivation may mean that a postdeprivation remedy is constitutionally adequate because it is the only remedy the State can be expected to provide. Id.

1    (quoting *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 436 (1982)).[E]ither the necessity of quick

2    action by the State or the impracticality of providing any meaningful predeprivation process, when

3    coupled with the availability of some meaningful means by which to assess the propriety of the State's

4    action at some time after the initial taking, can satisfy the requirements of procedural due process.

5    *Parratt v. Taylor*, 451 U.S. 527, 539 (1981), overruled on other grounds in *Daniels v. Williams*, 474

6    U.S. 327, 330-31 (1986).The necessity of quick action can arise where the government has an interest

7    in protecting public health and safety. The Supreme Court recognizes states have "great leeway in

8    adopting summary procedures to protect public health and safety." *Mackey v. Montrym*, 443 U.S. 1,

9    17 (1979).

10        The fundamental problem with the Plaintiff's claim is that he was not deprived of any due

11   process. The Plaintiff's guns were collected with the permission of the Plaintiff and even if they were

12   not with his permission, they were collected for the safety of the Plaintiff and others given the

13   statements the Plaintiff had made (i.e that he was suicidal, etc). Then, the required information was

14   provided by Joe Grubbs regarding how to go about reclaiming the guns that had been collected under

15   the California Penal Code. That the Plaintiff failed to take the legally required steps does not mean

16   that he was deprived of his procedural due process rights. In fact, there was a procedure in place which

17   could have been undertaken such that a determination could have been made. The Plaintiff simply

18   elected not to pursue it. Without the determination as to whether or not the Plaintiff is *eligible* for the

19   return of his firearms, law enforcement **cannot** return a seized firearm to its owner, even if the law

20   or Court requires it.

21        **2.    The Individual Officers Are Entitled To Qualified Immunity Because There is No
              Published Authority Which Would Provide That The Fourteenth Amendment**
22            **Procedural Due Process Rights Had Been Violated Given The Facts and
              Circumstances Present in This Case**
23

24        In the alternative, the Officer Defendants are entitled to qualified immunity as there is no clear

25   authority that provides that it is a violation of the Fourteenth Amendment to act in the manner as the

26   Officer Defendants did in this case.  Specifically, as is set forth above, California's Penal Code sets

27   forth a specific procedure which must be undertaken regarding the return of a firearm.  The Plaintiff

28   ///

1  has not commenced this procedure and in the absence of completion of this process, the Defendants

2  cannot legally return the firearms to Plaintiff.

3      **3.      There Is No Evidence To Support A Fourteenth Amendment Claim Against the City of Bakersfield**

4

5      As set forth in Section B2 above, a municipality cannot be liable for violation or deprivation

6  of Constitutional Rights absent (1) conduct pursuant to an expressly adopted official policy; (2) a

7  longstanding practice or custom which constitutes the 'standard operating procedure' of the local

8  government entity; (3) a decision of a decision-making official who was, as a matter of state law, a

9  final policymaking authority whose edicts or acts may fairly be said to represent official policy in the

10  area of the decision; or (4) an official with final policymaking authority either delegating that authority

11  to, or ratifying the decision of, a subordinate.  *Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008).

12      There is no evidence to support such a contention in regard to the alleged Fourteenth

13  Amendment claim. Plaintiff's response to an interrogatory suggests again that the Plaintiff is alleging

14  a "vicarious liability" theory as to the Fourteenth Amendment claim.  [SUF No. 39.]  As such, this

15  claim must be dismissed as to the City of Bakersfield.

16  **E.      DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW AS TO PLAINTIFF'S FOURTH CAUSE OF ACTION FOR VIOLATION OF THE RALPH CIVIL RIGHTS ACT, CALIFORNIA CIVIL CODE SECTION 51.7**

17

18      The Plaintiff's Fourth Cause of Action is for violation of the Ralph Civil Rights Act and is

19  alleged against all Defendants.

20      California Civil Code § 51.7 states that persons within California have the right to be free from

21  any "violence, or intimidation by threat of violence, committed against their persons or property

22  because of political affiliation, or on account of any characteristic listed or defined in subdivision (b)

23  or (e) of Section 51 . . . ." Cal. Civ. Code § 51.7(a). At the time of Plaintiff's detention, Section 51(b)

24  provided that all people in California "are free and equal, and no matter what their sex, race, color,

25  religion, ancestry, national origin, disability, medical condition, genetic information, marital status,

26  or sexual orientation. . . ." Cal. Civ. Code § 51.

27      When claiming a violation of § 51.7, a plaintiff must show: "(1) the defendant threatened or

28  committed violent acts against the plaintiff; (2) the defendant was motivated by his perception of

plaintiff's [protected characteristic]; (3) the plaintiff was harmed; and (4) the defendant's conduct was a substantial factor in causing the plaintiff's harm. *Knapps v. City of Oakland*, 647 F. Supp. 2d 1129, 1167 (N.D. CA 2009), amended in part (Sept. 8, 2009) (citing *Austin B. v. Escondido Union Sch. Dist.*, 149 Cal. App. 4th 860, 880-81 (2007); *Velarde v. Cnty. of Alameda*, 2016 U.S. Dist. LEXIS 53110 (N.D. CA Apr. 20, 2016).

"In order to establish that the defendant's wrongful conduct was motivated by his perception of plaintiff's political affiliation or protected characteristic, the plaintiff must show that the defendant was "biased against or had an animus against" those individuals. *Save CCSF v. Lim,* 2015 U.S. Dist. LEXIS 69195 at *15 (N.D. CA May 27, 2015) (quoting *Austin B. v. Escondido Union Sch. Dist*., 149 Cal.App. 4th 860, 881 (2007); *Johnson v. City of Berkeley*, 2016 U.S. Dist. LEXIS 31887 (N.D. CA Mar. 11, 2016).

The Plaintiff has absolutely no evidence to support this claim. He cannot show that any Defendant "threatened or committed violent acts" against the Plaintiff.  In fact, the evidence is completely to the contrary. There was no evidence of threats or violent acts. Nor can the Plaintiff show that any alleged conduct was motivated by Defendant's perception of Plaintiff's protected characteristic. The evidence in this case is that the Defendants believed that the Plaintiff could be arrested for bringing a gun onto campus in violation of the "Gun Free" Act and in violation of school district policy. There was no improper bias or animus.   There is no evidence to support this cause of action.  It must be dismissed.

**F.      DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW AS TO PLAINTIFF'S FIFTH CAUSE OF ACTION FOR VIOLATION OF THE UNRUH CIVIL RIGHTS ACT, CALIFORNIA CIVIL CODE SECTION 51, AND/OR CALIFORNIA CIVIL CODE SECTION 51.5**

The Plaintiff's Fifth Cause of Action is for violation of the Unruh Act and is alleged against all Defendants.

The Unruh Civil Rights Act provides: "All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, or sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of

1    every kind whatsoever." Cal. Civ. Code § 51(b). The California Supreme Court has concluded that

2    "a plaintiff seeking to establish a cause of action under the Unruh Act must plead and prove intentional

3    discrimination in public accommodations in violation of the terms of the Act." *Harris v. Capital*

4    *Growth Investors XIV*, 52 Cal.3d 1142, 1175 (1991).

5          There is a complete absence of evidence to support any claim of "intentional discrimination

6    in public accommodations" and as such, the Defendants are entitled to judgment as a matter of law

7    on this claim.

8    **G.    THE PLAINTIFF'S NINTH CAUSE OF ACTION FOR FALSE ARREST/FALSE IMPRISONMENT FAILS AS A MATTER OF LAW**

9

10          The Plaintiff's Ninth Cause of Action is for False/Arrest and False Imprisonment and is alleged

11    against all Defendants.

12          False arrest and false imprisonment are not separate torts; false arrest is one way of committing

13    false imprisonment. *Asgari v. City of Los Angeles,* 15 Cal. 4th 744, 752 n. 3 (1997). The elements of

14    a state law tort claim for "false arrest or false imprisonment are: (1) the non-consensual, intentional

15    confinement of a person, (2) without lawful privilege, and (3) for an appreciable period of time,

16    however brief." *Tekle v. United States*, 511 F.3d 839, 854 (9th Cir. 2007) (quoting *Easton v. Sutter*

17    *Coast Hosp*., 80 Cal. App. 4th 485 (Cal. Ct. App. 2000)).

18          Under California Penal Code section 847(b), "no cause of action shall arise against any peace

19    officer . . . , acting within the scope of his or her authority, for false arrest or false imprisonment

20    arising out of any arrest [when] . . . [t]he arrest was lawful . . . ." See, e.g., *Blankenhorn v. City of*

21    *Orange*, 485 F.3d 463, 486-87 (9th Cir. 2007) (arresting officers entitled to immunity pursuant to §

22    847(b) on state law false imprisonment claim where arresting officers had probable cause to arrest

23    plaintiff); *Peng v. Mei Chin Penghu*, 335 F.3d 970, 976 (9th Cir. 2003) (test under California law for

24    whether an officer has probable cause for a warrantless arrest is "very similar to the Fourth

25    Amendment test applied by [the Ninth Circuit]"); *Garcia v. City of Santa Clara*, 2015 U.S. Dist.

26    LEXIS 120086 (N.D. CA Sept. 9, 2015); *Asgari v. City of Los Angeles*,15 Cal. 4th 744, 752 (1997);

27    *O'Toole v. Superior Court,* 140 Cal. App. 4th 488 (2006).

28    *///*

1    As is set forth above, the conduct of the Defendant Officers in effecting the arrest of the

2    Plaintiff was entirely reasonable and based on probable cause. It was also premised entirely on

3    direction from a superior officer who was solely responsible for making the decision to arrest the

4    Plaintiff but who is not a party to this litigation.

5        As such, the Defendant Officers are not liable and this claim must be dismissed.

6    **H.    THE PLAINTIFF'S TENTH CAUSE OF ACTION FOR POSSESSION OF PERSONAL**
     **PROPERTY AND FOR DAMAGES AND ELEVENTH CAUSE OF ACTION FOR**
7    **CONVERSION FAIL AS A MATTER OF LAW**

8        The Plaintiff's Tenth Cause of Action is for Possession of Personal Property and for Damages

9    under California Law and is alleged against all Defendants.  The Plaintiff's eleventh cause of action

10   is for Conversion and is alleged against all Defendants.  The Plaintiff contends that the Defendants

11   are liable under these theories as a result of their "confiscating" the Plaintiff's guns on the date in

12   question.  The Plaintiff has made no effort, as is required under the Penal Code, to go through the

13   proper procedures to retrieve his guns.

14       Under California law, trespass to chattels "lies where an intentional interference with the

15   possession of personal property has proximately caused injury." *Thrifty-Tel, Inc. v. Bezenek*, 46

16   Cal.App.4th 1559, 1566 (1996); tort of conversion, Prosser & Keeton, Torts, supra, § 15, p. 90.  To

17   prevail on a claim of trespass to chattels the plaintiff must prove that defendants wrongfully trespassed

18   on his personal property. To establish this claim he must prove all of the following: (1) that he

19   owned/possessed/had a right to possess the property; (2) that the defendants intentionally interfered

20   with his use or possession of the vehicle or that the defendants damaged the property; (3) that he did

21   not consent; (4) that he was harmed; (5) and that defendants' conduct was a substantial factor in

22   causing the plaintiff's harm. CACI 2101.

23       A claim for conversion requires (1) ownership or right to possession of property, (2) wrongful

24   disposition of that property, and (3) damages. *G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv.,*

25   *Inc.*, 958 F.2d 896, 906 (9th Cir. 1992). "In order to establish a conversion the plaintiff must show an

26   intention or purpose to convert the goods and to exercise ownership over them, or to prevent the

27   owner from taking possession of his property. Thus, a necessary element of the tort is an intent to

28   exercise ownership over property which belongs to another." *Collin v. Am. Empire Ins. Co.*, 21 Cal.

1   App. 4th 787 (1994); *Metal Jeans, Inc. v. California,* 2016 U.S.Dist.LEXIS 143494, at *13-14 (C.D.

2   CA Oct. 17, 2016)     An action for conversion will lie only where the interference is substantial in

3   nature, so that a plaintiff may be able to recover the full value of the property, in essence forcing a

4   defendant to buy the property. See *Zaslow v. Kroenert*, 29 Cal. 2d 541, 550 (1946).

5       The Plaintiff's claims for "possession of personal property" and "conversion" fail for several

6   reasons.

7       First and foremost, the Plaintiff gave the officers permission to go to his home and retrieve his

8   firearms.

9       However, even assuming, *in arguendo*, that such fact is somehow disputed, the Officers were

10  fully justified in temporarily taking the guns given the Plaintiff's outward expressions of emotional

11  turmoil that gave the officers, and others, the distinct impression that the Plaintiff would harm himself,

12  or possibly others.  This is unquestionably a privileged act for which the Defendants cannot be liable.

13  See *e.g Church of Scientology v. Armstrong*, 232 Cal. App. 3d 1060 (1991) citing Rest. 2d Torts §

14  261; *Perez v. City of Placerville*, 2008 U.S. Dist. Lexis 83172 (E.D.CA Sept. 9, 2008); See also

15  *Outdoor Media Dimensions Inc., v. Oregon*, 326 Or. 627 (1997)[When property is lawfully taken,

16  there is no conversion]; *Mustola v. Toddy*, 253 Or. 658, 668 (1969)(confining the scope of a

17  conversion claim "to its narrowest possible limits when a police officer in an emergency situation

18  exercises control over the arrestee's property"].

19      Lastly, and quite significantly, the Defendants have made an effort to return the property by

20  specifically advising the Plaintiff what steps need to be taken to obtain return of his firearms under

21  California's Penal Code but the Plaintiff has failed to take any such measures! Specifically, California

22  Penal Code § 33800, et seq., provides a specific process and procedure that must be followed to obtain

23  a return of one's firearms. That the Plaintiff has not undertaken this process is not the fault of the

24  Defendants.  The Plaintiff could have sought the return of his property at any time but has failed to

25  do so. This cannot be considered any sort of trespass to chattels or conversion given the fact that the

26  ball is entirety in the Plaintiff's court.

27  ///

28  ///

# I. PLAINTIFF'S THIRTEENTH CAUSE OF ACTION FOR NEGLIGENCE FAILS AS A MATTER OF LAW

The Plaintiff's Thirteenth Cause of Action is for Negligence and is alleged against all Defendants.

### 1. The Individually Named Officers Are Not Liable Under a Theory of Negligence

To prevail on a common law claim of negligence against a police officer, Plaintiff must show that (1) the officer owed plaintiff a duty of care; (2) the officer breached the duty by failing "to use such skill, prudence, and diligence as other members of profession commonly possess and exercise," (3) there was a "proximate causal connection between the [officer's] negligent conduct and the resulting injury" to the plaintiff; and (4) the officer's negligence resulted in "actual loss or damage" to the plaintiff. *Harris v. Smith*, 157 Cal. App. 3d 100, 104 (1984).

Therefore, "to prevail on the negligence claim, Plaintiff must show that the *Defendant officers acted unreasonably and that the unreasonable behavior harmed Plaintiffs. Robinson v. City of San Diego*, 954 F. Supp. 2d 1010 (S.D. CA 2013) (internal quotation marks and citation omitted).

The conduct of the Defendant officers as described herein could not be considered negligent in any respect. The Defendant officers conducted a diligent investigation and made an arrest based on the direction of a supervising officer. Furthermore, the Defendant officers took steps to ensure that neither the Plaintiff or members of the public, including students at the school, were harmed or exposed to potential harm as a result of not only the Plaintiff's brining a loaded gun to school (which was in a backpack and not even on his person) but also the Plaintiff's psychological state which was clearly fragile and unstable. The Plaintiff made threats which the Officers took seriously. It would have been negligent had they *not* removed the Plaintiff from school grounds. This claim must be dismissed.

### 2. The City of Bakersfield Is Not Liable Under Plaintiff's Theory of Negligence

The Plaintiff cannot state a viable claim for Negligence against the City of Bakersfield.

Under California law, a "public entity is not liable for an injury," "[e]xcept as otherwise provided by statute." Cal. Govt. Code § 815. "[D]irect tort liability of public entities must be based on a specific statute declaring them to be liable, or at least creating some specific duty of care, and not

on the general tort provisions of Civil Code section 1714." *Eastburn v. Regional Fire Protection Authority,* 31 Cal. 4th 1175, 1183 (2003). "Otherwise, the general rule of immunity for public entities would be largely eroded by the routine application of general tort principles." Id (citations omitted). As the California Supreme Court observed, "the intent of the Tort Claims Act is not to expand the rights of plaintiffs in suits against governmental entities but to confine potential governmental liability to rigidly delineated circumstances." *Zelig v. Cty. of Los Angeles*, 27 Cal. 4th 1112,1127 (2002).

Here, Plaintiff never specifies what statute serves as a basis for his negligence claim and, in fact, there is not one. Indeed, under California law, "no state statute sets forth a duty of care with respect to the supervision, training, retention, or discipline of [police] officers." *Jaramillo v. City of San Mateo*, 76 F. Supp. 3d 905, 926 (N.D. CA 2014); See also *Munoz v. City of Union City*, 120 Cal. App. 4th 1077, 1111-1115 (2004)(reversing judgment against city for "negligence in the selection, training, retention, supervision and discipline of police officers" and finding no "Statutory basis" for the asserted duty of care". See also *Trevino v. City of Bakersfield*, 2016 U.S. Dist. Lexis 36457 (E.D. CA Mar. 21, 2016)[Honorable Jennifer L. Thurston].

## CONCLUSION

The causes of action alleged by the Plaintiffs are not legally or factually supportable and as such, Defendants are entitled to judgment as a matter of law on all such claims.

Dated: January 6, 2017                    MARDEROSIAN & COHEN

                                          */s/ Michael G. Marderosian*

                                          By:_____
                                                Michael G. Marderosian,
                                                Attorney for Defendants above-named.