DANIEL RODRIGUEZ, ESQ., SBN 096625
JOEL T. ANDREESEN, ESQ., SBN 152254
CHANTAL A. TRUJILLO, ESQ., SBN 289493
**RODRIGUEZ & ASSOCIATES**
**A PROFESSIONAL LAW CORPORATION**
2020 Eye Street
Bakersfield, CA 93301
Tel. No.: (661) 323-1400
Fax No.: (661) 323-0132

Attorneys for Plaintiff
KENT WILLIAMS

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENT WILLIAMS, | Case No. 1:14-CV-01955-JLT |
| Plaintiff, | **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE MOTION FOR SUMMARY ADJUDICATION; DECLARATION OF CHANTAL TRUJILLO, IN SUPPORT THEREOF; EXHIBITS ATTACHED THERETO** |
| vs. | |
| CITY OF BAKERSFIELD, OFFICER COLEMAN, OFFICER McCARTHY and DOES 1 to 100, Inclusive, | |
| Defendants. | **[SEPARATE STATEMENT CONCURRENTLY FILED HEREWITH]** |
| | **Date: February 13, 2017** **Time: 8:30 a.m.** **Courtroom: #4** **Hon. Jennifer L. Thurston** |

# Table of Contents

I. STANDARD ON MOTION FOR SUMMARY JUDGEMENT ............................... 2

II. THE COURT SHOULD DENY THE MOTION FOR SUMMARY JUDGEMENT BECAUSE TRIABLE ISSUE OF FACT EXIST..................…............................. 3

    A. THE COURT SHOULD DENY THE MOTION WITH RESPECT TO THE FIRST CAUSE OF ACTION BECAUSE THERE ARE TRIABLE ISSUES OF MATERIAL FACT CONCERNING WHETHER PLAINTIFF'S FOURTH AMENDMENT RIGHTS BY ARREST PLAINTIFF WITHOUT A WARRANT OR PROBABLE CAUSE............................................. 3

        1. At the time of Plaintiff's Arrest the Gun-Free School Act, California Penal Code § 626.9(l), Expressly Provided That It Did Not Apply to Someone, Like Plaintiff, "Holding A Valid License to Carry the Firearm."..................................... 3

        2. The Individual Defendants' Argument That Plaintiff Is Not Entitled to Recover on His First Cause of Action Because He Allegedly Committed Fraud in Obtaining His CCW Permit Is Without Merit.................................... 4

        3. The Excuse Of "I Was Just Following Orders" Wasn't Accepted at The Nuremburg Trials and It Shouldn't Be Accepted Here.....................................…................ 6

        4. The Individual Defendants Are Not Protected by Qualified Immunity.................................... 9

    B. PLAINTIFF DOES NOT OPPOSE THE MOTION WITH RESPECT TO THE SECOND CAUSE OF ACTION FOR VIOLATION OF THE SECOND AMENDMENT.................................... 12

C. **PLAINTIFF DOES NOT OPPOSE THE MOTION WITH RESPECT TO THE THIRD CAUSE OF ACTION FOR DEPRIVATION OF PLAINTIFF'S PROPERTY WITHOUT DUE PROCESS OF LAW**.................................................................. 12

D. **PLAINTIFF DOES NOT OPPOSE THE MOTION WITH RESPECT TO THE FOURTH CAUSE OF ACTION FOR VIOLATION OF THE RALPH CIVIL RIGHTS ACT, CALIFORNIA CIVIL CODE 51.7**.................................................. 12

E. **PLAINTIFF DOES NOT OPPOSE THE MOTION WITH RESPECT TO THE FIFTH CAUSE OF ACTION FOR VIOLATION OF THE UNRUH CIVIL RIGHTS ACT, CALIFORNIA CIVIL CODE §§ 51, 51.5**.......................................... 12

F. **THE COURT SHOULD DENY THE MOTION WITH RESPECT TO THE NINTH CAUSE OF ACTION FOR FALSE ARREST/FALSE IMPRISONMENT FOR THE REASONS STATED ABOVE**.................................................................. 12

G. **PLAINTIFF DOES NOT OPPOSE THE MOTION WITH RESPECT TO THE TENTH AND ELEVENTH CAUSES OF ACTION**.......................................... 13

H. **THERE ARE TRIABLE ISSUES OF MATERIAL FACT ON PLAINTIFF'S THIRTEENTH CAUSE OF ACTION FOR NEGLIGENCE AGAINST THE INDIVIDUAL DEFENDANTS. MOREOVER, PLAINTIFF'S THIRTEENTH CAUSE OF ACTION FOR NEGLIGENCE AGAINST THE CITY OF BAKERSFIELD IS PROPERLY BASED NOT ONLY ON THE NEGLIGENCE OF THE INDIVIDUAL DEFENDANTS HEREIN, BUT ALSO ON THE NEGLIGENT CONDUCT OF NON-DEFENDANT SERGEANT JOE GRUBS**.......................................... 14

III. **CONCLUSION**.................................................................. 15

# Table of Authorities:

Adickes v. S.H. Kress & Co. (1970) 398 U.S. 144, 157, 90 …….......…………… 2

Lake Nacimiento Ranch Co. v. San Luis Obispo County 841 F.2d 872, 875 (9th Cir. 1987) ………………………………………………………………… 2

Masson v. New Yorker Magazine, Inc. (1991) 501 U.S. 496 ………………… 2

Eastman Kodak Co. v. Image Technical Services, Inc. (1992) 504 U.S. 451 ……… 2

McSherry v. City of Long Beach 584 F.3d 1129, 1135 (9th Cir. 2009) ………… 2

E.E.O.C. v. Boeing Co. 577 F.3d 1044, 1050 (9th Cir. 2009) ………………… 2

Allen in City of Portland 73 F.3d 232 (9th Cir. 1995) ………………………… 5

Wong Sun v. United States (1963) 371 U.S. 471, 482, ………………………… 5

Henry v. United States (1959) 361 U.S. 98, 103 ……………………………… 5

Accord Blankenhom v. City of Orange 485 F.3d 463, 490 (9th Cir. 2007) ……… 5

Devenpeck v. Alford (2004) 543 U.S. 146, 152 ……………………………… 5

Kuehl v. Burns 173 F.3d 646, 650 (8th Cir. 1999) …………………………… 5

Accord Radvansky v. City of Olmstead Falls 395 F.3d 291, 305 – 306 (6th Cir. 2005) …………………………………………………………………… 5

Section 1983 Litigation – Claims and Defenses § 3:19[B], at 3-901 (Wolters Kluwer 2017) …………………………………………………………… 5

United States v. Robinson 432 F.3d 1072 (9th Cir. 2005) ……………………… 6

Coello v. City of Hermosa Beach 2009 U.S. Dist. LEXIS 13142 (C.D. Cal. 2009) ………………………………………………………… 7, 8, 9

Motley v. Parks 432 F.3d 1072, 1081 (9th Cir. 2005) ………………………… 8

<u>United States v. Jensen</u> 425 F.3d 698, 704 (9th Cir. 2005) ......................... 8

<u>Section 1983 Litigation – Claims and Defenses</u> § 9A.05[D], at 9A 91 (Wolters Kluwer 2017) ............................................................ 8, 9

<u>California Attorneys for Criminal Justice v. Burns</u> 195 F.3d 1039 (9th Cir. 1999) ............................................................ 8, 9

<u>Robins v. Meecham</u> 60 F.3d 1436 (9th Cir. 1995) ......................... 9

<u>Deorle v. Rutherford</u> 272 F.3d 1272 (9th Cir. 2001) ..................... 10

<u>Anderson v. Creighton</u> (1987) 483 U.S. 635, 640 ..................... 10, 11

<u>Mendoza v. Block</u> 27 F.3d 1357, 1361 (9th Cir.1994) ................... 10

<u>Casteel v. Pieschek</u> 3 F.3d 1050, 1053 (7th Cir.1993) ................... 10

<u>Devereaux v. Abbey</u> 263 F.3d 1070 (9th Cir. 1070) ................... 10, 11

<u>United States v. Lanier</u> (1997) 520 U.S. 259, 271 ..................... 10

<u>Giebel v. Sylvester</u> 244 F.3d 1182, 1189 (9th Cir.2001) ............... 11

<u>Lie v. Phillips</u> 234 F. 3d 55, 57 (1st Cir. 2000) ..................... 11

<u>Messerschmidt v. Millender</u> (2012) 565 U.S. 535 ..................... 11

<u>Peruta v. San Diego</u> 824 F.3d 919 (9th Cir. 2016) ..................... 12

<u>Richards v. Prieto</u> 782 F.3d 417 (9th Cir. 2015) ..................... 12

<u>Becerra v. County of Santa Cruz</u> (1998) 68 Cal.App.4th 1450, 1461 – 1462 ... 13, 15

## I. STANDARD ON MOTION FOR SUMMARY JUDGMENT.

It is axiomatic under Rule 56 that the Court cannot properly grant summary judgment where there are triable issues of material fact. Equally important, even where the basic facts are undisputed, if reasonable minds could differ on the inferences to be drawn from those facts, summary judgment should be denied. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 1608 (1970); Lake Nacimiento Ranch Co. v. San Luis Obispo County, 841 F.2d 872, 875 (9th Cir. 1987).

Summary judgment cannot be granted where the opposing party's evidence **or reasonable inferences from such evidence** raise a genuine dispute as to any material fact shown by the moving party. Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 111 S.Ct. 2419, 2435 (1991)

All reasonable inferences must be drawn in the opposing party's favor **both where the underlying facts are undisputed** and where they are in controversy. Eastman Kodak Co. v. Image Technical Services, Inc., 504 U.S. 451, 112 S.Ct. 2072 (1992); McSherry v. City of Long Beach, 584 F.3d 1129, 1135 (9th Cir. 2009).

Inferences arising from direct evidence may constitute proof for purposes of a motion for summary judgment. E.E.O.C. v. Boeing Co., 577 F.3d 1044, 1050 (9th Cir. 2009). Inferences drawn from the evidence must be viewed in the light most favorable to the nonmoving party. Eastman Kodak Co. v. Image Technical Services, Inc., 504 U.S. 451, 456, 112 S.Ct. 2072, 2077 (1992).

## II.    THE COURT SHOULD DENY THE MOTION FOR SUMMARY JUDGMENT BECAUSE TRIABLE ISSUE OF FACT EXIST.

### A.    The Court Should Deny The Motion With Respect To The First Cause Of Action Because There Are Triable Issues Of Material Fact Concerning Whether Plaintiff's Fourth Amendment Rights By Arresting Plaintiff Without A Warrant Or Probable Cause.

#### 1.    At The Time Of Plaintiff's Arrest The Gun-Free School Act, California Penal Code § 626.9(l), Expressly Provided That It Did Not Apply To Someone, Like Plaintiff, "Holding A Valid License To Carry The Firearm."

At the time of Plaintiff's arrest, the Gun-Free School Act, California Penal Code § 626.9(l), provided:

> (l) **This section does not apply to** a duly appointed peace officer as defined in Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2, a full-time paid peace officer of another state or the federal government who is carrying out official duties while in California, any person summoned by any of these officers to assist in making arrests or preserving the peace while he or she is actually engaged in assisting the officer, a member of the military forces of this state or of the United States who is engaged in the performance of his or her duties, **a person holding a valid license to carry the firearm pursuant to Chapter 4 (commencing with Section 26150) of Division 5 of Title 4 of Part 6,** or an armored vehicle guard, engaged in the performance of his or her duties, as defined in subdivision (e) of Section 7521 of the Business and Professions Code.

Cal. Pen. Code § 626(l) (Effective: January 1, 2012 to December 31, 2015) (emphasis added).

///

///

Plaintiff's Second Amended Complaint alleges, and for the purposes of the pending Motion Defendants do not contest, that at the time of Plaintiff's arrest:

(a) Plaintiff held "a valid license to carry the firearm pursuant to Chapter 4 (commencing with Section 26150) of Division 5 of Title 4 of Part 6" within the meaning of California Penal Code § 626.9(l);

(b) Plaintiff informed Defendants he had such a license;

(c) Plaintiff presented a copy of such license to Defendants;

(d) Defendants had a copy of the then applicable statute, California Penal Code § 626.9; and

(e) Defendants were trained at the time of the incident as to how to read and interpret the California Penal Code, such as California Penal Code § 626.9.

The evidence confirms Plaintiff's allegations in this regard. See, e.g., Coleman Depo., at 19:4-7; 22:8 – 23:11; 26:13-24; Person Most Knowledgeable Fidler Depo., at pp.39:4-40:6.

Further, School Security Guard William Darby testified that: (a) he had worked for the Bakersfield Police Department "just shy of 20 years" (see Darby Depo., at 9:10-17); and (b) he knew it was not illegal for Plaintiff to have a gun on campus (see Darby Depo., at 17:19 – 18:6).

### 2. The Individual Defendants' Argument That Plaintiff Is Not Entitled To Recover On His First Cause Of Action Because He Allegedly Committed Fraud In Obtaining His CCW Permit Is Without Merit.

The individual defendants argue without citation of legal authority (for obvious reasons) that Plaintiff is not entitled to recover on his First Cause of Action for violation of

his Fourth Amendment rights because he allegedly committed fraud in obtaining his CCW permit. The argument is without merit. The existence of probable cause to arrest is determined based on the facts and **circumstances known to the officer at the time of the arrest**, and cannot be somehow be salvaged by alleged after-acquired "facts." As the Ninth Circuit explained in Allen in City of Portland, 73 F.3d 232 (9th Cir. 1995):

> "Probable cause must be determined at the time the arrest is made. **Facts learned or evidence obtained as a result of a stop or arrest cannot be used to support probable cause unless they were known to the officer at the moment the arrest was made.** See Wong Sun v. United States, 371 U.S. 471, 482, 83 S.Ct. 407, 414, 9 L.Ed.2d 441 (1963); Henry v. United States, 361 U.S. 98, 103, 80 S.Ct. 168, 171, 4 L.Ed.2d 134 (1959).

Allen, 73 F.3d at 236 -237 (emphasis added). Accord Blankenhom v. City of Orange, 485 F.3d 463, 490 (9th Cir. 2007) ("""[w]hether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arrest officer **at the time of arrest,**" Devenpeck v. Alford, 543 U.S. 146, 152, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004) (emphasis added), **so the post-arrest request cannot support a finding of probable cause.**").

Further, "[a]n officer contemplating an arrest is not free to disregard exculpatory evidence, if substantial inculpatory evidence (standing by itself) suggests that probable cause exists." Kuehl v. Burns, 173 F.3d 646, 650 (8th Cir. 1999). Accord Radvansky v. City of Olmstead Falls, 395 F.3d 291, 305 – 306 (6th Cir. 2005). See 1 Section 1983 Litigation – Claims and Defenses, § 3:19[B], at 3-901 (Wolters Kluwer 2017).

In the present case it is uncontested that at the time of Plaintiff's arrest the individual defendants: (a) knew Plaintiff was in possession of a facially and presumptively valid CCW permit that would provide a complete defense to the contemplated criminal defense; and (b) had no reason to believe the permit was invalid.

### 3. The Excuse Of "I Was Just Following Orders" Wasn't Accepted At The Nuremburg Trials And It Shouldn't Be Accepted Here.

Given the recent passing of Holocaust Remembrance Day, the individual defendants' excuse that they were "just following orders" is particularly troubling. The excuse of "I was just following Orders wasn't accepted at the Nuremburg trials, and it shouldn't be accepted here. Fortunately for civil society, the excuse is without merit in the Ninth Circuit.

Defendants rely on <u>United States v. Robinson</u>, 432 F.3d 1072 (9th Cir. 2005). In <u>Robinson</u>, the Court initially observed:

> On the evening of September 25, 1975, Officer Holland received a radio message from the Kingman, Arizona police dispatcher advising him to be on the lookout for a possible stolen 1976 Oldsmobile Cutlass, Nevada license CKC 434. Officer Holland testified that at the time he received the message, he believed that the dispatcher had obtained some information from an inspector at the Agricultural Inspection Station located at the Nevada-Arizona border. The Government did not call either the dispatcher or the inspector to testify. Officer Holland knew nothing more about the information upon which the dispatcher relied, and he knew none of the facts upon which the inspector relied to transmit the message. Based solely on the dispatcher's report, and not upon any observations of his own to justify the stop, Officer Holland saw the described vehicle and stopped it. Robinson was unable to produce his driver's license or the vehicle registration. A search of the automobile followed, during the course of which a bill of lading was discovered showing that the automobile had been shipped to a dealer in Las Vegas. The speedometer registered the exact mileage between Las Vegas, Nevada, and Kingman, Arizona. Officer Holland arrested Robinson for driving without a license. While Robinson was in custody, after effectively waiving his Miranda rights, he confessed the theft and the interstate transportation of the automobile. Robinson moved to suppress all of the evidence obtained after the stop as fruit of the illegal stop. Because we agree that the stop was illegal, the evidence should have been suppressed.

<u>Robinson</u>, 432 F.3d at 1299.

Based on these facts, the Robinson Court observed:

> Officer Holland had no personal knowledge of any facts upon which to found suspicion. The foundation, if any, had to be supplied by the person whose observations and information generated the suspicion. The dispatch to Officer Holland, standing alone, does not prove the existence of founded suspicion. **A facially valid direction from one officer to another to stop a person or a vehicle insulates the complying officer from assuming personal responsibility or liability for his act done in obedience to the direction.** But the direction does not itself supply legal cause for the detention, any more than the fact of detention supplies its own justification.

Id. (emphasis added).

Defendants' reliance on Robinson is unjustified and misplaced for two independent reasons. First, Robinson, was a criminal case, and the civil liability of the individual law enforcement officers simply was not and could not be in issue. Thus, the language, "A facially valid direction from one officer to another to stop a person or a vehicle insulates the complying officer from assuming personal responsibility **or liability** for his act done in obedience to the direction," is clearly and obviously dicata.

Secondly, Robinson is factually distinguishable from the present case. In Ronbinson, the officer who made the stop, Holland, was not and could not be knowledgeable about the relevant facts concerning the alleged crime, and necessarily had to rely only the information provided by radio. In contrast, the individual defendants herein were fully aware of all of the relevant facts, as well as the text of the law at issue.

Defendants also rely on Coello v. City of Hermosa Beach, 2009 U.S. Dist. LEXIS 13142 (C.D. Cal. 2009). In Coello, the Court observed:

> Officers Droz and Parente contend that they are entitled to summary judgment because they could lawfully assist Officer Lobue with the arrest without making their own determination of probable cause. **Coello appears to concede this point.** See Opp. 18:21-22 ("[U]nlike Droz and Parente, Brunn cannot defend Coello's claims by mere reliance on Lobue's factual assertions supporting probable cause.").

Because "effective and efficient law enforcement requires cooperation and division of labor to function . . . officers are generally entitled to rely on information obtained from fellow law enforcement officers." Motley v. Parks, 432 F.3d 1072, 1081 (9th Cir. 2005) (en banc). **Officers often make arrests at the direction of another officer, even when they lack actual, personal knowledge of the facts supporting probable cause.** United States v. Jensen, 425 F.3d 698, 704 (9th Cir. 2005). Here, Officers Droz and Parente were under no duty to independently investigate whether probable cause existed to arrest Coello. Accordingly, summary judgment is granted for them on Coello's false arrest claim.

Coello, 2009 U.S. Dist. LEXIS 13142, at *12 (footnote omitted, emphasis added). The individual Defendants' reliance on Coello is misplaced for three reasons. First, because the plaintiff in Coello conceded the issue, the issue was not contested and the discussion in Coello cannot properly be considered precedent on that point.

Secondly, the Coello Court relied solely on the decision on Motley which, as discussed above, is not controlling because: (a) it is criminal case which did not and indeed could not address the issue of the officers' civil liability; and (b) is factually distinguishable.

Thirdly, Coello, like Motley, is yet another case were the officers at issue necessarily had to rely on factual information provided by other officers. Again in contrast, the individual defendants herein were fully aware of all of the relevant facts, as well as the text of the law at issue.

Additionally, the discussion in Coello is inconsistent with binding Ninth Circuit Court of Appeal authority. As stated in the treatise Section 1983 Litigation – Claims and Defenses, "[i]t is unclear whether an official who violated clearly established law will nevertheless be protected by qualified immunity because he complied with the order of a superior officer." 1A Section 1983 Litigation – Claims and Defenses, § 9A.05[D], at 9A-91 (Wolters Kluwer 2017). The only Ninth Circuit case cited by that treatise on the issue is California Attorneys for Criminal Justice v. Burns, 195 F.3d 1039 (9th Cir. 1999), cert. denied, 530 U.S. 2000). See 1A Section 1983 Litigation – Claims and Defenses,

§ 9A.05[D], at 9A-95 to 96 (Wolters Kluwer 2017). In <u>California Attorneys for Criminal Justice</u>, the officers violated <u>Miranda</u> principles by interrogating the plaintiff suspects after they invoked their rights to remain silent and to counsel. The officers argued that they were protected by qualified immunity because they relied on the city's training and its training materials. The <u>California Attorneys for Criminal Justice</u> Court rejected this argument, holding: "The fact that Los Angeles and Santa Monica may have trained their police to violate the rights of individuals does not provide any defense for these officers." <u>California Attorneys for Criminal Justice v. Burns</u>, 195 F.3d at 1049.

The individual defendants' argument and the decision in <u>Coello</u> are also inconsistent with the fact that:

> The lower federal courts have consistently held that law enforcement officers, supervisory and non-supervisory, who have a realistic opportunity to prevent a fellow officer from violating a citizen's constitutional righs, may be liable for failing to do so.

1 <u>Section 1983 Litigation – Claims and Defenses</u>, § 3:09[1], at 3-341 (Wolters Kluwer 2017). Thus, in <u>Robins v. Meecham</u>, 60 F.3d 1436 (9th Cir. 1995), the Court held that the prison officials could be held liable for violating a prisoner's Eighth Amendment right by failing to prevent an officer's excessive use of force. <u>Robins</u>, 60 F.3d at 1442. Such holding is inconsistent with the idea that the excuse of "I was just following orders" is acceptable in the Ninth Circuit.

### 4. The Individual Defendants Are Not Protected By Qualified Immunity.

The individual defendants argue that they are protected by qualified immunity because there is no case directly on point establishing the unconstitutionality of their conduct. The individual defendants' argument is without merit because: (a) the most obvious and egregious unconstitutional misconduct rarely occurs; and (b) when it does

occur, it is rarely litigated to a decision and is usually settled.  As the Court held and explained in Deorle v. Rutherford, 272 F.3d 1272 (9th Cir. 2001):

> Although there is no prior case prohibiting the use of this specific type of force in precisely the circumstances here involved, that is insufficient to entitle Rutherford to qualified immunity: **notwithstanding the absence of direct precedent, the law may be, as it was here, clearly established.** See Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (rejecting the notion that officer liability cannot exist "unless the very action in question has previously been held unlawful"). **Otherwise, officers would escape responsibility for the most egregious forms of conduct simply because there was no case on all fours prohibiting that particular manifestation of unconstitutional conduct.** When " 'the defendant ['s] conduct is so patently violative of the constitutional right that reasonable officials would know without guidance from the courts' that the action was unconstitutional, closely analogous pre-existing case law is not required to show that the law is clearly established." Mendoza v. Block, 27 F.3d 1357, 1361 (9th Cir.1994) (quoting Casteel v. Pieschek, 3 F.3d 1050, 1053 (7th Cir.1993)).

Deorle, 272 F.3d at 1285 – 1286 (emphasis added).  The Deorle rule is clearly applicable in the present case. The individual defendants herein needed no specific guidance from the courts to know that it was unconstitutional to arrest Plaintiff: (a) for a non-existent crime; and/or (b) when the uncontested facts of which they were aware established without doubt that he was innocent of any possible criminal charge.

Similarly, in Devereaux v. Abbey, 263 F.3d 1070 (9th Cir. 1070) (en banc):

> **Perhaps because the proposition is virtually self-evident, we are not aware of any prior cases that have expressly recognized this specific right, but that does not mean that there is no such right.** Rather, what is required is that government officials have "fair and clear warning" that their conduct is unlawful. See United States v. Lanier, 520 U.S. 259, 271, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997) (noting that "general statements of the law are not inherently incapable of giving fair and clear warning," and that "a general constitutional rule already identified in the decisional law may apply with

obvious clarity to the specific conduct in question, even though 'the very action in question has [not] previously been held unlawful' " (quoting Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)) (alteration in original)); see also Giebel v. Sylvester, 244 F.3d 1182, 1189 (9th Cir.2001) ("Precedent directly on point is not necessary to demonstrate that a right is clearly established. Rather, if the unlawfulness is apparent in light of preexisting law, then the standard is met. **In addition, even if there is no closely analogous case law, a right can be clearly established on the basis of common sense.**" (emendations, internal quotation marks, and citations omitted)).

Devereaux, 263 F.3d at 1075 (emphasis added).

The individual defendants rely on Lie v. Phillips, 234 F. 3d 55, 57 (1st Cir. 2000), for the general proposition, an officer "may reasonably rely on a fellow officer or agent, who does (or by position should) know the substantive law and the facts and who (based on that knowledge) asserts" that some action is lawful. The decision in Lie is inapplicable because it applies, by its own terms, only "where the agent who directs or authorizes the arrest has made a mistake of law **equally invisible to the assisting officer.**" Id. (emphasis added). That is not the case here. Here, Plaintiff's uncontested allegation and the additional evidence show that the individual Defendants had and looked at a copy of the then applicable Gun-Free School Act, California Penal Code § 626.9(l), before they made the arrest.

Finally, the individual Defendant's reliance of Messerschmidt v. Millender, 565 U.S. 535, 132 S.Ct. 1235 (2012), for the general proposition that, "Reliance on a supervisor is a pertinent factor in considering the issue of qualified immunity" is unwarranted and, quite frankly, misleading. In Messerschmidt the officer relied not only on their superiors, but "'on their superiors, **the district attorney, and the magistrate** to correct' any overbreadth" in a warrant. Messerschmidt, 132 S.Ct. at 1244.

In conclusion, the individual Defendants cannot seriously argue they are entitled to qualified immunity based on their alleged inability to read a simple, unambiguous statute.

**B.** **Plaintiff Does Not Oppose The Motion With Respect To The Second Cause Of Action For Violation Of The Second Amendment.**

Plaintiff does not oppose the motion with respect to the Second Cause of Action for violation of the Second Amendment given the en banc Ninth Circuit decision in Peruta v. San Diego, 824 F.3d 919 (9th Cir. 2016) (en banc), which: (a) was entered after the filing of the complaint herein; and (b) overruled the panel decisions in Peruta v. Cty. of San Diego, 781 F.3d 1106 (9th Cir. 2015), and Richards v. Prieto, 782 F.3d 417 (9th Cir. 2015).

**C.** **Plaintiff Does Not Oppose The Motion With Respect To The Third Cause Of Action For Deprivation Of Plaintiff's Property Without Due Process Of Law.**

Plaintiff does not oppose the Motion with respect to the Third Cause of Action for Deprivation of Plaintiff's Property Without Due Process Of Law.

**D.** **Plaintiff Does Not Oppose The Motion With Respect To The Fourth Cause Of Action For Violation Of the Ralph Civil Rights Act, California Civil Code 51.7.**

Plaintiff does not oppose the Motion with respect to the Fourth Cause of Action for Violation of the Ralph Civil Rights Act, California Civil Code §51.7.

**E.** **Plaintiff Does Not Oppose The Motion With Respect To The Fifth Cause Of Action For Violation of the Unruh Civil Rights Act, California Civil Code §§ 51, 51.5.**

Plaintiff does not oppose the Motion with respect to the Fifth Cause of Acton for Violation of the Unruh Civil Rights Act, California Civil Code §§ 51, 51.5.

**G.** **The Court Should Deny The Motion With Respect To The Ninth Cause Of Action For False Arrest / False Imprisonment For The Reasons Stated Above.**

The Court should deny the Motion with respect to the Ninth Cause of Action for False Arrest / False Imprisonment for the reasons stated above.

In addition, the operable Second Amended Complaint repeatedly and consistently alleges statutory respondeat superior liability against Defendant City of Bakersfield under California Government Code § 815.2(a). <u>See</u> Second Amended Complaint, ¶¶ 4, 46, 53, 59, 64, 69, 74 (in the Ninth Cause of Action for False Arrest / False Imprisonment), 88, 92, and 96. Section 815.2(a) provides:

> (a) A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative.

Cal. Gov. Code §815.2(a).

Significantly, the Legislative Committee Comment – Senate to California Government Code § 815.2 explains in relevant part:

> Under this section, it will not be necessary in every case to identify the particular employee upon whose act the liability of the public entity is to be predicated. All that will be necessary will be to show that some employee of the public entity tortiously inflicted the injury in the scope of his employment under circumstances where he would be personally liable.

Legislative Committee Comment – Senate to California Government Code § 815.2.

Thus, Defendant City of Bakersfield has statutory respondeat superior liability under section 815.2(a) not only for the conduct of the individual defendants herein, but also for the negligent conduct of non-defendant Sergeant J,oe Grubs. <u>See</u> <u>Becerra v. County of Santa Cruz</u>, 68 Cal.App.4th 1450, 1461 – 1462, n. 5 (1998) ("Plaintiffs did not name any individual defendants in connection with the causes of action against the County. **Identification of a specific employee tortfeasor is not essential to County liability under section 815.2.** The Legislative Committee Comment to section 815.2 states: "[I]t

will not be necessary in every case to identify the particular employee upon whose act the liability of the public entity is to be predicated. All that will be necessary will be to show that some employee of the public entity tortiously inflicted the injury in the scope of his employment under circumstances where he would be personally liable.'"").

**H.   Plaintiff Does Not Oppose The Motion With Respect To The Tenth And Eleventh Causes Of Action.**

Plaintiff does not oppose the Motion With Respect To The Tenth and Eleventh Causes of Action.

**I.   There Are Triable Issues Of Material Fact On Plaintiff's Thirteenth Cause Of Action For Negligence Against The Individual Defendants. Moreover, Plaintiff's Thirteenth Cause Of Action For Negligence Against The City Of Bakersfield Is Properly Based Not Only On The Negligence Of The Individual Defendants Herein, But Also On The Negligent Conduct Of Non-Defendant Sergeant Joe Grubs.**

For the foregoing reasons, there are triable issues of material fact with respect to the Thirteenth Cause of Action against the individual defendants.

With respect to Defendant City of Bakersfield, Defendants argue that "Plaintiff never specifies what statute serves as a basis for his negligence claim, and in fact there is not one." See Motion, at 30:7-8. The argument is specious. Moreover, Plaintiff's Thirteenth Cause of Action for Negligence against the City of Bakersfield is properly based not only on the negligence of the individual defendants herein, but also on the negligent conduct of non-defendant Sergeant Joe Grubs.

Again, the operable Second Amended Complaint repeatedly and consistently alleges statutory respondeat superior liability under California Government Code § 815.2(a). See Second Amended Complaint, ¶¶ 4, 46, 53, 59, 64, 69, 74, 88, 92, and 96 (in the Thirteenth Cause of Action for Negligence). Section 815.2(a) provides:

(a) A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative.

Cal. Gov. Code §815.2(a).

Again, the Legislative Committee Comment – Senate to California Government Code § 815.2 explains in relevant part:

Under this section, it will not be necessary in every case to identify the particular employee upon whose act the liability of the public entity is to be predicated. All that will be necessary will be to show that some employee of the public entity tortiously inflicted the injury in the scope of his employment under circumstances where he would be personally liable.

Legislative Committee Comment – Senate to California Government Code § 815.2.

Thus, Defendant City of Bakersfield has statutory respondeat superior liability under section 815.2(a) not only for the negligent conduct of the individual defendants herein, but also for the negligent conduct of non-defendant Sergeant Joe Grubs. See Becerra v. County of Santa Cruz, 68 Cal.App.4th 1450, 1461 – 1462, n. 5 (1998) ("Plaintiffs did not name any individual defendants in connection with the causes of action against the County. **Identification of a specific employee tortfeasor is not essential to County liability under section 815.2.** The Legislative Committee Comment to section 815.2 states: "[I]t will not be necessary in every case to identify the particular employee upon whose act the liability of the public entity is to be predicated. All that will be necessary will be to show that some employee of the public entity tortiously inflicted the injury in the scope of his employment under circumstances where he would be personally liable."").

## III.    CONCLUSION.

A running theme throughout Defendants' Motion is the idea that they were concerned that Plaintiff may have posed a threat to himself or others. If so, Defendants

should have sought a psychiatric hold on Plaintiff under California Welfare and Institutions Code § 5150 **if** Plaintiff met the criteria for such a hold. Defendants' concerns did not give them the right to arrest Plaintiff: (a) for a non-existent crime; and/or (b) when the uncontested facts of which they were aware established without doubt that he was innocent of any possible criminal charge. California Welfare and Institutions Code § 5150, and the requirements thereof, exist for a reason. Defendants' concerns, no matter how honest and well-intentioned, did not give them carte blanche to ignore either the requirements of section 5150 or the Constitution of the United States.

For the foregoing reasons, the Court should deny the Motion.

Dated:  January 30, 2017          RODRIGUEZ & ASSOCIATES

                                  /s/ Chantal A. Trujillo
                                  Chantal A. Trujillo
                                  Attorneys for Plaintiff

# DECLARATION OF CHANTAL TRUJILLO

I, Chantal Trujillo, hereby declare:

1. I am an attorney duly licensed to practice law before all the Courts of the State of California, and I am an Associate of the law firm Rodriguez & Associates, attorneys of record herein for Plaintiff. As such, I am familiar with the facts set forth herein, which are of my own personal knowledge, and if called upon to testify thereto, I could and would competently do so under oath.

2. Attached hereto as "Exhibit A" is true and correct copies of excerpts of the transcript of the September 1, 2016 deposition of Sgt. Royce Haislip.

3. Attached hereto as "Exhibit B" are true and correct copies of excerpts of the December 2, 2016 deposition of Dr. Albert Ma.

4. Attached hereto as "Exhibit C" are true and correct copies of excerpts of the transcript of the June 10, 2016 deposition of Geraldine Kincaid.

5. Attached hereto as "Exhibit D" are true and correct copies of excerpts of the transcript of the August 5, 2016 deposition of Verion Coleman.

6. Attached hereto as "Exhibit E" are true and correct copies of excerpts of the transcript of the September 9, 2016 deposition of William Darbee.

7. Attached hereto as "Exhibit F" are true and correct copies of excerpts of the transcript of the September 16, 2016 deposition of the Person Most Knowledgeable Kevin Fidler.

8. Attached hereto as "Exhibit G" are true and correct copies of excerpts of the transcript of the May 2, 2016 deposition of Joseph Grubbs.

I declare under penalty of perjury that the foregoing is true and correct executed on January 30, 2017 at Bakersfield, California.



Chantal Trujillo

# EXHIBIT A

UNITED STATES DISTRICT COURT

EASTERN DISTRICT / FRESNO DIVISION

_____

KENT WILLIAMS,                    No. 1:14-CV-01955-JLT

                    Plaintiff,

vs.

CITY OF BAKERSFIELD, OFFICER
COLEMAN, OFFICER McCARTHY,
and DOES 1 to 100, inclusive,

                    Defendants.
_____

DEPOSITION OF SERGEANT ROYCE HAISLIP

Taken at

Keleher's Certified Shorthand Reporters
19237 Flightpath Way, Suite 100
Bakersfield, California

Thursday, September 1, 2016 at 3:29 P.M.


Reported by:

Ashleigh Button, CSR #14013

```
 1                    APPEARANCES:

 2

 3      For the Plaintiff:

 4           RODRIGUEZ & ASSOCIATES

 5           BY JOEL T. ANDREESEN, ESQ.

 6           2020 EYE STREET

 7           BAKERSFIELD, CA  93301

 8           (661) 323-1400

 9           JANDREESEN@RODRIGUEZLAW.COM

10

11      For the Defendants:

12           MARDEROSIAN & COHEN

13           BY MICHAEL G. MARDEROSIAN

14           1260 FULTON MALL

15           FRESNO, CA  93721

16           (559) 441-7991

17           (Via Video Conference)

18

19

20

21

22

23

24

25
```

```
                              INDEX

EXAMINATION BY:                              PAGE

MR. MARDEROSIAN                                5

MR. ANDREESEN                                15

MR. MARDEROSIAN                               23
```
EXAMINATION BY:     PAGE

MR. MARDEROSIAN — 5

MR. ANDREESEN — 15

MR. MARDEROSIAN — 23

```
 1                          EXHIBITS

 2    MARKED              DESCRIPTION                    PAGE

 3    EXHIBIT A           County of Kern Records for       8

 4                        Kent Williams

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                    SERGEANT ROYCE HAISLIP,
              Having been sworn, testified as follows:
 2

 3              EXAMINATION BY MR. MARDEROSIAN:

 4       Q.    Can you give us your name, please?

 5       A.    It's Royce, R-O-Y-C-E, and the last is

 6   Haislip, H-A-I-S-L-I-P, as in Paul.

 7       Q.    All right.  Well, thank you for coming here

 8   today.

 9              Do I understand that you are a sergeant with

10   the Kern County Sheriff's Department?

11       A.    Yes, sir.

12       Q.    And how long have you been with the Kern

13   County Sheriff?

14       A.    Almost 20 years.

15       Q.    Congratulations.  And in October of 2015,

16   during the time period that you were dealing with this

17   issue regarding a permit, a gun permit, concealed

18   weapons permit, issued to Kent Williams, what were your

19   duties at that time?

20              How would you describe your job duties at that

21   time?

22       A.    I was assigned to the Kern County Sheriff's

23   licensing unit, which handles concealed weapon permits,

24   explosive permits, business licenses, things of that

25   nature.
```

```
 1   Sheriff's Office?  Those are slightly different.
 2        Q.   The requirements of the Sheriff's Office.
 3        A.   I am familiar with what the Sheriff's Office
 4   requires.
 5        Q.   And one of the requirements of the Sheriff's
 6   Office is that someone who holds a concealed weapons
 7   permit should not ingest, inhale, inject, or be under
 8   the influence of illegal drugs while carrying the
 9   weapon, correct?
10        A.   Yes, sir.
11        Q.   And not be under the influence of alcohol
12   while carrying the weapon, correct?
13        A.   Correct.
14        Q.   In this case with Mr. Williams, did you have
15   any information or evidence that Mr. Williams was under
16   the influence of illegal drugs while carrying the
17   concealed weapon?
18        A.   No, sir.
19        Q.   Did you have any evidence that Mr. Williams
20   was under the influence of alcohol while carrying a
21   concealed weapon?
22        A.   No, sir.
23        Q.   And your primary concern was question number
24   two on the application, which dealt with the issue
25   of the mental illness, correct?
```

```
 1            MR. MARDEROSIAN:  Objection.  Calls for an
 2    opinion and speculation.
 3            THE WITNESS:  Frequently, when I have
 4    questions about any portion of an application, if
 5    there's something I think could be a problem, I would
 6    frequently meet with those specific applicants.  I
 7    don't meet with everyone.
 8            I -- I get too many of those to -- I get too
 9    many applications to meet with everyone.  But when
10    there's something that I might have a question about,
11    whether or not somebody had drug use 20 years ago, I
12    might meet with that applicant so that I can make a
13    proper judgment whether I think drugs are still a
14    problem for them.  So that's something I might meet
15    with somebody about, just to discuss it further to make
16    my own determination.
17        Q.   So if I understand what you're saying, you
18    sort of do it on a case-by-case basis, depending on
19    what is indicated in the application?
20        A.   That's correct.
21        Q.   And have you ever disqualified someone since
22    you started reviewing concealed weapon permit
23    applications because they have disclosed they had an
24    anxiety disorder?
25            MR. MARDEROSIAN:  Objection.  Vague.
```

```
 1   Irrelevant.  Calls for speculation.

 2           THE WITNESS:  I can't say I've -- I've denied

 3   somebody strictly for that.  There are other mental

 4   health issues that I have, and those dealt primarily

 5   with people who had recent -- might have recently been

 6   put on a hold for a WI5150 for a danger -- being a

 7   danger to themselves.

 8           I do know that fairly recently, I have

 9   approved an application for somebody who had an anxiety

10   disorder and had been treated for one.  So like I said,

11   it's not an absolute disqualifying feature; however,

12   whenever something is left off of an application,

13   whether it's an arrest, from my perspective, I feel I

14   have to look at that as a lie of omission.  They're

15   leaving that off for a specific reason.  So -- and

16   that's kind of how I treat them initially.

17       Q.   Was that how you treated this particular

18   response --

19       A.   Yes.

20       Q.   -- with Mr. Williams?

21       A.   Yes.  I -- I viewed this as a lie of omission

22   just based off of research that I had done and the fact

23   that he had been treated for it as long as he had

24   indicated he -- that was my basis for my indication

25   that he should have known that that was a mental
```

```
 1   STATE OF CALIFORNIA )
                        )        ss.
 2   COUNTY OF KERN      )

 3

 4            I, SERGEANT ROYCE HAISLIP, do hereby certify:

 5        That I have read the foregoing deposition;

 6        That I have made such changes in form and/or

 7   substance to the within deposition as might be

 8   necessary to render the same true and correct;

 9        That having made such changes thereon, I

10   hereby subscribe my name to the deposition.

11            I declare, under penalty of perjury, that the

12   foregoing is true and correct.

13            Executed this ____ day of _____, 2016,

14   at _____, California.

15

16

17

18                      _____

19                      SERGEANT ROYCE HAISLIP

20

21

22

23

24

25
```

# EXHIBIT B

UNITED STATES DISTRICT COURT

EASTERN DISTRICT/FRESNO DIVISION

---

KENT WILLIAMS,                          )
                                        )
       Plaintiff,                   )
                                        )
    vs.                              )  No. 1:14-CV-01955-JLT
                                        )
CITY OF BAKERSFIELD, OFFICER            )
COLEMAN, OFFICER McCARTHY,              )
and DOES 1 to 100, inclusive,           )
                                        )
      Defendants.                  )
_____)

VIDEOTAPED DEPOSITION

OF

ALBERT MA, M.D.

Friday, December 2, 2016

Bakersfield, California

Reported by:  Susan R. Wood, CSR No. 6829

```
 1                      APPEARANCES

 2

 3

 4   For Plaintiff:          Rodriguez & Associates
                             By MR. JOEL T. ANDREESEN
 5                           Attorney at Law
                             2020 Eye Street
 6                           Bakersfield, California  93301
                             (661) 323-1400
 7                           jandreesen@rodriguezlaw.net

 8

 9

10   For Defendants:         Marderosian & Cohen
                             By MR. MICHAEL G. MARDEROSIAN
11                           Attorney at Law
                             1260 Fulton Mall
12                           Fresno, California  93721
                             (559) 441-7991
13                           mick@mcc-legal.com

14

15

16   The Videographer:       Jenny Estes

17

18

19

20

21

22

23

24

25
```

1                          I N D E X

2

3    EXAMINATION BY                                  PAGE

4

5    MR. MARDEROSIAN                                    4

6

7

8                        EXHIBIT INDEX

9    Defendants' Exhibits

10   Exhibit A - Chart                                  7

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1              Bakersfield, California

 2         Friday, December 2, 2016; 8:57 a.m.

 3              Offices of Wood & Randall

08:57:56   4

08:57:56   5         THE VIDEOGRAPHER:  Good morning.  This is

08:58:05   6  the videotaped deposition of Albert Ma, M.D., in the

08:58:11   7  matter of Kent Williams versus City of Bakersfield,

08:58:13   8  et al., the case pending in the United States

08:58:17   9  District Court, Eastern District, Fresno Division.

08:58:21  10  The case number is 1:14-CV-01955-JLT.  Today's date

08:58:32  11  is Friday, December 2nd, 2016.  The location is 900

08:58:37  12  Truxtun Avenue, Suite 320, in Bakersfield,

08:58:41  13  California.  The time on the video monitor is 8:58

08:58:45  14  a.m.

08:58:46  15         My name is Jenny Estes.  I am a CLVS and a

08:58:52  16  notary public in the State of California.  I

08:58:54  17  represent DepoVision located in Santa Barbara,

08:58:56  18  California.  The Certified Shorthand Reporter is

08:58:59  19  Susan Wood of Wood & Randall, Certified Shorthand

08:59:03  20  Reporters, located in Bakersfield, California.

08:59:06  21         Will counsel please introduce yourselves for

08:59:09  22  the record and state whom you represent.

08:59:11  23         MR. ANDREESEN:  Joel Andreesen representing

08:59:13  24  the Plaintiff, Kent Williams.

08:59:15  25         MR. MARDEROSIAN:  Good morning.  My name is
```

08:59:15   1   Mick Marderosian and I represent the City of

08:59:18   2   Bakersfield and Officers Coleman and McCarthy.

08:59:22   3         THE VIDEOGRAPHER:  Thank you.  Would the

08:59:23   4   court reporter please swear in the witness.

08:59:23   5            ALBERT MA, M.D.,

08:59:23   6   called as a witness by counsel for Defendants, being

08:59:23   7   first duly sworn, testified as follows:

08:59:33   8            EXAMINATION

08:59:33   9   BY MR. MARDEROSIAN:

08:59:35 10      Q.  Good morning.  Could you give us your name

08:59:36 11   for the record, please.

08:59:37 12      A.  My first name is Albert, last name is Ma,

08:59:41 13   spelled M-a.

08:59:42 14      Q.  And what is the nature of your professional

08:59:47 15   activity?

08:59:49 16      A.  I'm a medical doctor licensed in the State

08:59:52 17   of California, also a board certified psychiatrist.

08:59:57 18      Q.  And as a board certified psychiatrist, what

09:00:01 19   is the nature of your work in the field of

09:00:04 20   psychiatry?

09:00:05 21      A.  To evaluate, diagnose, and treat psychiatric

09:00:09 22   illness.

09:00:11 23      Q.  And does that include the ability to

09:00:17 24   prescribe medications as well?

09:00:21 25      A.  Yes.

09:23:04 1   Q.  Okay.  Does it increase a person's

09:23:06 2   perception in -- in the category of a paranoid --

09:23:13 3   paranoid perception?

09:23:14 4   A.  Well, that's why the diagnosis has four

09:23:17 5   different categories.  So in the fourth category when

09:23:20 6   someone actually have psychosis, then it would cause

09:23:25 7   paranoia, but I have never seen that level of

09:23:28 8   paranoia or any indication of psychosis with

09:23:32 9   Mr. Williams.

09:23:33 10  Q.  All right.  Now, he didn't -- he never

09:23:35 11  informed you that he sought out a concealed weapons

09:23:38 12  permit, and I take it he never told you that he was

09:23:41 13  taking a gun onto the school campus.

09:23:44 14  A.  No, I wasn't aware of that.

09:23:46 15  Q.  Okay.  Did you ever ask him about his

09:23:47 16  interest in guns or firearms at all?

09:23:49 17  A.  No, I haven't.

09:23:51 18  Q.  Did it ever come up in your discussions with

09:23:53 19  him?

09:23:54 20  A.  We do have clear guideline on that.  Usually

09:23:58 21  we ask guns and firearms if there is a suicide

09:24:03 22  attempt or serious suicide threat or if there's a

09:24:06 23  complaint from someone else or if someone's placed on

09:24:10 24  5150.  Since none of those situations actually

09:24:13 25  happened with Mr. Williams, I really don't have any

09:24:17 1  reason to pursue those questions.

09:24:19 2  Q. All right. Now, let me make a further

09:24:21 3  representation to you. I've represented to you that

09:24:24 4  there are witnesses who spoke with Mr. Williams or

09:24:29 5  engaged in conversation with Mr. Williams on the

09:24:31 6  school grounds, school premises, where he would make

09:24:34 7  comments to the effect that he was on suicide watch.

09:24:38 8  Did you -- were you aware of that at all?

09:24:40 9  A. No, I wasn't aware of that.

09:24:42 10 Q. Okay. Did the topic of suicide ever -- was

09:24:44 11 that ever discussed with Mr. Williams at all?

09:24:46 12 A. Yes, yes.

09:24:48 13 Q. All right. And I --

09:24:48 14 A. It's a routine discussion for psychiatric

09:24:53 15 visit to assess suicide risk.

09:24:55 16 Q. Right. But if -- if my representations are

09:24:58 17 correct that he's commenting to his colleagues on a

09:25:03 18 school campus that he's -- he's depressed and is on

09:25:07 19 suicide watch, would that -- would that cause any

09:25:10 20 interest to you in terms of your diagnoses of

09:25:14 21 Mr. Williams?

09:25:15 22 A. Those are very loose terms. Suicide watch,

09:25:18 23 I mean, who is conducting the watch and who

09:25:22 24 institutes the watch, I mean, those things matter a

09:25:24 25 lot. If he is under suicidal watch under, for

```
1   STATE OF CALIFORNIA  )
                         )  ss.
2   COUNTY OF KERN       )

3

4          I, Susan R. Wood, a Certified Shorthand

5   Reporter in the State of California, holding Certificate

6   No. 6829, do hereby certify that ALBERT MA, M.D., the

7   witness named in the foregoing deposition, was by me

8   duly sworn; that said deposition was taken Friday,

9   December 2, 2016, at the time and place set forth on the

10  first page hereof.

11         That upon the taking of the deposition, the

12  words of the witness were written down by me in

13  stenotypy and thereafter transcribed by computer under

14  my supervision; that the foregoing is a true and correct

15  transcript of the testimony given by the witness.

16         Pursuant to Federal Rule 30(e), transcript

17  review was requested.

18         I further certify that I am neither counsel for

19  nor in any way related to any party to said action, nor

20  in any way interested in the result or outcome thereof.

21         Dated this 20th day of December, 2016, at

22  Bakersfield, California.

23

24  _____
    Susan R. Wood, CSR No. 6829

25
```

# EXHIBIT C

UNITED STATES DISTRICT COURT

EASTERN DISTRICT/FRESNO DIVISION

_____

KENT WILLIAMS,                          )
                                        )
            Plaintiff,                  )
                                        )
        vs.                             )  No. 1:14-CV-01955-JLT
                                        )
CITY OF BAKERSFIELD, OFFICER            )
COLEMAN, OFFICER McCARTHY,              )
and DOES 1 to 100, inclusive,           )
                                        )
        Defendants.                     )
_____)

VIDEOTAPED DEPOSITION

OF

GERALDINE KINCAID

Friday, June 10, 2016

Bakersfield, California

Reported by:  Susan R. Wood, CSR No. 6829

WILLIAMS vs. CITY OF BAKERSFIELD
Geraldine Kincaid, Friday, June 10, 2016

2

1                            APPEARANCES

2

3

4      For Plaintiff:          Rodriguez & Associates
                               By MS. CHANTAL A. TRUJILLO
5                              Attorney at Law
                               2020 Eye Street
6                              Bakersfield, California   93301
                               (661) 323-1400
7                              chantal@rodriguezlaw.net

8

9

10     For Defendants:         Marderosian & Cohen
                               By MR. MICHAEL G. MARDEROSIAN
11                             Attorney at Law
                               1260 Fulton Mall
12                             Fresno, California   93721
                               (559) 441-7991
13                             mick@mcc-legal.com

14

15

16
       For the Witness:        McCormick Barstow LLP
17                             By MR. ANIL PAI
                               Attorney at Law
18                             7647 North Fresno Street
                               Fresno, California   93720
19                             (559) 433-1300
                               anil.pai@mccormickbarstow.com
20

21

22     The Videographer:       Kelley A. Bonkosky

23

24

25

WILLIAMS vs. CITY OF BAKERSFIELD
Geraldine Kincaid, Friday, June 10, 2016

3

1                          I N D E X

2

3    EXAMINATION BY                                      PAGE

4

5    MR. MARDEROSIAN                                        5

6

7    MS. TRUJILLO                                          52

8

9    MR. MARDEROSIAN (Further)                             63

10

11                       EXHIBIT INDEX

12   Defendants' Exhibits

13   Exhibit 1 - Letter dated 4/30/15                     16

14   Exhibit 2 - Letter dated 9/15/14                     34

15   Exhibit 3 - Letter dated 12/4/14                     42

16   Exhibit 4 - Panama-Buena Vista Union School

17            District Board Policy BP 5131.7(a)          63

18   Exhibit 5 - Panama-Buena Vista Union School

19            District Board Policy BP 3515.2(a)          65

20

21

22

23

24

25

WILLIAMS vs. CITY OF BAKERSFIELD
Geraldine Kincaid, Friday, June 10, 2016

4

| | |
|---|---|
| | 1 |
| | 2 |
| | 3 |
| 10:32:06 | 4 |
| 10:32:06 | 5 |
| 10:32:21 | 6 |
| 10:32:25 | 7 |
| 10:32:29 | 8 |
| 10:32:34 | 9 |
| 10:32:37 | 10 |
| 10:32:40 | 11 |
| 10:32:49 | 12 |
| 10:32:52 | 13 |
| 10:32:58 | 14 |
| 10:33:01 | 15 |
| 10:33:04 | 16 |
| 10:33:07 | 17 |
| 10:33:10 | 18 |
| 10:33:13 | 19 |
| 10:33:15 | 20 |
| 10:33:16 | 21 |
| 10:33:18 | 22 |
| 10:33:21 | 23 |
| 10:33:22 | 24 |
| 10:33:23 | 25 |

Bakersfield, California

Friday, June 10, 2016; 10:32 a.m.

Offices of Wood & Randall


VIDEO OPERATOR:  Good morning.  Here begins

Media Number 1 of Volume Number 1 in the deposition

of Gerrie Kincaid in the matter of Williams versus

City of Bakersfield, the case pending in the United

States District Court, Eastern Division -- excuse me,

Eastern District, Fresno Division.  The case number

is 1:14-CV-01995 [sic] JLT.

Today's date is June 10th, 2016.  The time

on the video monitor is 10:32 a.m.  My name is Kelley

Bonkosky, a Certified Legal Video Specialist, and I

represent DepoVision of Santa Barbara, California.

This video is taking place at Wood &

Randall, located at 900 Truxtun Avenue, Suite 320,

Bakersfield, California, and was noticed by the

defendants.  The Certified Shorthand Reporter is

Susan Wood.

Would counsel and all present please

introduce yourselves for the record and state whom

you represent.

MS. TRUJILLO:  Good morning.  My name is

Chantal Trujillo, and I represent the plaintiff in

WILLIAMS vs. CITY OF BAKERSFIELD
Geraldine Kincaid, Friday, June 10, 2016

5

10:33:25 1  this matter.

10:33:26 2        MR. MARDEROSIAN: Good morning. My name is

10:33:27 3  Mick Marderosian, and I represent the defendants the

10:33:29 4  City of Bakersfield, Officer Coleman and Officer

10:33:33 5  McCarthy in this action.

10:33:34 6        MR. PAI: Anil Pai on behalf of the

10:33:36 7  deponent, Gerrie Kincaid.

10:33:38 8        VIDEO OPERATOR: Thank you. Would the court

10:33:40 9  reporter please swear in the witness.

10:33:40 10            GERALDINE KINCAID,

10:33:40 11  called as a witness by counsel for Defendants, being

10:33:40 12  first duly sworn, testified as follows:

10:33:51 13            EXAMINATION

10:33:51 14  BY MR. MARDEROSIAN:

10:33:51 15    Q. Good morning. Could you please give us your

10:33:53 16  name for the record, please.

10:33:54 17    A. My name is Geraldine Kincaid.

10:33:58 18    Q. And what is your business address?

10:34:02 19    A. My business address is 4200 Ashe Road,

10:34:06 20  Bakersfield, 93313.

10:34:08 21    Q. What is the nature of your business at that

10:34:13 22  location?

10:34:15 23    A. We're a school district. I work for the

10:34:17 24  Panama-Buena Vista Union School District.

10:34:20 25    Q. And what is the nature of your current

WILLIAMS vs. CITY OF BAKERSFIELD
Geraldine Kincaid, Friday, June 10, 2016

38

11:14:11 1  them -- will get them before they get him and the

11:14:18 2  statement that was made to Mr. Coon on the Wednesday

11:14:24 3  before the incident when Mr. Williams related that he

11:14:27 4  was on suicide watch because he was depressed and

11:14:30 5  messed up in the head.

11:14:32 6       My question is, when you were meeting with

11:14:35 7  the officers about what to do, you were aware of

11:14:39 8  these statements as well that Mr. Williams had made.

11:14:45 9       A.  I was aware of the statements made with

11:14:46 10  regard to suicide watch because it was relayed to me

11:14:49 11  by the principal at that time, but I don't recall the

11:14:51 12  chronology of when the statement about I'm going to

11:14:55 13  get them before they get me.  I'm not -- I can't

11:14:59 14  speak to the chronology of when -- if I heard that at

11:15:04 15  that time or if that came out in our investigation.

11:15:07 16       Q.  Right.  So as you're sitting there in the

11:15:10 17  office, what did you ask of the police officers?

11:15:13 18  What did you want them to do?

11:15:16 19       A.  I don't give them direction.

11:15:17 20       Q.  Okay.

11:15:17 21       A.  I wanted them to seize the gun, find out if

11:15:22 22  there was a gun and seize the gun, but I did not give

11:15:25 23  them any direction.  They were consulting with their

11:15:28 24  supervisors.

11:15:30 25       Q.  Okay.  Was there any discussion in the

WILLIAMS vs. CITY OF BAKERSFIELD
Geraldine Kincaid, Friday, June 10, 2016

69

| | | |
|---|---|---|
| 11:51:35 | 1 | reporter, who will then provide it to me.  If for |
| 11:51:37 | 2 | some reason the original is not signed or is |
| 11:51:40 | 3 | misplaced or lost at the time of trial, copy can be |
| 11:51:43 | 4 | used in lieu of the original at the time of trial. |
| 11:51:46 | 5 | MS. TRUJILLO:  So stipulated. |
| 11:51:47 | 6 | MR. PAI:  So stipulated. |
| 11:51:49 | 7 | MR. MARDEROSIAN:  Okay. |
| 11:51:49 | 8 | VIDEO OPERATOR:  Ready to go off? |
| 11:51:51 | 9 | MR. MARDEROSIAN:  Yeah. |
| 11:51:52 | 10 | VIDEO OPERATOR:  This concludes today's |
| 11:51:53 | 11 | deposition of Gerrie Kincaid.  The number of media |
| 11:51:57 | 12 | used was one.  The time on the video monitor is 11:51 |
| 11:52:00 | 13 | a.m. and we're off the record. |
| | 14 | (11:51 a.m.) |
| | 15 | --ooOoo-- |
| | 16 | |
| | 17 | |
| | 18 | |
| | 19 | |
| | 20 | |
| | 21 | |
| | 22 | |
| | 23 | |
| | 24 | |
| | 25 | |

# EXHIBIT D

UNITED STATES DISTRICT COURT
EASTERN DISTRICT/FRESNO DIVISION

---oOo---

KENT WILLIAMS,                    )
                                  )  Case No.
                                  )  1:14-CV-01955-JLT
                 Plaintiff,       )
                                  )
     vs.                          )
                                  )
CITY OF BAKERSFIELD,              )
OFFICER COLEMAN, OFFICER          )
McCARTHY and DOES 1 TO 100,       )
inclusive,                        )
                                  )
                                  )
                 Defendants.      )
                                  )
                                  )


VIDEOTAPED DEPOSITION OF:

                    VERION COLEMAN
              FRIDAY, AUGUST 5, 2016
                    12:31 p.m.




Reported By:  Dawn Thompson, CSR No. 7517

1  Deposition of VERION COLEMAN, taken on behalf of the
2  Defendant City of Bakersfield, on Friday, August 5,
3  2016, 12:31 p.m., at the offices of Sylvia Mendez &
4  Associates, 330 H Street, Suite 1, Bakersfield,
5  California, before Dawn Thompson, CSR No. 7517,
6  pursuant to Notice of Taking Deposition.

7

8

9                    APPEARANCES OF COUNSEL

10

11

12  For the Plaintiff:     RODRIGUEZ & ASSOCIATES
                           BY MR. JOEL T. ANDREESEN
13                         Attorney at Law
                           2020 Eye Street
14                         Bakersfield, CA   93301
                           661-323-1400
15                         jandreesen@rodriguezlaw.net
16

    For the Defendant      MARDEROSIAN & COHEN
17  City of Bakersfield:   BY MR. MICHAEL G. MARDEROSIAN
                           Attorney at Law
18                         1260 Fulton Mall
                           Fresno, CA  93721
19                         559-441-7991
                           mick@mrcl-law.com
20

21  ALSO PRESENT:          MR. CHRISTIAN MARTINEZ
                           Certified Videographer
22

23

24

25

```
1                        I N D E X

2

3    THE WITNESS

4    VERION COLEMAN

5

6    EXAMINATION BY                           Page

7    Mr. Andreesen                              5

8    Mr. Marderosian                           61

9

10

11                     EXHIBIT INDEX

12   Plaintiff's Exhibit                     Marked

13   Exhibit 1 - Police report                 26

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                 BAKERSFIELD, CALIFORNIA

 2           FRIDAY, AUGUST 5, 2016; 12:31 P.M.

 3             SYLVIA MENDEZ & ASSOCIATES

 4

 5           THE VIDEOGRAPHER:  Good afternoon.  Here        12:30

 6   begins Media No. 1, Volume 1, in the deposition of

 7   Officer Verion Coleman in the matter of Williams versus

 8   City of Bakersfield.

 9           This case is pending in the United States

10   District Court, Eastern District of California.  Case   12:30

11   number is 1:14-CV-01955-JLT.

12           Today's date is Friday, August 5th, 2016.

13   And the time on the video monitor is 12:31 p.m.

14           My name is Christian Martinez.  I am a

15   certified legal video specialist, and I represent       12:31

16   Sylvia Mendez & Associates of Bakersfield, California,

17   and Depovision of Bakersfield and Santa Barbara,

18   California.

19           This video deposition is taking place at the

20   court reporting offices of Sylvia Mendez & Associates,  12:31

21   330 H Street, Suite 1, Bakersfield, California, and was

22   noticed by the plaintiffs.  The certified shorthand

23   reporter is Dawn Thompson.

24           Would counsel please introduce yourselves for

25   the record and state whom you represent?                12:31

                 SYLVIA MENDEZ & ASSOCIATES - (661) 631-2904
```

```
 1    "We need to get over to the school."  I said, Let's --
 2    just follow me and we will stop a couple blocks before
 3    we get to the school."
 4            So we drove.  I remember seeing Tevis and we
 5    pull into a neighborhood where there was a cul-de-sac.      12:47
 6    Me and him parked next to each other.  And I -- I
 7    believe it was me that called our records division and
 8    ran Kent Williams to see if he had firearms registered
 9    to him.  I wanted to see if he had weapons, you know,
10    how many weapons he had registered to him, if he had a    12:47
11    valid CCW.  And they said yes, he has seven guns
12    registered to him.  They gave us a list of the guns, I
13    believe.  And then they told me that he had a valid CCW
14    permit.
15            So I told McCarthy "Well, let's just go in        12:47
16    there.  And I think the first thing we need to do is
17    let Bill Darbee, who is a retired sergeant with
18    Bakersfield police and who is in charge of their
19    security, we need to let him know just in case
20    something goes bad.  I think it's important to let him    12:47
21    know."  So we proceed to the school.
22            When we get there, I ask the lady at the
23    front, I say, "Hey, is Mr. Darbee here?"  She said,
24    Yeah.  Let me call him."  I said, "Okay."  So there is
25    a little nurses' station.  You walk into the office,      12:48
              SYLVIA MENDEZ & ASSOCIATES - (661) 631-2904
```

```
 1          MR. MARDEROSIAN:  Slow down just a little
 2    bit.
 3          THE WITNESS:  Okay.  I said, "You are not
 4    under arrest right now," I said, "but you are being
 5    detained."  I said, "We need to figure all this out."     12:50
 6    I said, "Just hang on one second for me."  And he said
 7    "Okay."
 8          So then I step out of the office.  And about
 9    that time, Gerrie Kincaid and, I believe, another
10    school official was with her.  They walked into Paul     12:50
11    Coon, who is the principal's office.  I went in there.
12    And I said, "Well, he has a firearm."  And they said,
13    you know, they were alarmed.  And I said, "Let me call
14    Sergeant Grubbs," I said, "because this is new to me.
15    He has a CCW permit, but he has a gun."  I don't -- I     12:50
16    just wasn't unsure -- I was unsure about the whole
17    situation.  So I stepped out and I called Sergeant
18    Grubbs.  He says, "I'm on my way right now."  I said,
19    "Sarge, he has a valid CCW permit and he said that he
20    had researched the 626.9 very clearly numerous times in     12:51
21    his career and, you know, he would -- Kent Williams
22    would still be in violation of having a firearm on
23    school grounds, that the 626.9 would not apply to him."
24    I said, "What do you want me to do?"  I said, "Well,
25    I'm going to be there right now."  He said, "Do you     12:51
              SYLVIA MENDEZ & ASSOCIATES - (661) 631-2904
```

1   have a Penal Code book?"  I said, "Yeah, I got one in

2   my trunk."  He said, "Just pull it out."

3           THE REPORTER:  You've got to slow down.

4   You've got to slow down.  I am totally dropping.

5           THE WITNESS:  Okay.  Sorry.  I'm going in     12:51

6   conversation mode.  So I walk out to my trunk, pull out

7   a 2014 Penal Code book, walk back into the office.  I

8   go to the 626.9.  I'm kind of reading through it.  I

9   don't see anything about CCW permits from what I was

10  reading in the short amount of time that I had to look     12:52

11  at it.

12          Sergeant Grubbs arrived a short time later.

13  He walked into the office with myself, Gerrie Kincaid,

14  Paul Coon, and I believe there was another staff member

15  from the school there, but I don't know who that person     12:52

16  was.  And I just explained to Sergeant Grubbs what we

17  had done up to that point.  He said "Okay."  He said,

18  "Well, go in there and advise him of his Miranda rights

19  and see if he wants to give you a statement."  So I

20  went in there and advised him of his Miranda rights.     12:52

21  He just said that, you know, that he didn't know he

22  wasn't supposed to have it, that he had brought it to

23  school most days with him.  He either kept it in

24  his backpack or in his vehicle.  And then I believe

25  somewhere in there is where the principal had told me     12:52

```
 1              MR. MARDEROSIAN:  He did.  That's   where --
 2   that's the one I read for Sherri Parry.
 3              THE WITNESS:  Okay.
 4              MR. MARDEROSIAN:  So Exhibit 1 contains your
 5   portions of what you reported.                          12:55
 6              THE WITNESS:  Yeah, I believe Officer
 7   Miller's is a completely different case number, though,
 8   if I'm not mistaken but --
 9   BY MR. ANDREESEN:
10       Q.  Okay.  For example, would you prepare, like,    12:55
11   Pages 1 through 4 of the report?
12       A.  Yes, sir.
13       Q.  And then your narrative portion of the report
14   begins on Page 5, correct?
15       A.  Yes, sir.                                       12:55
16       Q.  If I could direct you to your narrative
17   portion.  This sort of overlaps with your outline
18   summary you gave to us.  I apologize.  I might go back
19   and forth because a lot of it overlaps.  But in the
20   second paragraph, which begins, "Kincaid stated that an 12:56
21   administrator from the Panama-Buena Vista School
22   District advised her that an unidentified teacher
23   talked with him this morning."
24              Did you ever learn the identity of that
25   teacher?                                                12:56
              SYLVIA MENDEZ & ASSOCIATES - (661) 631-2904
```

STATE OF CALIFORNIA          )
                             )    ss.
COUNTY OF KERN               )

I, Dawn Thompson, a Certified Shorthand Reporter in the State of California, holding Certificate No. 7517, do hereby certify that VERION COLEMAN, the witness named in the foregoing deposition, was by duly sworn; that said deposition was taken Friday, August 5, 2016, at the time and place set forth on the second page hereof.

That upon the taking of the deposition, the words of the witness were written down by me in stenotype and thereafter transcribed by computer under my supervision; that the foregoing is a true and correct transcript of the testimony given by the witness.

I further certify that I am neither counsel for, nor in any way related to any party to said action, nor in any way interested in the result or outcome thereof.

Dated this 9th day of August, 2016, at Bakersfield, California.

_____

SYLVIA MENDEZ & ASSOCIATES - (661) 631-2904

1                    Dawn Thompson, CSR No. 7517

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT E

UNITED STATES DISTRICT COURT

EASTERN DISTRICT/FRESNO DIVISION

—————————————

KENT WILLIAMS,                        )
                                      )
            Plaintiff,                )
                                      )
        vs.                           ) No. 1:14-CV-01955-JLT
                                      )
CITY OF BAKERSFIELD, OFFICER          )
COLEMAN, OFFICER McCARTHY,            )
and DOES 1 to 100, inclusive,         )
                                      )
            Defendants.               )
_____)


VIDEOTAPED DEPOSITION

OF

WILLIAM CHARLES DARBEE

Friday, September 9, 2016

Bakersfield, California


Reported by:  Susan R. Wood, CSR No. 6829

```
 1                    APPEARANCES

 2

 3

 4   For Plaintiff:        Rodriguez & Associates
                           By MS. CHANTAL A. TRUJILLO
 5                         Attorney at Law
                           2020 Eye Street
 6                         Bakersfield, California  93301
                           (661) 323-1400
 7                         chantal@rodriguezlaw.net

 8

 9

10   For Defendants:       Marderosian & Cohen
                           By MR. MICHAEL G. MARDEROSIAN
11                         Attorney at Law
                           1260 Fulton Mall
12                         Suite 130
                           Fresno, California  93721
13                         (559) 441-7991
                           mick@mcc-legal.com

14

15

16
     For the Witness:      McCormick Barstow LLP
17                         By MS. JULIE K. MACMICHAEL
                           Attorney at Law
18                         7647 North Fresno Street
                           Fresno, California  93720
19                         (559) 433-1300
                           julie.macmichael
20                         @mccormickbarstow.com

21

22

23   The Videographer:     Christian Martinez

24

25
```

1                    I N D E X

2

3   EXAMINATION BY                              PAGE

4

5   MR. MARDEROSIAN                               5

6

7   MS. TRUJILLO                                 37

8

9   MR. MARDEROSIAN (Further)                    40

10

11

12              **EXHIBITS WERE NOT MARKED**

13

14

15

16

17

18

19

20

21

22

23

24

25

|   |   |
|---|---|
| 1 | Bakersfield, California |
| 2 | Friday, September 9, 2016; 1:15 p.m. |
| 3 | Offices of Wood & Randall |
| 13:15:47  4 |  |
| 13:15:47  5 | THE VIDEOGRAPHER: Good afternoon. Here |
| 13:16:00  6 | begins Media Number 1, Volume I, in the deposition of |
| 13:16:05  7 | Bill Darbee in the matter of Williams versus City of |
| 13:16:08  8 | Bakersfield. This case is pending in the United |
| 13:16:12  9 | States District Court, Eastern District of |
| 13:16:14 10 | California. The case number is 1:14-CV-01955-JLT. |
| 13:16:23 11 | Today is Friday, September 9th, 2016, and |
| 13:16:27 12 | the time on the video monitor is 1:16 p.m. My name |
| 13:16:33 13 | is Christian Martinez. I am a Certified -- Certified |
| 13:16:36 14 | Legal Video Specialist and I represent DepoVision of |
| 13:16:38 15 | Bakersfield and Santa Barbara, California. |
| 13:16:40 16 | This video deposition is taking place at 900 |
| 13:16:43 17 | Truxtun Avenue, Suite 320, Bakersfield, California, |
| 13:16:47 18 | and was noticed by the defendants. The Certified |
| 13:16:51 19 | Shorthand Reporter is Susan Wood. |
| 13:16:52 20 | Would counsel please introduce yourselves |
| 13:16:54 21 | for the record and state whom you represent. |
| 13:16:56 22 | MS. TRUJILLO: Good afternoon. My name is |
| 13:16:56 23 | Chantal Trujillo, and I represent Kent Williams. |
| 13:16:59 24 | MR. MARDEROSIAN: Yes, my name is Mick |
| 13:17:01 25 | Marderosian. I'm counsel for the defendants in this |

| 13:17:03 | 1 | case, the City of Bakersfield, Officer Coleman, and |

13:17:03  1  case, the City of Bakersfield, Officer Coleman, and

13:17:07  2  Officer McCarthy.

13:17:08  3          MS. MACMICHAEL:  I'm Julie MacMichael, and

13:17:10  4  I'm representing Bill Darbee for the purpose of this

13:17:13  5  deposition.

13:17:14  6          THE VIDEOGRAPHER:  Thank you.

13:17:14  7          Would the court reporter please swear in the

          8  witness.

          9          WILLIAM CHARLES DARBEE,

          10  called as a witness by counsel for Defendants, being

          11  first duly sworn, testified as follows:

          12          THE VIDEOGRAPHER:  Please proceed.

          13                  EXAMINATION

          14  BY MR. MARDEROSIAN:

13:17:25  15     Q.  Can you give us your name for the record,

13:17:27  16  please.

13:17:27  17          THE VIDEOGRAPHER:  I'm sorry?

13:17:28  18          MR. MARDEROSIAN:  Are we ready to go?

13:17:30  19          THE VIDEOGRAPHER:  Yeah.  Absolutely.

13:17:31  20  BY MR. MARDEROSIAN:

13:17:31  21     Q.  Can you give us your name for the record,

13:17:33  22  please.

13:17:33  23     A.  William Charles Darbee, spelled D-a-r-b-e-e.

13:17:38  24     Q.  And, Mr. Darbee, what is your -- what is

13:17:43  25  your business address?

13:21:09 1 validity of the objection at a later time. The point

13:21:14 2 is is once the objection is stated, then go ahead and

13:21:17 3 answer the question unless your counsel instructs you

13:21:19 4 not to answer the question; do you understand that

13:21:21 5 procedure?

13:21:22 6     A. I do.

13:21:23 7     Q. Okay. Do you have any questions before we

13:21:24 8 begin today?

13:21:25 9     A. No.

13:21:27 10     Q. Now, Mr. Darbee, do I understand that you

13:21:32 11 did have background in security in law enforcement?

13:21:36 12 Is that correct?

13:21:36 13     A. Yes.

13:21:37 14     Q. And what is that background?

13:21:39 15     A. Four years of military police and undercover

13:21:42 16 work with the Air Force and then just shy of 20 years

13:21:45 17 with the Bakersfield Police Department.

13:21:51 18     Q. That's a long time.

13:21:52 19     And then from there did you go to work in

13:21:54 20 some capacity at Tevis Junior High School?

13:21:58 21     A. I did.

13:21:59 22     Q. And when did you work for that school

13:22:02 23 district?

13:22:04 24     A. Since I've been retired it's hard to

13:22:05 25 remember the exact years in time.

13:30:38 1   yes. I always said no because I tried to discourage

13:30:41 2   it.

13:30:42 3      Q. Did he ever indicate to you why he would

13:30:45 4   bring a gun onto campus? He's the vice principal.

13:30:49 5   Why is he bringing a gun on the campus? Did he

13:30:52 6   ever --

13:30:52 7      A. I don't know --

13:30:52 8      Q. -- express that to you?

13:30:54 9      A. I don't know if we ever had that

13:30:55 10   conversation. Like I said, it's one of those things

13:30:58 11   I didn't really encourage.

13:31:01 12      Q. Well, you're -- when you say "encourage"

13:31:03 13   now, you're -- you're in the role of campus security;

13:31:07 14   is that right?

13:31:07 15      A. Yes.

13:31:09 16      Q. And so you learn that the vice principal is

13:31:12 17   bringing a gun onto campus; correct?

13:31:16 18      A. Yes.

13:31:17 19      Q. And so you -- I'm gleaning from what you're

13:31:22 20   telling me that you felt somewhat uncomfortable about

13:31:25 21   that and you certainly did not encourage him to bring

13:31:28 22   this gun on the campus; is that a correct description

13:31:32 23   of your state of mind?

13:31:35 24      A. Yes.

13:31:36 25      Q. Okay.

13:31:36 1    A.  If I knew it was not illegal.

13:31:39 2    Q.  Okay.  What does that mean?

13:31:41 3    A.  It wasn't a crime for him to have a gun on

13:31:43 4 campus.

13:31:44 5    Q.  How do you know that?

13:31:45 6    A.  I was a cop for 20 years.

13:31:47 7    Q.  Well, I mean, that doesn't necessarily

13:31:50 8 mean -- and I don't mean to be disrespectful, but

13:31:54 9 first of all, sir -- and I don't mean to argue with

13:31:58 10 you, but in getting his permit he did not disclose

13:32:02 11 his history of mental treatment or his drug use; are

13:32:05 12 you aware of that?

13:32:06 13        MS. TRUJILLO:  Objection.  It lacks

13:32:07 14 foundation.  It assumes facts not in evidence.

13:32:09 15 BY MR. MARDEROSIAN:

13:32:10 16    Q.  I'm just responding to your conclusion that

13:32:12 17 it was legal for him to have this gun on campus

13:32:15 18 because we dispute that, and so I want to find out

13:32:18 19 what you knew and what you did know before you state

13:32:22 20 an opinion that it was legal for him to have this gun

13:32:24 21 on campus.

13:32:25 22    A.  Let me tell you where my opinion comes from,

13:32:27 23 and it is very basic, so when you go there I'm not

13:32:29 24 going to -- I can't go any further because it's

13:32:32 25 beyond my scope of knowledge.  What I tell somebody

| | | |
|---|---|---|
| 13:55:39 | 1 | A.   I -- that thought crossed my mind.   And he |
| 13:55:41 | 2 | said that he smoked it in the evening time and I was |
| 13:55:44 | 3 | cognizant of that, and I don't recall seeing him |
| 13:55:47 | 4 | under the influence.   I did not do a seven-step |
| 13:55:50 | 5 | process on him like you would out on the street or |
| 13:55:53 | 6 | anything, but I did not see any behaviors that would |
| 13:55:56 | 7 | indicate he was under the influence while at work. |
| 13:55:58 | 8 |         MR. MARDEROSIAN:   And just for the record, |
| 13:56:00 | 9 | it calls for speculation.   Lacks foundation. |
| 13:56:02 | 10 | BY MS. TRUJILLO: |
| 13:56:09 | 11 |     Q.   There was something earlier that you had |
| 13:56:10 | 12 | mentioned that Mr. Williams had -- something along |
| 13:56:14 | 13 | the lines that he felt like he was suicidal and that |
| 13:56:19 | 14 | you had talked -- or you had told one of the officers |
| 13:56:22 | 15 | the day of the arrest.   Did I understand you |
| 13:56:24 | 16 | correctly? |
| 13:56:25 | 17 |     A.   Yes. |
| 13:56:25 | 18 |     Q.   Okay.   And do you remember which officer it |
| 13:56:27 | 19 | was, sir? |
| 13:56:28 | 20 |     A.   I don't. |
| 13:56:28 | 21 |     Q.   Okay. |
| 13:56:29 | 22 |     A.   It would have been either Officer Coleman or |
| 13:56:31 | 23 | Officer McCarthy. |
| 13:56:34 | 24 |     Q.   And do you know when you told them this, |
| 13:56:39 | 25 | meaning like was it after Mr. Kent -- Mr. Williams |

| | | |
|---|---|---|
| 13:56:42 | 1 | was already arrested or before? |
| 13:56:44 | 2 | A.  It's my understanding that upon -- I was not |
| 13:56:47 | 3 | there, but it's my understanding that he was placed |
| 13:56:49 | 4 | under arrest pretty much immediately upon the |
| 13:56:53 | 5 | police's arrival so he's under arrest.  However, |
| 13:56:56 | 6 | being transported, I don't know when that happened; |
| 13:56:58 | 7 | so it would have happened between the police |
| 13:57:01 | 8 | officers' arrival, their informing me of what was |
| 13:57:05 | 9 | going on, and prior to them going to his house to -- |
| 13:57:10 | 10 | I assume what they did there. |
| 13:57:22 | 11 | MS. TRUJILLO:  I don't have any further |
| 13:57:23 | 12 | questions. |
| 13:57:24 | 13 | MR. MARDEROSIAN:  Just one area of |
| 13:57:27 | 14 | clarification. |
| 13:57:27 | 15 | FURTHER EXAMINATION |
| 13:57:27 | 16 | BY MR. MARDEROSIAN: |
| 13:57:29 | 17 | Q.  So you live directly across the street and |
| 13:57:32 | 18 | there was a safe where you kept your weapons; |
| 13:57:34 | 19 | correct?  So you knew they were close by; is that |
| 13:57:38 | 20 | right? |
| 13:57:38 | 21 | A.  Yes. |
| 13:57:38 | 22 | Q.  But did you ever bring a loaded firearm on |
| 13:57:41 | 23 | the campus or not during the time that you worked |
| 13:57:44 | 24 | there at Tevis Junior High? |
| 13:57:45 | 25 | A.  Yes, I did. |

```
 1   STATE OF CALIFORNIA )
                         )  ss.
 2   COUNTY OF KERN      )

 3

 4          I, Susan R. Wood, a Certified Shorthand

 5   Reporter in the State of California, holding Certificate

 6   No. 6829, do hereby certify that WILLIAM CHARLES DARBEE,

 7   the witness named in the foregoing deposition, was by me

 8   duly sworn; that said deposition was taken Friday,

 9   September 9, 2016, at the time and place set forth on

10   the first page hereof.

11          That upon the taking of the deposition, the

12   words of the witness were written down by me in

13   stenotypy and thereafter transcribed by computer under

14   my supervision; that the foregoing is a true and correct

15   transcript of the testimony given by the witness.

16          Pursuant to Federal Rule 30(e), transcript

17   review was requested.

18          I further certify that I am neither counsel for

19   nor in any way related to any party to said action, nor

20   in any way interested in the result or outcome thereof.

21          Dated this 22nd day of September, 2016, at

22   Bakersfield, California.

23

24                          _____
                            Susan R. Wood, CSR No. 6829
25
```

# EXHIBIT F

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

KENT WILLIAMS,                        )
                                      )
                Plaintiff,            )        Case No.
                                      )
         vs.                          )    1:14-CV-01955-JLT
                                      )
CITY OF BAKERSFIELD,                  )
OFFICER COLEMAN, OFFICER              )
McCARTHY, and DOES 1 to               )
100, inclusive,                       )
                                      )
                Defendants.           )
_____ )


VIDEOTAPED DEPOSITION OF PERSON MOST KNOWLEDGEABLE:

SERGEANT KEVIN FIDLER

FRIDAY, SEPTEMBER 16, 2016

10:40 A.M.


Reported By:  Sylvia Mendez, CSR No. 7636, RPR

```
 1
 2
 3
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Videotaped Person Most Knowledgeable Deposition of
SERGEANT KEVIN FIDLER, the Witness, taken on behalf of
the Plaintiff, on Friday, September 16, 2016,
10:40 a.m., at the office of Sylvia Mendez &
Associates, 330 H Street, Suite 1, Bakersfield,
California, before Sylvia Mendez, CSR No. 7636, RPR,
pursuant to Notice of Taking Deposition.

APPEARANCES OF COUNSEL

For the Plaintiff:    Rodriguez & Associates
    By:  CHANTAL TRUJILLO
    Attorney at Law
    2020 Eye Street
    Bakersfield, California  93301
    (661) 323-1400

For the Defendants:    Marderosian & Cohen
    By:  MICHAEL G. MARDEROSIAN
    Attorney at Law
    1260 Fulton Mall
    Fresno, California  93721
    (559) 441-7991

The Videographer:    Sylvia Mendez & Associates
    By:  JENNY ESTES
    330 H Street
    Suite 1
    Bakersfield, California  93304
    (661) 631-2904

```
                    I N D E X

THE WITNESS
SERGEANT KEVIN FIDLER
```

```
EXAMINATION BY                               Page
Ms. Trujillo                                   6
Mr. Marderosian                               55
Ms. Trujillo (Further)                        65
Mr. Marderosian (Further)                     69


                 EXHIBIT INDEX
Plaintiff's Exhibits                        Marked
1 - Expanded Course Outline Level III -
    Learning Domain 5 - Introduction to
    Criminal Law                              14
2 - Expanded Course Outline Level III -
    Learning Domain 15 - Laws of Arrest       21
3 - Training and Testing Specifications for
    Learning Domain 15 - Laws of Arrest       51
4 - Training and Testing Specifications for
    Learning Domain 15 - Laws of Arrest       53
5 - Basic Course Workbook Series Student Materials
    Learning Domain 15 Laws of Arrest Version 2   74
///
```

1         VIDEO

2       Tape  Page

3        1    6

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    BAKERSFIELD, CALIFORNIA;

 2          FRIDAY, SEPTEMBER 16, 2016; 10:40 A.M.;

 3             OFFICES OF SYLVIA MENDEZ & ASSOCIATES

 4

 5             (Videotape No. 1)                        10:39

 6             THE VIDEOGRAPHER:  This begins the videotaped

 7   deposition of officer -- or excuse me -- Sergeant

 8   Kevin Fidler in the matter of Kent Williams vs. The

 9   City the Bakersfield, et al., the case pending in the

10   United States District Court, Eastern District of      10:40

11   California.  The case number is 1:14-CV-01955-JLT.

12             Today's date is Friday, September 16, 2016.

13   The location is 330 H Street, in Bakersfield,

14   California.  The time on the video monitor is

15   10:40 a.m.                                             10:40

16             The certified shorthand reporter is

17   Sylvia Mendez of Sylvia Mendez & Associates, located in

18   Bakersfield, California.

19             My name is Jenny Estes.  I am a CLVS and a

20   notary public in the state of California.  I represent   10:41

21   Depovision, located in Santa Barbara, California.

22             Will counsel and all present, please,

23   introduce yourselves for the record and state whom you

24   represent.

25             MS. TRUJILLO:  Good morning.  My name is       10:41
```

```
 1          MR. MARDEROSIAN:  And just for the record,
 2    we're referring to Penal Code Section 626.9.
 3    BY MS. TRUJILLO:
 4          Q.  Now, earlier, we had mentioned about POST
 5    Domain No. 5 in relation to introduction to criminal      11:16
 6    law.
 7               Do you remember I was talking about that,
 8    sir?
 9          A.  Yes.
10          Q.  Okay.  And one of the learning objectives of   11:16
11    POST Domain No. 5 is to learn how to -- for an officer
12    to read and interpret the law; is that correct?
13          A.  Yes.
14          Q.  And would that also include reading statutes
15    such as the statute here that, uhm, Officer McCarthy,    11:16
16    Coleman, and Sergeant Grubbs read in this instant
17    matter?
18          A.  That was --
19               MR. MARDEROSIAN:  Just for the record, I'm
20    going to -- before you answer the question -- maybe you  11:16
21    did answer -- I'm going to object to the question as
22    vague and overbroad; lacks foundation, pointing out
23    that police officers are not lawyers or judges.  And so
24    the question lacks foundation; calls for speculation.
25    ///                                                      11:17
```

```
 1   BY MS. TRUJILLO:

 2       Q.  And I didn't hear an answer.  I apologize.

 3       A.  I said "yes."

 4       Q.  Okay.

 5           MR. MARDEROSIAN:  What was the answer?        11:17

 6           THE WITNESS:  I did.  I said "yes."

 7           MR. MARDEROSIAN:  Okay.

 8   BY MS. TRUJILLO:

 9       Q.  Okay.  And have you talked to Officer Coleman

10   about the events that occurred on August 28, 2014,        11:17

11   involving Mr. Williams?

12       A.  No, I don't -- I talked to Verion, but it's

13   all sorts of different reasons.

14       Q.  Okay.  How about, uhm, Officer McCarthy?

15       A.  No.  I believe Officer McCarthy no longer is     11:17

16   employed by us.

17       Q.  And how about Sergeant Grubbs?  Have you

18   spoken to him about the events that occurred on

19   August 28, 2014, involving Mr. Williams?

20       A.  No.                                              11:17

21       Q.  Now, you told me that you had -- well, let me

22   strike that.

23           What you told me today about your

24   understanding as to the events that occurred on this

25   day in relation to the incident, is that understanding   11:18
```

So our Plan- -- Planning, Research and Training
Division would, say, uh -- say, California's amended a
bunch of vehicle codes, penal codes, whatever it's
going to be this year, and they go into effect in
January.  January our department gets those, and they
start going through them, and they'll list -- they'll
e-mail or disseminate a laundry list, "These codes have
all been changed.  Go ahead and make yourself familiar
with them."

Q.  And when you said that it's "Go ahead and
make yourself familiar with them," is it the officer
does it independently, on his own?  Is he expected to
make himself familiar on his own, or is there a
classroom kind of familiarization?

A.  There's no classroom.  You -- you'll have to
familiarize yourself with the laws.

Q.  Now, are you aware of any written policies
that have -- written policies of the Bakersfield Police
Department that have to do with, uh, laws of arrest?

A.  No.  Just as Sergeant Stratton spoke earlier,
I don't know of any independent laws of arrest,
policies that cover it.

Q.  Okay.  All right, Sergeant.

Do you have any knowledge of the incident
that took place at Tevis Junior High on August 28,

```
 1   2014?

 2        A.  I have a general understanding, yes.

 3        Q.  Okay.  Can you tell me what your

 4   understanding is of that incident as of today?

 5        A.  There was a call made regarding a -- it might      11:12

 6   be a Principal or a Vice Principal; but, nonetheless,

 7   Officers McCarthy and Coleman respond to that call.

 8        Uhm, somehow during the investigation, they

 9   make a determination or, uh, learn that he has several

10   guns, six, seven of them registered to him.  He also    11:12

11   has a concealed weapons permit.  They respond to the

12   school.

13        While they're at the school, Officer Coleman

14   and McCarthy go in.  Prior to making contact with the

15   subject, I think Coleman goes in to use the restroom;    11:13

16   and when he comes back out, McCarthy and, uh, the other

17   individual were in his office.

18        From my understanding, it's an office that is

19   frequented by kids.  It's an open -- it's an open

20   office.  Kids come and go freely from the office.        11:13

21   It's used for detention.

22        And at some point during this incident, the

23   individual asks them why we're there.  They explain

24   that they're there for him.  And he reaches towards the

25   backpack as they tell him that they're there for a gun,  11:13
```

1   and they tell him not to.  It's an open backpack.

2   Officer McCarthy reaches into the backpack and

3   retrieves a firearm, or a Glock firearm, that has a

4   magazine inserted into it with ammunition inside the

5   magazine.

6           They then, uh, have a conversation.  That

7   conversation includes Sergeant Grubbs at the time.

8   And, ultimately, they make the decision to arrest the

9   individual for a Penal Code section.  They transport

10  him to jail.  And then they later learn that the

11  section they arrested him for did not -- was not met --

12  probable cause was not met.  So they went back and

13  released him.

14          However, like I said, there's -- when I spoke

15  earlier up on tape, you know, officers go out and they

16  investigate Offense X, but if Offense Y, Z, and all the

17  other ones that apply that could apply, just because

18  they arrested him on this one doesn't make these other

19  ones invalid.  Probable cause -- it doesn't negate the

20  probable cause that exists.  So --

21      Q.  Okay.

22      A.  -- that's my understanding of it.

23      Q.  Okay.  Do you have --

24      A.  So, for instance, if I may, if -- had they

25  arrested him for public nuisance or child endangerment,

1  Knowledgeable.  The number of tapes used was one.

2          Going off the record, the time is 11:51 a.m.

3          (Whereupon, Plaintiff's Exhibit No. 5

4          was marked for identification.)

5

6          (Whereupon, at 11:51 a.m., the deposition of

7     SERGEANT KEVIN FIDLER was concluded.)

8                    _____

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1    STATE OF CALIFORNIA      )
                               )     ss.
 2    COUNTY OF KERN           )

 3

 4          I, Sylvia Mendez, a Certified Shorthand
 5    Reporter in the State of California, holding
 6    Certificate No. 7636, RPR, do hereby certify that
 7    SERGEANT KEVIN FIDLER, the witness named in the
 8    foregoing deposition, was by me duly sworn; that said
 9    deposition was taken Friday, September 16, 2016, at the
10    time and place set forth on the second page hereof.
11          That upon the taking of the deposition, the
12    words of the witness were written down by me in
13    stenotype and thereafter transcribed by computer under
14    my supervision; that the foregoing is a true and
15    correct transcript of the testimony given by the
16    witness.
17          I further certify that I am neither counsel
18    for, nor in any way related to any party to said
19    action, nor in any way interested in the result or
20    outcome thereof.
21          Dated this 6th day of October, 2016, at
22    Bakersfield, California.
23

24                          _____

                            Sylvia Mendez, CSR No. 7636, RPR
25
```

# EXHIBIT G

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

KENT WILLIAMS, )
)
        Plaintiff, )      Case No.
)
    vs. )   1:14-CV-01955-JLT
)
CITY OF BAKERSFIELD, )
OFFICER COLEMAN, OFFICER )
McCARTHY, and DOES 1 to )
100, inclusive, )
)
        Defendants. )
_____)


VIDEOTAPED DEPOSITION OF:

    SERGEANT JOSEPH EDWARD GRUBBS

    MONDAY, MAY 2, 2016

    1:29 P.M.


Reported By: Sylvia Mendez, CSR No. 7636, RPR

```
 1   Videotaped Deposition of SERGEANT JOSEPH EDWARD GRUBBS,
 2   the Witness, taken on behalf of the Plaintiff, on
 3   Monday, May 2, 2016, 1:29 p.m., at the Law Offices of
 4   Marderosian & Cohen, 1200 Truxtun Avenue, Suite 130,
 5   Bakersfield, California, before Sylvia Mendez,
 6   CSR No. 7636, RPR, pursuant to Notice of Taking
 7   Deposition.
 8
 9                    APPEARANCES OF COUNSEL
10
11   For the Plaintiff:      Rodriguez & Associates
                             By:  JOEL ANDREESEN
12                           Attorney at Law
                             2020 Eye Street
13                           Bakersfield, California  93301
                             (661) 323-1400
14
15
16   For the Defendants:     Marderosian & Cohen
                             By:  MICHAEL G. MARDEROSIAN
17                           Attorney at Law
                             1260 Fulton Mall
18                           Fresno, California  93721
                             (559) 441-7991
19
20
21   The Videographer:       Sylvia Mendez & Associates
                             By:  CHRISTIAN MARTINEZ
22                           330 H Street
                             Suite 1
23                           Bakersfield, California  93304
                             (661) 631-2904
24
25
```

```
 1                        I N D E X

 2

 3   THE WITNESS

 4   SERGEANT JOSEPH EDWARD GRUBBS

 5
```

```
 6   EXAMINATION BY                              Page

 7   Mr. Andreesen                                4

 8

 9

10                     EXHIBIT INDEX

11   Plaintiff's Exhibits                       Marked

12   1 - Fourth Notice of Taking Videotaped Deposition

13        of Sergeant Joe Grubbs                    9

14   2 - Bakersfield Police Department

15        General Offense Hardcopy                  29

16   3 - News article entitled "Police Release

17        Bakersfield Vice Principal Who Had Gun

18        on Campus"                                32

19

20

21                         VIDEO

22                    Tape      Page

23                     1          4

24

25
```

```
 1                BAKERSFIELD, CALIFORNIA;

 2           MONDAY, MAY 2, 2016; 1:29 P.M.;

 3        LAW OFFICES OF MARDEROSIAN & COHEN

 4

 5        (Videotape No. 1)                              01:28

 6           THE VIDEOGRAPHER:  Good afternoon.  Here

 7   begins -- here begins Media No. 1, Volume I, in the

 8   deposition of Sergeant Joe Grubbs in the matter of

 9   Williams vs. City of Bakersfield.  This case is pending

10   in the United States District Court, Eastern District   01:28

11   of California.  The case number is 1:14-CV-01955-JLT.

12           Today's date is Monday, May 2, 2016, and the

13   time on the video monitor is 1:29 p.m.

14           My name is Christian Martinez.  I am a

15   certified legal video specialist, and I represent      01:28

16   Sylvia Mendez & Associates of Bakersfield, California,

17   and Depovision of Bakersfield and Santa Barbara,

18   California.

19           This video deposition is taking place at the

20   Offices of Marderosian & Cohen, 1200 Truxtun Avenue,   01:29

21   Suite 130, Bakersfield, California, and was noticed by

22   the Plaintiff.

23           The certified shorthand reporter is

24   Sylvia Mendez-Sala.

25           Would counsel, please, introduce yourselves   01:29
```

```
1   for the record and state whom you represent.
2           MR. ANDREESEN:  Joel Andreesen, representing
3   the Plaintiff, Kent Williams.
4           MR. MARDEROSIAN:  Good afternoon.  My name is
5   Mick Marderosian.  I represent the Defendants, the City
6   of Bakersfield, uh, and the Bakersfield Police
7   Department and its individual officers named in this
8   lawsuit.
9           We're here presenting Joe Grubbs as the
10  deponent, pursuant to Notice by the Plaintiff.
11          THE VIDEOGRAPHER:  Thank you.
12          Would the court reporter, please, swear in
13  the witness.
14
15          SERGEANT JOSEPH EDWARD GRUBBS,
16  called as a witness by counsel for the Plaintiff,
17  having been first duly sworn, testified as follows:
18
19          THE VIDEOGRAPHER:  Please proceed.
20
21                  EXAMINATION
22  BY MR. ANDREESEN:
23      Q.  Can you, please, tell us your full name.
24      A.  Joseph Edward Grubbs.
25      Q.  And, sir, have you had your deposition taken
```

01:29

01:29

01:30

01:30

01:30

1    he, a CCW permit holder, could not have a firearm on
2    the school campus.
3    BY MR. ANDREESEN:
4        Q.  And at some point during the investigation,
5    was Mr. Williams asked if he had a CCW permit?          01:49
6        A.  Yes.
7        Q.  And did he show that to you, to any officers
8    there?
9        A.  I can't say how exactly that happened.  I can
10   say, when I got to the school, I had knowledge, and I    01:49
11   don't know exactly.  I think Officer Cole- --
12   Senior Officer Coleman told me that he had a CCW
13   permit.  So that was not a question.
14       Q.  Did you at some time, while you were at the
15   school, read the Penal Code section?                     01:50
16       A.  Yes.
17       Q.  And while you were at the school, did you
18   talk with anybody else about your interpretation of
19   that Penal Code section?
20       A.  Oh, I think Senior Officer Coleman and I        01:50
21   talked about it, yes.
22       Q.  Did you notify Mr. Williams, yourself, that
23   he was going to be placed under arrest?
24       A.  I don't think so.  I think Officer Coleman
25   did.                                                     01:50

SYLVIA MENDEZ & ASSOCIATES - (661) 631-2904

22

```
 1   STATE OF CALIFORNIA      )
                              )        ss.
 2   COUNTY OF KERN           )

 3

 4          I, Sylvia Mendez, a Certified Shorthand
 5   Reporter in the State of California, holding
 6   Certificate No. 7636, RPR, do hereby certify that
 7   JOSEPH EDWARD GRUBBS, the witness named in the
 8   foregoing deposition, was by me duly sworn; that said
 9   deposition was taken Monday, May 2, 2016, at the time
10   and place set forth on the second page hereof.
11          That upon the taking of the deposition, the
12   words of the witness were written down by me in
13   stenotype and thereafter transcribed by computer under
14   my supervision; that the foregoing is a true and
15   correct transcript of the testimony given by the
16   witness.
17          I further certify that I am neither counsel
18   for, nor in any way related to any party to said
19   action, nor in any way interested in the result or
20   outcome thereof.
21          Dated this 25th day of May, 2016, at
22   Bakersfield, California.
23
24          _____
                 Sylvia Mendez, CSR No. 7636, RPR
25
```