DANIEL RODRIGUEZ, ESQ., SBN 096625
JOEL T. ANDREESEN, ESQ., SBN 152254
CHANTAL A. TRUJILLO, ESQ., SBN 289493
**RODRIGUEZ & ASSOCIATES**
**A PROFESSIONAL LAW CORPORATION**
2020 Eye Street
Bakersfield, CA 93301
Tel. No.: (661) 323-1400
Fax No.: (661) 323-0132

Attorneys for Plaintiff
KENT WILLIAMS

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENT WILLIAMS, | Case No. 1:14-CV-01955-JLT |
| Plaintiff, | **PLAINTIFF'S SEPARATE STATEMENT FILED CONCURRENTLY HEREIN IN SUPPORT OF OPPOSITION TO SUMMARY JUDGMENT OR IN THE ALTERNATIVE SUMMARY ADJUDICATION** |
| vs. | |
| CITY OF BAKERSFIELD, OFFICER COLEMAN, OFFICER McCARTHY and DOES 1 to 100, Inclusive, | |
| Defendants. | **Date: February 13, 2017**<br>**Time: 8:30 a.m.**<br>**Courtroom: #4** |
| | **Hon. Jennifer L. Thurston** |

| UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| **1. The Panama Buena Vista Union School District, including Tevis, has a gun free zone policy which prohibits the possession of unauthorized fire arms within 1,000 feet of school grounds without the permission of school authorities.**<br><br>Supporting Evidence<br><br>Deposition of Kent Williams ("Williams Depo."), pp. 20:23-21:4, Exhibit A to the accompanying Declaration of Michael G. Marderosian ("MGM Decl."); Deposition of Geraldine Kincaid ("Kincaid Depo."), pp. 11:20-13:6, Exhibit B to MGM Decl.; School Board Policy (Exhibits 4 and 5 of Kincaid Depo.), Exhibit B to MGM Decl.; Deposition of Eric Johnson ("Johnson Depo."), p. 17:16-23, Exhibit C to MGM Decl. | **UNDISPUTED.** |
| **2. When he applied for his concealed weapons permit, the Plaintiff was under psychiatric care and had a medical marijuana card but did not disclose either of these things on his application for his concealed weapons permit**.<br><br>Supporting Evidence<br><br>Williams Depo., pp. 10:15-11:23; 12:8-13:5; 14:2-18; 20:15-17, Exhibit A to MGM Decl.; Deposition of Royce Haislip ("Haislip Depo"), pp. 5:4-25; 2:7-3; 4:23-6:6-24; 8:14; 10:10-13, Exhibit D to MGM Decl.; Deposition of James Anton ("Anton Depo."), pp. 11:14-15:10, 17:9-19:10, 27:15-28:1, Exhibit E to MGM Decl. | OBJECTION. Irrelevant as the Officers were unaware of what was disclosed or not disclosed on Williams' application at the time of arrest and do not foreclose the ability to obtain a CCW.<br><br>Misstates the evidence; Assumes Facts not in evidence; Lacks Foundation; Speculation; Improper opinion.<br><br>Further, The term "psychiatric care" is vague.<br><br>**DISPUTED.**<br><br>**See Haislip Depo. pp. 15:21- 16:22, 20:17-21:11; Ma Depo. pp. 23:18-24:2.** |
| **3. Mr. Williams did not inform his supervisors at the school district that he** | OBJECTION. Irrelevant as Mr. Williams' violation of a school board policy does not rise |

| | |
|---|---|
| was bringing the loaded gun with him to school and did not get permission from the School District or his supervisors to have a gun on campus.<br><br>Supporting Evidence<br><br>Williams Depo., pp. 21:16-18, 30:8-21, Exhibit A to MGM Decl.; Kincaid Depo., pp. 22:25-23:19, Exhibit B to MGM Decl.; Deposition of Paul Coons ("Coons Depo."), p. 21:2-4, Exhibit F to MGM Decl. | to the level of a punishable offense by the Penal Code.<br><br>**Otherwise undisputed.** |
| **4. Mr. Williams showed Mr. Johnson the loaded gun that was in his backpack and told Mr. Johnson that he always has his gun with him and that Mr. Williams "will get them before they get" him.**<br><br>Supporting Evidence<br><br>Williams Depo., pp. 16:12-17:15, Exhibit A to MGM Decl.; Johnson Depo., pp. 10:14-13:9, Exhibit C to MGM Decl. | OBJECTION. Irrelevant as Mr. Williams' violation of a school board policy does not rise to the level of a punishable offense by the Penal Code.<br><br>**Otherwise undisputed.** |
| **5. Approximately 10-12 days later, Mr. Johnson reported this to a school administrator, Randy Miller, who then reported it to Geraldine Kinkaid, the assistant superintendent of educational services for the School District.**<br><br>Supporting Evidence<br><br>Williams Depo., pp. 16:12-17:12, Exhibit A to MGM Decl.; Kinkaid Depo., pp. 5:21-6:3, 20:6-21:5, Exhibit B to MGM Decl.; Johnson Depo., p. 15:20-16:6, Exhibit C to MGM Decl. | OBJECTION. Irrelevant as Mr. Williams' violation of a school board policy does not rise to the level of a punishable offense by the Penal Code.<br><br>**Otherwise undisputed.** |
| **6. Days before the incident that gives rise to this lawsuit, Mr. Williams told school principal, Paul Coons, that he was on suicide watch after having a rough day and that he had started counseling again for depression because Mr. Williams was** | OBJECTION. Irrelevant as the fact as phrased is irrelevant to the theories encompassed by the SAC as to Defendants or the issues raised in Defendants' MSJ. Further, this statement did not occur on the day of the incident. Fed. R. Evid. 402. |

PLAINTIFF'S SEPARATE STATEMENT FILED CONCURRENTLY HEREIN IN SUPPORT OF OPPOSITION TO SUMMARY JUDGMENT OR IN THE ALTERNATIVE SUMMARY ADJUDICATION

- 3-

| | |
|---|---|
| "messed up" in the head. When he made the statement about being messed up in the head, Mr. Williams proceeded to put his fingers to his temple and make a noise like a gun.<br><br>Supporting Evidence<br><br>Williams Depo., p. 30:22-31:14, Exhibit A to MGM Decl.; Coon Depo., pp. 8:14-11:13, Exhibit F to MGM Decl. | **Otherwise undisputed.** |
| **7. On August 28, 2014, Panama- Buena Vista Union School District Assistant Superintendent, Geraldine Kincaid was informed by Randy Miller what he had been told by Mr. Johnson about Mr. Williams.**<br><br>Supporting Evidence<br><br>Kincaid Depo., pp. 20:6- 21:5, Exhibit B to MGM Decl. | OBJECTION. Irrelevant as the fact as phrased is irrelevant to the theories encompassed by the SAC as to Defendants or the issues raised in Defendants' MSJ. Further, the statement by Mr. Williams did not occur on the day of the incident. Fed. R. Evid. 402.<br><br>**Otherwise undisputed**. |
| **8. Ms. Kincaid indicated to Officer Coleman that Mr. Williams said something to the effect that he "would get them before they" got him.**<br><br>Supporting Evidence<br><br>Coleman Depo., pp. 16:18-18:12, Exhibit G to MGM Decl. | OBJECTION. Double Hearsay and Misstates the Evidence**.**<br><br>**DISPUTED.**<br><br>**Kincaid Depo. p. 38:6-15.** |
| **9. Ms. Kincaid was concerned about Mr. Williams having a gun on campus because weapons are not permitted on campus.**<br><br>Supporting Evidence<br><br>Kincaid Depo., p. 22:11-24, Exhibit B to MGM Decl. | OBJECTION. Irrelevant as Mr. Williams' violation of a school board policy does not rise to the level of a punishable offense by the Penal Code.<br><br>**Otherwise undisputed.** |
| **10. Officer Coleman immediately contacted his Sergeant, Joseph Grubbs, and explained the conversation he had had** | **DISPUTED.**<br><br>**Coleman Depo. p.19:1-21.** |

| | |
|---|---|
| with Ms. Kincaid. Sergeant Grubbs informed Officer Coleman to get to the school immediately to determine if Mr. Williams did, in fact, have a gun.<br><br>Supporting Evidence<br><br>Coleman Depo., pp. 16:18-18:12, Exhibit G to MGM Decl. | |
| **11. Officer Coleman informed Mr. Williams that they were on campus because of a call that he might have a gun. Officer Coleman noticed a backpack approximately two feet away from where Mr. Williams was sitting.**<br><br>Supporting Evidence<br><br>Coleman Depo., pp. 16:18-24:20, Exhibit G to MGM Decl. | **UNDISPUTED.** |
| **12. Officer Coleman asked Mr. Williams if he had a firearm and Mr. Williams said he did and indicated it was in the backpack.**<br><br>Supporting Evidence<br><br>Coleman Depo., pp.16:18-24:20, Exhibit G to MGM Decl. | **UNDISPUTED.** |
| **13. Mr. Williams leaned over causing the officers to believe he intended to get the gun, when Officer Coleman asked if it would be ok if Officer McCarthy retrieved it. Officer McCarthy then reached down and picked up the backpack and took out Mr. Williams's Glock handgun. McCarthy removed the magazine and cleared it to ensure there were no bullets in the chamber.**<br><br>Supporting Evidence<br><br>Coleman Depo., pp. 16:18-24:20, Exhibit G to MGM Decl. | **UNDISPUTED.** |

PLAINTIFF'S SEPARATE STATEMENT FILED CONCURRENTLY HEREIN IN SUPPORT OF OPPOSITION TO SUMMARY JUDGMENT OR IN THE ALTERNATIVE SUMMARY ADJUDICATION

- 5-

| | |
|---|---|
| **14. Officer Coleman told Mr. Williams that he was not under arrest but that he was being detained while they figured everything out.**<br><br>Supporting Evidence<br><br>Coleman Depo., pp. 16:18-24:20, Exhibit G to MGM Decl. | **DISPUTED.**<br><br>**See Darbee Depo. pp. 9:10-18; 18:2-6; 39:24-40:5.** |
| **15. Officer Coleman then stepped out of Mr. Williams' office and about that time, Ms. Kincaid and another school official arrived. The three of them then went into Principal Coon's office.**<br><br>Supporting Evidence<br><br>Coleman Depo., pp. 16:18-24:20. | **UNDISPUTED** |
| **16. Officer Coleman confirmed Mr. Williams had a firearm, which caused serious concern for school officials and the Bakersfield Police Officers.**<br><br>Supporting Evidence<br><br>Coleman Depo., pp. 16:18-24:20, Exhibit G to MGM Decl.; Coons Depo., pp. 20:19-21:1, Exhibit F to MGM Decl. | **UNDISPUTED** |
| **17. Mr. Coon communicated to Officer Coleman Mr. Williams' comments about being on "suicide watch" and about "being messed up in the head and made the same gesture of a gun with his fingers that Mr. Williams had made.**<br><br>Supporting Evidence<br><br>Coons Depo., pp. 8:14-9:13, 28:18-23, Ehxibit F to MGM; Coleman Depo., pp. 16:18-24:20, Exhibit G to MGM Decl. | **UNDISPUTED** |
| **18. Ms. Kincaid advised the officers that** | |

PLAINTIFF'S SEPARATE STATEMENT FILED CONCURRENTLY HEREIN IN SUPPORT OF OPPOSITION TO SUMMARY JUDGMENT OR IN THE ALTERNATIVE SUMMARY ADJUDICATION

- 6-

| | |
|---|---|
| **Mr. Williams was violating the School Board's policy by having a gun on campus and that he had not received permission to have a gun on campus.**<br><br>Supporting Evidence<br><br>Kincaid Depo., p. 37:3-6, Exhibit B to MGM Decl.; Deposition of Joseph Grubbs ("Grubbs Depo."), p. 18:4-17, Exhibit I to MGM Decl. | **UNDISPUTED** |
| **19. Sergeant Grubbs indicated that he was on his way and that he had researched Penal Code 626.9 very clearly numerous times in his career and that Kent Williams would still be in violation for having a firearm on school grounds.**<br><br>Supporting Evidence<br><br>Coleman Depo., pp.16:18-24:20, Exhibit G to MGM Decl. | OBJECTION. Hearsay and Misstates Testimony.<br><br>**Otherwise UNDISPUTED.** |
| **20. Sergeant Grubbs then arrived a short time later. He and Officer Coleman went to the office with Gerrie Kincaid. Officer Coleman explained what had been done to that point and then Sergeant Grubbs directed Officer Coleman to go into Mr. Williams' office and advise him of his Miranda rights.**<br><br>Supporting Evidence<br><br>Coleman Depo., pp.16:18-24:20, Exhibit G to MGM Decl. | **UNDISPUTED.** |
| **21. It was Sergeant Grubbs that made the decision that Mr. Williams was going to be arrested following his review of the Penal Code and his belief that a concealed weapons permit was not included in Cal. Penal Code 626.9.**<br><br>Supporting Evidence | **DISPUTED.**<br><br>**See Person Person Most Knowledgeable Fidler Depo., at pp.39:4-40:6; Darbee Depo. pp. 9:10-18;18:2-6; 39:24-40:5; Grubbs Depo. p.22:22-25; Coleman Depo. p. 19:4-7; 22:8 – 23:11;** |

PLAINTIFF'S SEPARATE STATEMENT FILED CONCURRENTLY HEREIN IN SUPPORT OF OPPOSITION TO SUMMARY JUDGMENT OR IN THE ALTERNATIVE SUMMARY ADJUDICATION

- 7-

| | |
|---|---|
| Coleman Depo, pp. 31:11-32:15, Exhibit G to MGM Decl., Grubbs Depo., pp. 21:11-22:16, 44:8-15, 46:13-47:3, 47:16-22, Exhibit I to MGM Decl. | **26:13-24.** |
| **22. Officer Coleman did as he was instructed by his supervisor and advised Mr. Williams of his Miranda rights.**<br><br>Supporting Evidence<br><br>Coleman Depo, pp. 6:18-24:20, Exhibit G to MGM Decl. | **UNDISPUTED** |
| **23. Officer Coleman then went to speak with Mr. Williams about his comments to Mr. Coons about being suicidal and Mr. Williams indicated that he was taking anxiety medication but did not feel like hurting himself.**<br><br>Supporting Evidence<br><br>Coleman Depo., pp. 16:18-24:20, Exhibit G to MGM Decl. | **UNDISPUTED** |
| **24. Officer Coleman was concerned about Mr. Williams getting out of jail and then going home and using one of his other guns to harm himself.**<br><br>Supporting Evidence<br><br>Coleman Depo., p. 16:18-24:20, Exhibit G to MGM Decl.** | **UNDISPUTED** |
| **25. Officer Coleman then asked Mr. Williams if he would mind if someone went to his home to get the other guns.**<br><br>Supporting Evidence<br><br>Coleman Depo., p.16:18-24:20, Exhibit G to MGM Decl. | **UNDISPUTED** |
| **26. Mr. Williams gave the Bakersfield** | |

PLAINTIFF'S SEPARATE STATEMENT FILED CONCURRENTLY HEREIN IN SUPPORT OF OPPOSITION TO SUMMARY JUDGMENT OR IN THE ALTERNATIVE SUMMARY ADJUDICATION

- 8-

| | |
|---|---|
| **police officers consent to go to his home to get his other guns. This consent was given freely and voluntarily.**<br><br>Supporting Evidence<br><br>Williams Depo., pp. 32:6-33:3, Exhibit G to MGM Decl. | **UNDISPUTED** |
| **27. The Plaintiff did not feel threatened or intimidated.**<br><br>Supporting Evidence<br><br>Williams Depo., pp. 35:18-36:3, Exhibit G to MGM Decl. | **UNDISPUTED** |
| **28. Ms. Kincaid wanted the gun gone and needed Mr. Williams to not be on campus until the issue had been resolved.**<br><br>Supporting Evidence<br><br>Kincaid Depo., pp. 37:7-19, 48:17-20, Exhibit B to the MGM Decl. | **UNDISPUTED** |
| **29. The Plaintiff was arrested and incarcerated for approximately six hours, which included time spent getting medical clearance from Kern County Medical Center. The officers did not perform a body cavity search and did not hit, kick, or used force that caused bruising or other injury to the Plaintiff.**<br><br>Supporting Evidence<br><br>Williams Depo., pp. 23:16-24, 24:24-25:12, 42:22-43:1, Exhibit A to MGM Decl.; Coleman Depo., pp. 38:8-39:25, Exhibit G to MGM Decl. | **UNDISPUTED** |
| **30. At approximately 4 p.m., Officer Coleman contacted Sergeant Grubbs and expressed that he thought there may have been an issue with the arrest. Sergeant** | **UNDISPUTED** |

PLAINTIFF'S SEPARATE STATEMENT FILED CONCURRENTLY HEREIN IN SUPPORT OF OPPOSITION TO SUMMARY JUDGMENT OR IN THE ALTERNATIVE SUMMARY ADJUDICATION

- 9-

| | |
|---|---|
| **Grubbs and Officer Coleman reviewed the Penal Code again and found that there could be an exception in regard to not having a gun on school campus if the individual possessed a valid concealed weapons permit.**<br><br>Supporting Evidence<br><br>Grubbs Depo., pp. 25:6-27:1; 30:5-14, Exhibit I to MGM Decl. | |
| **31. At that time, Sergeant Grubbs directed Officer Coleman to make arrangements to have Mr. Williams released.**<br><br>Supporting Evidence<br><br>Grubbs Depo., pp. 27:3-5, 27:13-18, Exhibit I to MGM Decl. | **UNDISPUTED** |
| **32. Williams was then released and no charges were filed.**<br><br>Supporting Evidence<br><br>Williams Depo., p 23:16-24, Exhibit A to MGM Decl.; Coleman Depo., pp. 38:8-39:25, Exhibit G to MGM Decl. | **UNDISPUTED** |
| **33. After Mr. Williams was released, Sergeant Grubbs attempted to telephone Mr. Williams at least twice in an effort to arrange for the return of his guns, which requires a particular process established by the Department of Justice. Mrs. Williams was also given a receipt which specifically directed Mr. Williams to contact the property room regarding release of his property.**<br><br>Supporting Evidence<br><br>Grubbs Depo., pp. 39:11-40:8, Exhibit I to MGM Decl.; Receipt, Exhibit K to MGM | **UNDISPUTED** |

PLAINTIFF'S SEPARATE STATEMENT FILED CONCURRENTLY HEREIN IN SUPPORT OF OPPOSITION TO SUMMARY JUDGMENT OR IN THE ALTERNATIVE SUMMARY ADJUDICATION

- 10-

| | |
|---|---|
| Decl. | |
| **34. Mr. Williams has still not submitted the required paperwork so that his guns may be returned.**<br><br>Supporting Evidence<br><br>City of Bakersfield's Responses to Requests for Production of Documents Set No. 1, Exhibit J to MGM Decl. | **UNDISPUTED** |
| **35. When a law enforcement agency seizes a firearm, it issues the possessor a receipt describing the firearm and any serial or other identification on the firearm and the process for seeking the firearm's return. Cal. Penal Code § 33800. A claimant seeking its return must submit an application to the CalDOJ that includes identifying information about the claimant and descriptive information (make, model, serial number, etc.) about the firearm. Cal. Penal Code § 33850. The CalDOJ must respond within 30 days. Id. § 33865(b). It performs a background check to be sure the claimant is eligible for the firearm's return. Id. § 33865(a). (An example of a person not eligible for a firearm's return is a convicted felon.) If the claimant is eligible, then the CalDOJ notifies the applicant and includes a description of the firearm by make, model, and serial number. If the firearm is not a handgun and does nothave this identifying information, the notice says that. If it is a handgun (and after January 1, 2014, any firearm), the CalDOJ ā[\*11] record of it into AFS. Id. § 33865(c) and (d).**<br><br>**Only owners or legal possessors of a firearm are entitled to its return. Id. § 33855. The CalDOJ uses the make, model, and serial number to see if the firearm is** | **UNDISPUTED** |

| | |
|---|---|
| recorded in the CalDOJ's Automated Firearms System ("AFS") and whether AFS shows that the claimant is the owner. Id. § 33865(c), 33855(b). Some guns, such as long guns, are not required to be registered in AFS, and so the CalDOJ cannot determine their ownership from AFS. Id. § 28100(b)(3). If the gun is recorded in AFS in the name of an otherwise eligible person who seeks its return, it is returned. Id. § 33855(b). Officer McCarthy provided Tina Williams with a property receipt for the weapons which could have been used by Plaintiff to request the return of his weapons pursuant to this procedure.<br><br>Supporting Evidence<br><br>McCarthy Depo., p. 36:13-21, Exhibit H to MGM Decl., Receipt, p. 15 of 17, Exhibit K to MGM Decl. | |
| **36.** Following this incident, the Plaintiff's permit to carry a concealed weapon was suspended and then ultimately revoked by the Kern County Sheriff's Department because the Sheriff's Department determined that Mr. Williams should have disclosed on his application, but failed to disclose, that he had sought help for mental health or depression and had been taking Paxil and that he had a medical marijuana recommendation and had smoked marijuana three times a week.<br><br>Supporting Evidence<br><br>Haislip Depo., pp. 5:4-25, 6:7-7:2, 8:23-9:17, 10:24-12:14, 14:10-13, Exhibit D to MGM Decl.; Anton Depo., pp. 11:14-19:10, 17:9-19:10, 27:15-28:1, Exhibit E to MGM Decl. | **UNDISPUTED.** |
| **37.** In response to discovery seeking all facts to support Plaintiff's first cause of action against the City of Bakersfield, the | **UNDISPUTED** |

PLAINTIFF'S SEPARATE STATEMENT FILED CONCURRENTLY HEREIN IN SUPPORT OF OPPOSITION TO SUMMARY JUDGMENT OR IN THE ALTERNATIVE SUMMARY ADJUDICATION

- 12-

| | |
|---|---|
| **Plaintiff simply responded that:**<br><br>**Defendant City of Bakersfield instructed and allowed its employees, more specifically Officers Coleman and McCarthy to detain, arrest, and then book me knowing I had not committed a crime and without reasonable suspicion.**<br><br>Supporting Evidence<br><br>Plaintiff's Responses to Special Interrogatories, Set One, propounded by Defendant City of Bakersfield, Interrogatory No. 1, Exhibit L to MGM Decl. | |
| **38. In response to discovery seeking all facts to support Plaintiff's second cause of action against the City of Bakersfield, the Plaintiff simply responded that:**<br><br>**Defendants knew I had not committed a crime, and did not have reasonable suspicion of such. Further Defendants knew I had a CCW but seized my Glock anyway. Finally, Defendants went to my home and seized the guns I legally owned that were stored in my safe. Defendants did this by misleading my wife saying I authorized their entry and seizure of my guns. Defendants did this without reasonable suspicion, probable cause, warrant, and without consent.**<br><br>Supporting Evidence<br><br>Plaintiff's Responses to Special Interrogatories, Set One, propounded by Defendant City of Bakersfield, Interrogatory No. 5, Exhibit L to MGM Decl. | **UNDISPUTED** |
| **39. In response to discovery seeking all facts to support Plaintiff's third cause of action against the City of Bakersfield, the Plaintiff simply responded that:**<br><br>**Defendants knew I had not committed a** | **UNDISPUTED** |

PLAINTIFF'S SEPARATE STATEMENT FILED CONCURRENTLY HEREIN IN SUPPORT OF OPPOSITION TO SUMMARY JUDGMENT OR IN THE ALTERNATIVE SUMMARY ADJUDICATION

- 13-

| | |
|---|---|
| crime, and did not have reasonable suspicion of such. Further Defendants knew I had a CCW but seized my Glock anyway. Finally, Defendants went to my home and seized the guns I legally owned that were stored in my safe. Defendants did this by misleading my wife saying I authorized their entry and seizure of my guns. Defendants did this without reasonable suspicion, probable cause, warrant, and without consent.<br><br>Supporting Evidence<br><br>Plaintiff's Responses to Special Interrogatories, Set One, propounded by Defendant City of Bakersfield, Interrogatory No. 9, Exhibit L to MGM Decl. | |

## ADDITIONAL CONTESTED MATERIAL FACTS

| CONTESTED MATERIAL FACT | EVIDENCE |
|---|---|
| Plaintiff's Second Amended Complaint alleges, and for the purposes of the pending Motion Defendants do not contest, that at the time of Plaintiff's arrest:<br><br>(a) Plaintiff held "a valid license to carry the firearm pursuant to Chapter 4 (commencing with Section 26150) of Division 5 of Title 4 of Part 6" within the meaning of California Penal Code § 626.9(l);<br><br>(b) Plaintiff informed Defendants | Second Amended Complaint. Coleman Depo., at 19:4-7; 22:8 – 23:11; 26:13-24. Further, School Security Guard William Darby testified that: (a) he had worked for the Bakersfield Police Department "just shy of 20 years" (see Darbee Depo., at 9:10-17); and (b) he knew it was not illegal for Plaintiff to have a gun on campus (see Darbee Depo., at 17:19 – 18:6); Person Most Knowledgeable Fidler Depo., at pp.39:4-40:6. |

|   |   |
|---|---|
| | he had such a license; |
| (c) | Plaintiff presented a copy of such license to Defendants; |
| (d) | Defendants had a copy of the then applicable statute, California Penal Code § 626.9; and |
| (e) | Defendants knew at the time of the incident as to how to read and interpret the California Penal Code, such as California Penal Code § 626.9. |

Dated: January 30, 2017                    RODRIGUEZ & ASSOCIATES


   /s/ Chantal A. Trujillo
  Chantal A. Trujillo
  Attorneys for Plaintiff

PLAINTIFF'S SEPARATE STATEMENT FILED CONCURRENTLY HEREIN IN SUPPORT OF OPPOSITION TO SUMMARY JUDGMENT OR IN THE ALTERNATIVE SUMMARY ADJUDICATION

- 16-