**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KENT WILLIAMS,<br><br>    Plaintiff,<br><br>    v.<br><br>CITY OF BAKERSFIELD, et al.,<br><br>    Defendants. | Case No.: 1:14-cv-001955 - JLT<br><br>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

Kent Williams asserts that Bakersfield Police Officers Coleman and McCarthy and the City of Bakersfield are liable for violations of his civil rights and California law. Defendants argue Plaintiff is unable to succeed upon his claims, and seek summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Doc. 45) Because there are no genuine issues of material facts and Defendants' have demonstrated their entitlement to judgment, the motion is **GRANTED**.

**I.     Factual Background[1]**

For approximately five years, Plaintiff "was the vice principal at Tevis Junior High School." (UMF 1) The school district "has a gun free zone policy which prohibits the possession of unauthorized fire arms within 1,000 feet of school grounds without the permission of school

---

[1] The factual background is a summary of the undisputed facts as well as the parties' contentions in the matter. The parties filed a "Joint Statement of Undisputed Material Facts,' which are identified as "UMF." (Doc. 45-2) Facts prepared by Defendants and either admitted by Plaintiff or not disputed by the evidence cited are identified as "Defendants' Separate Fact," or "DSF." (Doc. 45-3; Doc. 49)

1

authorities." (DSF 1)

In December 2013, Plaintiff "applied for and obtained a license to carry a concealed weapon from the Kern County Sheriff's Department because he wanted to protect himself and his family." (UMF 2) After receiving the license, Plaintiff started taking "a loaded Glock pistol to school nearly everyday." (UMF 3) Plaintiff "did not inform his supervisors at the school district that he was bringing the loaded gun with him to school and did not get permission from the School District or his supervisors to have a gun on campus." (DSF 3) At the time, District policy required permission from anyone wishing to bring a gun to school. (Doc. 45-4 at 38-39)

In August 2014, Plaintiff showed his gun to Eric Johnson, another teacher. (UMF 4) When Plaintiff showing Mr. Johnson the gun, Plaintiff "told Mr. Johnson that he always has his gun with him and that [Plaintiff] 'will get them before they get' [Plaintiff]." (DSF 4) Mr. Johnson testified that seeing the gun made him "shocked" and "nervous" and he felt "unsettled" and knowing the gun was on campus was "eating [him] up." (Doc. 45-4 at 52-56)

Several days later, according to Principal Paul Coon, Plaintiff told him that Plaintiff was "Not well" and that he "was on suicide watch last night, I'm really messed up in the head." (Doc. 45-4 at 84-85.) While doing so, he used his fingers to pantomime shooting himself in the head. *Id.* He told Coons that he was beginning counseling. (Doc. 45-4 at 85) As a result of this exchange, Coon was "concerned." (Doc. 45-4 at 86) A few days later, "Mr. Johnson reported [the incident with Plaintiff displaying the gun] to a school administrator, Randy Miller, who then reported it to Geraldine Kincaid, the assistant superintendent of educational services for the School District." (DSF 5)

Ms. Kincaid called Officer Coleman, who acted as a school resource officer, "to report that [Plaintiff] had a gun on campus and that he had displayed the gun to an 'unidentified staff member.'" (UMF 5) Ms. Kincaid told Officer Coleman that Plaintiff said, "I will get them before they get me," when showing the staff member the firearm. (Doc. 45-4 at 94, Coleman Depo. 17:17-21) Coleman informed Ms. Kincaid that he needed to notify his sergeant immediately, and she asked Coleman to not go to the school until she arrived there. (*Id.*, Depo. 17:22-18:4) In response, Officer Coleman told her: "This is a very important thing. You know, let me do what we do." (*Id.*)

Upon hanging up with Ms. Kincaid, Coleman "contacted his Sergeant, Joseph Grubbs, and

explained the conversation he had… with Ms. Kincaid." (DSF 10) Sergeant Grubbs told him "to get to the school immediately to determine if [Plaintiff] did, in fact, have a gun." (*Id.*) Officer Coleman then called Officer McCarthy, who was located at a different school. (Doc. 45-4 at 95-96, Coleman Depo. 18:14-19) The two officers met, and Coleman informed McCarthy "that they needed to get to Tevis." (UMF 6)

Once the officers were near the school, "Officer Coleman did a records check to see if [Plaintiff] had any weapons registered to him and if he had a concealed weapons permit." (UMF 7; Doc. 45-4 at 96, Coleman Depo. 19:4-9) He learned Plaintiff had seven guns and a concealed weapons permit. (*Id.*) The officers then proceeded to the school and went to Plaintiff's office where they informed Plaintiff "they were on campus because of a call that he might have a gun." (UMF 8, 9) "Officer Coleman asked [Plaintiff] if he had a firearm and [Plaintiff] said he did," indicating it was in the backpack approximately two feet away from where he was sitting. (UMF 9, DSF 12) Plaintiff moved in a way that caused the officers to believe he intended to get the gun, and "Officer Coleman asked if it would be ok if Officer McCarthy retrieved it." (DSF 13) Officer McCarthy then picked up the backpack, took out the handgun, removed the magazine, and cleared the weapon. (DSF 13)

When Officer Coleman stepped out of Plaintiff's office, Ms. Kinkaid and another school official were present. (DSF 15) Officer Coleman and the two school officials then went to the office of Principal Coon. (*Id.*) Officer Coleman confirmed that Plaintiff had the firearm on campus, "which caused serious concern for school officials and the Bakersfield Police Officers." (DSF 16) Mr. Coon told Officer Coleman that Plaintiff made "comments about being on 'suicide watch' and about 'being messed up in the head.'" (DSF 17) In addition, Mr. Coon "made the same gesture of a gun with his fingers that [Plaintiff] had made" days before, "putting his fingers to his temple." (DSF 6, 17)

"Officer Coleman indicated that he wanted to call his supervisor, Sergeant Grubbs, about what to do since Officer Coleman knew [Plaintiff] had a CCW permit but it was on [the] school campus." (UMF 10) "Officer Coleman asked Sergeant Grubbs what he wanted him to do and Sergeant Grubbs replied that he was going to be there." (UMF 11) In addition, Sergeant Grubbs "asked if Officer Coleman had a Penal Code book in his car and when Officer Coleman confirmed that he did, Sergeant Grubbs directed him to get it." (*Id.*) Sergeant Grubbs also told Officer Coleman that he had researched

3

1 Penal Code § 626.9 "numerous times in his career and that Kent Williams would still be in violation for
2 having a firearm on school grounds."  (DSF 19)  Officer Coleman retrieved the Penal Code book from
3 his trunk, and Sergeant Grubbs "arrived a short time later."  (UMF 12, DSF 20)

4 Once Sergeant Grubbs arrived at the school, "Officer Coleman explained what had been done to
5 that point and then Sergeant Grubbs directed Officer Coleman to go into Mr. Williams' office and
6 advise him of his Miranda rights."  (DSF 20)  Officer Coleman did as instructed and advised Plaintiff
7 of his rights.  (DSF 22)

8 Officer Coleman then spoke to Plaintiff "about his comments to Mr. Coons about being suicidal
9 and [Plaintiff] indicated he was taking anxiety medication but did not feel like hurting himself."  (DSF
10 23) "Officer Coleman was concerned about [Plaintiff] getting out of jail and then going home and using
11 one of his other guns to harm himself."  (DSF 24)  He asked Plaintiff "if he would mind if someone
12 went to his home to get the other guns."  (DSF 25)  Plaintiff "gave the Bakersfield police officers
13 consent to go to his home to get his other guns."  (DSF 26)  Officer McCarthy left the school and "went
14 to the home to retrieve Mr. Williams' additional guns."  (UMF 13)

15 In the course of the arrest, police officers "did a pat down," then handcuffed Plaintiff and
16 transported him to the jail.  (UMF 14)  Plaintiff was "incarcerated for approximately six hours, which
17 included time spent getting medical clearance from Kern County Medical Center."  (UMF 15)

18 "At approximately 4 p.m., Officer Coleman contacted Sergeant Grubbs and expressed that he
19 thought there may have been an issue with the arrest."  (DSF 30)  "Sergeant Grubbs and Officer
20 reviewed the Penal Code again and found that there could be an exception in regard to not having a gun
21 on [a] school campus if the individual possessed a valid concealed weapons permit."  (*Id.*)  "At that
22 time, Sergeant Grubbs directed Officer Coleman to make arrangements to have [Plaintiff] released."
23 (DSF 31)  Plaintiff was released, and Officer Coleman drove Plaintiff home.  (DSF 32, UMF 16)
24 Ultimately, no charges were filed against Plaintiff.  (DSF 32)

25 Plaintiff initiated this action by filing a complaint on February 8, 2014.  (Doc. 1)  Following
26 motions to dismiss, Plaintiff identified the following claims for relief in his Second Amended
27 Complaint: (1) unlawful arrest, seizure and excessive force in violation of the Fourth Amendment; (2)
28 violation of the Second Amendment; (3) deprivation of property without due process in violation of the

Fourteenth Amendment; (4) violation of the Ralph Civil Rights Act, Cal. Civ. Code § 51.7; (5) violation of the Unruh Civil Rights Act, Cal. Civ. Code § 51; (6) violation of the Bane Civil Rights Act, Cal. Civ. Code § 52.1; (7) assault; (8) battery; (9) false arrest/ false imprisonment; (10) possession of personal property; (11) conversion; (12) intentional infliction of emotional distress; and (13) negligence. (*See generally* Doc. 27)

On December 8, 2016, the parties filed a stipulation for the dismissal of several claims, including the sixth, seventh, eighth, and twelfth causes of action. (Doc. 43 at 2) In addition, Plaintiff dismissed the first cause of action for a violation of the Fourth Amendment to the extent it was based upon the use of excessive force. (*Id.*)

Defendants filed the motion for summary judgment now pending before the Court on January 6, 2017. (Doc. 45) Plaintiff filed his opposition to the motion on January 30, 2017, in which he indicated he did not challenge summary adjudication of his claims for violations for the Second Amendment, Fourteenth Amendment, Ralph Civil Rights Act, Unruh Civil Rights Act, wrongful possession of personal property, or conversion. (*See* Doc. 48 at 16-18) Plaintiff contends summary adjudication is not appropriate on his remaining claims for violations of the Fourth Amendment, false arrest, and negligence. (*See generally* Doc. 48 at 7-20)

## II.     Legal Standards for Summary Judgment

The "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsuhita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In addition, Rule 56 allows a court to grant summary adjudication, or partial summary judgment, when there is no genuine issue of material fact as to a particular claim or portion of that claim. Fed. R. Civ. P. 56(a); *see also Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 769 n.3 (9th Cir. 1981) ("Rule 56 authorizes a summary adjudication that will often fall short of a final determination, even of a single claim . . .") (internal quotation marks and citation omitted). The standards that apply on a motion for summary judgment and a motion for summary adjudication are the same. *See* Fed. R. Civ. P. 56 (a), (c); *Mora v. Chem-Tronics*, 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998).

Summary judgment, or summary adjudication, should be entered "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the "initial responsibility" of demonstrating the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323. An issue of fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Wool v. Tandem Computers, Inc.*, 818 F.2d 1422, 1436 (9th Cir. 1987). A party demonstrates summary adjudication is appropriate by "informing the district court of the basis of its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323 (quoting Fed. R. Civ. P. 56(c)).

If the moving party meets its initial burden, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue of a material fact. Fed R. Civ. P. 56(e); *Matsuhita,* 475 U.S. at 586. An opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 587. The party is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that a factual dispute exits. *Id.* at 586 n.11; Fed. R. Civ. P. 56(c). Further, the opposing party is not required to establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Electrical Serv., Inc. v. Pacific Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987). However, "failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

The Court must apply standards consistent with Rule 56 to determine whether the moving party demonstrated there is no genuine issue of material fact and judgment is appropriate as a matter of law. *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993). In resolving a motion for summary judgment, the Court can only consider admissible evidence. *Orr v. Bank of America, NT & SA*, 285

F.3d 764, 773 (9th Cir. 2002) (citing Fed. R. Civ. P. 56(e); *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988)). Further, evidence must be viewed "in the light most favorable to the nonmoving party" and "all justifiable inferences" must be drawn in favor of the nonmoving party. *Orr*, 285 F.3d at 772; *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

### III.     Evidentiary Objections

Pursuant to Rule 56(c) of the Federal Rules of the Civil Procedure, "an affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." *See also Block v. City of Los Angeles*, 253 F.3d 410, 419 (9th Cir. 2001) (holding it was an abuse of discretion for the district court, at the summary judgment stage, to consider information from an affidavit based on inadmissible hearsay rather than the affiant's personal knowledge).

In addition, the Federal Rules of Evidence provide that a witness may not testify unless "the witness has personal knowledge of the matter." Fed. R. Evid. 602. A lay witness may testify only as to those opinions or inferences that are "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701.

To the extent the Court has relied upon any evidence to which Plaintiff objects on hearsay grounds, the Court has determined the statement was offered not for the truth of the matter asserted, but rather to explain the actions taken by Officers Coleman and McCarthy. For example, Plaintiff objects to the statement by Ms. Kinkaid that Plaintiff "said something to the effect that he 'would get them before they' got him," arguing the statement is double hearsay.[2] (Doc. 49 at 4) However, the statement is offered to support Officer Coleman's decision to go to the school.

In addition, when evaluating a motion for summary judgment, the court "cannot rely on irrelevant facts, and thus relevance objections are redundant." *Burch v. Regents of the Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006). Likewise, "improper legal conclusions ... are not facts

---

[2] Moreover, of course, the plaintiff's statement is not hearsay. Fed. R. Evid. § 801(d)(2).

7

and likewise will not be considered on a motion for summary judgment." *Id.* Accordingly, the Court has relied only upon any evidence it deems admissible in evaluating the merits of the motion for summary judgment now before the Court.

**IV.    Discussion and Analysis**

    **A.    First Claim for Relief: Violation of the Fourth Amendment under 42 U.S.C. § 1983**

Section 1983 "is a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994). In relevant part, Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

42 U.S.C. § 1983. To establish a Section 1983 violation, a plaintiff must show (1) deprivation of a constitutional right and (2) a person who committed the alleged violation acted under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Williams v. Gorton*, 529 F.2d 668, 670 (9th Cir. 1976).

A plaintiff must allege a specific injury was suffered, and show causal relationship between the defendant's conduct and the injury suffered. *See Rizzo v. Goode*, 423 U.S. 362, 371-72 (1976). A person deprives another of a right "if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do so that it causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

Plaintiff asserts Defendants are liable for a violation of the Fourth Amendment, which prohibits arrests without probable cause or other justification. Specifically, the Fourth Amendment provides: "The right of the people to be secure in their persons. . . against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing . . . the persons or things to be seized." *U.S. Constitution, amend. IV.*

        1.    Liability of the individual officers

Probable cause "exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." *Ramirez v. City of Buena Park*, 560 F.3d 1012, 1023 (9th

Cir. 2009) (quoting *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007)); *see also Conner v. Heiman,* 672 F.3d 1126, 1132 (9th Cir. 2012) (probable cause to arrest exists if, "under the totality of the circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that the defendant had committed a crime"). A plaintiff may succeed on a claim for a seizure in violation of the Fourth Amendment where the arrest is made without probable cause. *Id*.

Under California's Gun-Free School Act, it is a crime to knowingly possess a firearm on a school campus, or with a certain radius of the school. Cal. Penal Code § 626.9. It is undisputed that Officer Coleman and Sergeant Grubbs learned Plaintiff had a firearm on the school campus, made a statement that he was going to "get" unidentified individuals and made a statement to the principal that he was "messed up in the head" and "on 'suicide watch'." (*See* UMF 5, 9, 12-13; DSF 17, 20) Likewise, the officers were aware that Plaintiff had not been granted permission by the school district to bring a gun to school and that Plaintiff was keeping the loaded gun in an unsecured backpack. Accordingly, Sergeant Grubbs directed Officer Coleman to inform Plaintiff of his *Miranda* rights, and he placed Plaintiff under arrest. (*See* DSF 20, 22)

The undisputed facts support the officers' belief that Plaintiff violated Cal. Penal Code § 626.9. However, as Plaintiff argues, at the time of arrest, the officers failed to appreciate there was an exception under the provision for those with a valid permit to carry a concealed weapon. At the time of his arrest, the Gun-Free School Act indicated:

> This section does not apply to a duly appointed peace officer as defined in Chapter 4.5 (commencing with Section 830) of Title 3 Part 2, a full-time paid peace officer of another state or the federal government who is carrying out official duties while in California, any person summoned by any of these officers to assist in making arrests or preserving the peace while he or she is actually engaged in assisting the officer, a member of the military forces of this state or of the United States who is engaged in the performance of his or her duties, <u>a person holding a valid license to carry the firearm pursuant to Chapter 4 (commencing with Section 26150) of Division 5 of Title 4 of Part 6</u>, or an armored vehicle guard, engaged in the performance of his or her duties, as defined in subdivision (e) of Section 7521 of the Business and Professions Code.

Cal. Penal Code § 626.9(l) (as in effect from January 1, 2012 through December 31, 2015) (emphasis added) Because Plaintiff held a valid license to carry the firearm, and the exception to the Gun-Free Zone Act applied, Plaintiff contends the officers did not have probable cause to arrest him and are liable

9

for an unreasonable seizure in violation of the Fourth Amendment. (Doc. 48 at 7-9)

Significantly, the Ninth Circuit has determined in similar circumstances that an arrest for a violation of the Gun-Free School Act was justified under the Fourth Amendment, when the officers' failed to appreciate that an exception to Cal. Penal Code § 626.9. *See Khachatourian v. Hacienda La Puente Unified Sch. Dist.,* 572 Fed. Appx. 556 (9th Cir. 2014) In *Khachatourian*, the plaintiff was a high school teacher. One Saturday, the assistant principal "received information about Plaintiff having brought a gun to the School." *Khachatourian v. Hacienda La Puente Unified Sch. Dist.*, 2012 WL 12877986 *2 (C.D. Cal. Jan. 24, 2012). The following Monday, the assistant principal, district police officer Barba, and a search dog with its handler conducted a search of Khachatourian's classroom. *Id.* In the course of the search, the individuals found a knife and a locked box containing a pistol. *Id.* at *3. Khachatourian confirmed the items belonged to him, after which the police officer seized the knife and gun case and then asked him to go "to the principal's office to discuss the matter." *Id.* During questioning, Khachatourian "asked for and received a copy of the California Penal Code so that he could point out section 626.9(c)(2), the exception to the prohibition against firearms on school campuses." *Id.* After the school administrators concluded their questioning, Officer Barba "informed [Khachatourian] of his *Miranda* rights and placed him under arrest for possession of a firearm on a school campus and possession of a knife on a school campus." *Id.* at *4. The plaintiff was charged with violations of Cal. Penal Code §626.9 and §626.10. *Id.* However, the charge for possessing a firearm on the school campus was dismissed because an exception to Section 626.9 regarding unloaded weapons applied. *Id.*

Based upon these facts, Khachatourian argued Officer Barba was liable for an unlawful arrest in violation of his Fourth Amendment right, and the defendants sought summary judgment on his claim. *Id.*at *12-13. Granting the motion for summary judgment, the court observed:

> Plaintiff argues that the arrest was unlawful because his possession of the firearm was legal under section 626.9(c)(2). **That the charge was eventually dismissed as falling under an exception does not automatically make the arrest unlawful, however**. Police officers are not judges, and must not be held to the same standards of legal interpretation. They must make choices in the field that require them to use their best judgment having only limited amounts of information. Plaintiff contends that the only reason he was arrested was because Defendant Barba ignored the law, but the record reveals otherwise.
>
> "Probable cause for a warrantless arrest arises when the facts and circumstances

10

within the officer's knowledge are sufficient to warrant a prudent person to believe that the suspect has committed ... an offense." *Crowe v. Cnty. of San Diego*, 608 F.3d 406, 432 (9th Cir. 2010). Defendant Barba had probable cause to believe a crime had been committed. **That a subsequent judicial interpretation of the law revealed that Plaintiff qualified for an exception to the general prohibition against firearms on campus does not change the fact that Defendant Barba had probable cause at the time of the arrest to believe that a crime had been committed.** Allowing liability here would have dire consequences for law enforcement.

**Officers cannot effectively perform their official functions if they must worry that the nuances of legal argument may convert a good-faith arrest based on reasonable interpretation of the law into an unlawful seizure under the Fourth Amendment.** That Plaintiff pointed out the law at the scene and requested a copy of the Penal Code does not change the Court's analysis. **Officers should no more fear a legal argument raised by a criminal defendant upon arrest than one raised later in the judicial process. To hold otherwise would encourage suspects to raise frivolous legal arguments while they are being arrested in order to place the arresting officer in fear of civil suit should the case later be dismissed.**

**Officers are not judges and should not be expected to entertain legal argument or conduct a mini-trial prior to making an arrest. Society does not benefit from a system that encourages officers to engage in complex legal analysis at the scene of a potential crime.** The preliminary hearing is meant to address the kinds of issues that officers cannot and should not address in the field. Indeed, in this case, the preliminary hearing accomplished precisely the prophylactic function that it was designed to accomplish. That the preliminary hearing in this case led to dismissal does not automatically vitiate Defendant Barba's probable cause to arrest Plaintiff for possession of a firearm on a school campus. Because officers must make decisions in the field quickly and with limited information, it is possible for an officer to have sufficient probable cause under the Fourth Amendment to arrest a suspect, even if a magistrate later determines that no probable cause exists to charge the suspect after hearing argument from counsel.

*Khachatourian*, 2012 WL 12877986 at *13-14, emphasis added. Affirming the decision of the court, the Ninth Circuit found there was "sufficient probable cause" to arrest Khachatourian, and contrary to his arguments, "a police officer is not required to engage in legal analysis at the scene of arrest." *Khachatourian*, 572 Fed. App'x. at 558 (citing, e.g., *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007)).

Thus, the fact that an exception to the Gun-Free School Zone Act applied to the circumstances at the time of the arrest does not alone support Plaintiff's claim for a violation of the Fourth Amendment. Officer Coleman had a reasonable belief that by possessing weapon on the school campus, Plaintiff had violated California law. Consequently, Officer Coleman had probable cause at the time he placed Plaintiff under arrest, and Plaintiff is unable to satisfy an element of his claim for a violation of the Fourth Amendment by Officer Coleman. *See Ramirez*, 560 F.3d at 1023;

*Khachatourian*, 572 Fed. App'x. at 558.

Moreover, as Defendants note, Plaintiff fails to present any evidence that Officer McCarthy was present when Plaintiff was arrested, and it is undisputed that Officer McCarthy left the school and "went to the home to retrieve Mr. Williams' additional guns" after Plaintiff had granted permission. (UMF 13) Consequently, Plaintiff fails to link Officer McCarthy to his claim that he suffered an unlawful arrest in violation of his Fourth Amendment rights.

Alternatively, under *Devenpeck v. Alford*, 125 S.Ct. 588 (2004), an officer is not liable for a false arrest under the Fourth Amendment unless the officer lacked probable cause to support *any* offense regardless of the offense actually charged or the one in the officer's mind at the time.[3] *Devenpeck* held,

> Our cases make clear that an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause. *See Whren v. United States*, 517 U.S. 806, 812–813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) (reviewing cases); *Arkansas v. Sullivan*, 532 U.S. 769, 121 S.Ct. 1876, 149 L.Ed.2d 994 (2001) (per curiam). That is to say, his subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause. As we have repeatedly explained, " 'the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action.' " *Whren*, *supra*, at 813, 116 S.Ct. 1769 (quoting *Scott v. United States*, 436 U.S. 128, 138, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978)).

*Id*. at 593-594.

Plaintiff argues that it would be a violation of due process for the Court to decide the motion based upon the precedent set forth in *Devenpeck*. (Doc. 53) In making this argument, however, Plaintiff ignores that he was given notice of the applicable legal authority and an opportunity to address it.[4] (Doc. 51) Toward this end, he filed the supplemental brief from which the Court now cites. Moreover, in this instance, the question presented by *Devenpeck* is a legal one, and the *Devenpeck* argument relies upon the evidence already confronted by Plaintiff. Thus, Plaintiff has been afforded all of the process he is due. *Cool Fuel, Inc. v. Connett*, 685 F.2d 309, 312 (9th Cir. 1982).

---

[3] Notably, an officer is not obligated to inform the arrestee of the reason for the arrest. *Devenpeck*, at 595.

[4] Despite taking this position, Plaintiff *actually* cited and relied upon *Devenpeck* in his opposition to the motion. (Doc. 48 at 9)  In doing so, Plaintiff ignored the primary holding of *Devenpeck* that "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest," but "an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause. *Devenpeck* at 152-153.

The defendants argue (Doc. 52) that according to *Devenpeck*, liability may not attach because particular facts support a finding of probable cause for several offenses including child endangerment (California Penal Code § 273), public nuisance (California Penal Code § 370), criminal storage of a firearm (California Penal Code § 25100) and a hold under California's Welfare and Institutions Code § 5150.

California Penal Code section 273 reads,

> (a) **Any person who, under circumstances or conditions likely to produce great bodily harm or death,** willfully causes or permits any child to suffer, or inflicts thereon unjustifiable physical pain or mental suffering, or having the care or custody of any child, willfully causes or permits the person or health of that child to be injured, **or willfully causes or permits that child to be placed in a situation where his or her person or health is endangered**, **shall be punished by imprisonment in a county jail not exceeding one year, or in the state prison for two, four, or six years.**
>
> (b) **Any person who, under circumstances or conditions other than those likely to produce great bodily harm or death**, willfully causes or permits any child to suffer, or inflicts thereon unjustifiable physical pain or mental suffering, or having the care or custody of any child, willfully causes or permits the person or health of that child to be injured, **or willfully causes or permits that child to be placed in a situation where his or her person or health may be endangered, is guilty of a misdemeanor.**

Emphasis added. California Penal Code section 370 reads,

> **Anything which is** injurious to health, or is indecent, or **offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of** life or **property by an entire community or neighborhood, or by any considerable number of persons**, or unlawfully obstructs the free passage or use, in the customary manner, of any navigable lake, or river, bay, stream, canal, or basin, or any public park, square, street, or highway, **is a public nuisance**.

Emphasis added. California Penal Code section 25100 provides,

> [¶¶]
>
> (c) Except as provided in Section 25105, **a person commits the crime of "criminal storage of a firearm in the third degree" if the person keeps any loaded firearm** within any premises that are **under the person's custody or control and negligently stores or leaves a loaded firearm in a location where the person knows, or reasonably should know, that a child is likely to gain access** to the firearm without the permission of the child's parent or legal guardian, unless reasonable action is taken by the person to secure the firearm against access by the child.

Emphasis added. Finally, California Welfare and Institutions Code section 5150 reads,

> (a) **When a person, as a result of a mental health disorder, is a danger to others, or to himself or herself**, or gravely disabled, **a peace officer**, professional person in charge of a facility designated by the county for evaluation and treatment, member of the attending staff, as defined by regulation, of a facility designated by the county for

evaluation and treatment, designated members of a mobile crisis team, or professional person designated by the county **may, upon probable cause, take, or cause to be taken, the person into custody for a period of up to 72 hours for assessment, evaluation, and crisis intervention, or placement for evaluation and treatment in a facility designated by the county for evaluation and treatment and approved by the State Department of Health Care Services**. At a minimum, assessment, as defined in Section 5150.4, and evaluation, as defined in subdivision (a) of Section 5008, shall be conducted and provided on an ongoing basis. Crisis intervention, as defined in subdivision (e) of Section 5008, may be provided concurrently with assessment, evaluation, or any other service.

Emphasis added.

The defendants argue there was probable cause to arrest Plaintiff for any or all of the crimes of child endangerment, public nuisance, unlawful storage of a gun and for a hold under § 5150. They note that Plaintiff kept the loaded gun in the backpack on the floor next to his desk—rather than secured in some manner—and that it was accessible to anyone entering the office. Plaintiff argues that this is insufficient evidence to support a conviction because of the strong showing required for a felony. (Doc. 53 at 5-6) However, of course, § 273 may be charged either as a felony or a misdemeanor. (Cal Pen. Code §§ 273, 25110) Likewise a violation of Penal Code § 370 and § 25100(c) are misdemeanors. (Cal. Pen. Code §§ 372, 25110) Moreover, a showing of probable cause is not equivalent to proof needed for a conviction and the Court need not make a determination whether a conviction would have resulted when evaluating whether probable cause existed.

Rather, the Court agrees that the unsecured gun, loaded hun kept by Plaintiff in the backpack on the floor of his office raises a reasonable inference that students at the school were placed at risk of serious injury or death because of access to the loaded gun. While the Court appreciates that there is no showing that *students* had unfettered access to this office, this type of access is not required for the risk of harm to arise. Rather, all that is required is a reasonable basis to infer that *someone* with evil motives—student or otherwise—could access the gun and the evidence shows this. (Doc. 45-4 at 96-102) Likewise, there need not be an explicit showing as to Plaintiff's mens rea when he left the loaded and unsecured gun in an unsecured backpack in an unsecured office. This showing can be implied through the plaintiff's conduct.

These same facts support probable cause for the unlawful storage of a gun under § 25100(c). The plaintiff kept an loaded gun where students could conceivably gain access to it. Whether a

conviction could result is a different analysis from evaluating whether probable cause existed.

Plaintiff does not specifically address whether there was probable cause to support an arrest for public nuisance. However, the evidence demonstrates that Eric Johnson, Geraldine Kincaid and Paul Coon were all seriously distressed about the gun on campus such to interfere with the enjoyment of the school. It is reasonable to assume that had others—particularly the parents of the students—been aware of the unsecured, loaded gun kept in backpack on the floor of Plaintiff's office, the entire school community would have been distressed by the knowledge and this would have interfered with the learning environment. An officer is not obligated to conduct this type of survey before determining whether there is probable cause to believe that there was a public nuisance.

Finally, Plaintiff does not dispute that by his own words, there was reason to believe he was suffering serious mental agitation and, though he denied being a danger to himself to the officers, his mere denial alone does not necessarily mitigate the danger. Coupled with his failure to obtain permission to have the gun on campus despite the well-known fact that bringing a gun absent the permission was a "no-no" (Doc. 45-4 at 53), his poor judgment in allowing the loaded gun to be accessible, leaving the backpack in an unsecured location, his statement a few days earlier that he was "on suicide watch" and pantomiming shooting himself in the head and indicating he was going "to get them first," the defendants have met their burden of demonstrating are articulable facts to which a reasonable officer could point as evidence of probable cause for the § 5150 hold. *Bias v. Moynihan*, 508 F.3d 1212, 1220 (9th Cir. 2007).

Though the Court relies upon *Khachatourian* to determine the defendants are entitled to judgment, the Court also finds there was probable cause for the officers to arrest Plaintiff under a criminal charge.

2. Liability of the City

Municipalities or other governmental bodies may be sued as a "person" under Section 1983 for the deprivation of federal rights. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). However, a local government unit may not be held responsible for the acts of its employees under a theory of respondeat superior. *Monell*, 436 U.S. at 691. Rather, a local government entity may only be held liable if it inflicts the injury of which a plaintiff complains. *Gibson v. County of Washoe*, 290 F.3d

15

1175, 1185 (9th Cir. 2002). Consequently, a plaintiff succeeds on a claim under Section 1983 against a government entity when its policy or custom is the cause of a deprivation of federal rights. *Id.* at 694.

Significantly, Plaintiff fails to demonstrate that a violation of his Fourth Amendment right because there was probable cause at the time of his arrest. Because there is no constitutional violation, Plaintiff is unable to succeed upon his claim against the City of Bakersfield.

### 3. Qualified Immunity

Defendants contend Officer Miller is entitled to qualified immunity, which protects government officials from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The doctrine of qualified immunity "balances two important interests — the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

The threshold inquiry to a qualified immunity determination is whether the facts alleged, when taken in the light most favorable to the plaintiff, demonstrate that the official's conduct violated a statutory or constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If the alleged conduct would not be considered a violation, the inquiry stops and the defense of qualified immunity applies. *See id.* However, if a constitutional violation occurred, the Court must next determine whether the statutory or constitutional right was "clearly established." *Id.* Defendant has the burden to prove that he is entitled to qualified immunity. *Moreno v. Baca,* 431 F.3d 633, 638 (9th Cir.2005).

As discussed above, Plaintiff fails to demonstrate the officers' conduct violated his constitutional rights. Consequently, the defense of qualified immunity applies to his claims against Officers Coleman and McCarthy. Defendants' motion for summary judgment on Plaintiff's claim for a violation of his Fourth Amendment right is **GRANTED**.

### B. Ninth Cause of Action: False Arrest/False Imprisonment

False imprisonment is defined by statute as "the unlawful violation of the personal liberty of another." Cal. Pen. Code. § 236. The tort is defined similarly and consists of the "nonconsensual, intentional confinement of a person, without lawful privilege, for an appreciable length of time,

however short." *Molko v. Holy Spirit Assoc.*, 46 Cal.3d 1092, 1123 (1988). "The only mental state required to be shown for false imprisonment is the intent to confine, or to create a similar intrusion." *Fermino v. FedCo. Inc.*, 7 Cal.4th 701, 716 (1994).

To state a cognizable claim for false imprisonment, Plaintiff must state facts showing either that he was unlawfully arrested and then imprisoned or that an unreasonable delay occurred in presenting the arrestee before a judge. *City of Newport Beach v. Sasse*, 9 Cal.App.3d 803, 810 (1970). However, there is no liability for an officer "acting within the scope of his or her authority, for false arrest or false imprisonment arising out of any arrest" when (1) the arrest was lawful, or the officer had reasonable cause to believe the arrest was lawful at the time of the arrest, or (2) the arrest was made pursuant to a charge made, upon reasonable cause, of the commission of a felony by the person to be arrested. Cal. Pen. Code. § 847.

The evidence does not support a claim for false imprisonment or arrest. Plaintiff does not show the officers were acting outside the scope of their duties at the time of his arrest, that the arrest was unlawful, or that the officers did not have a reasonable belief that the arrest was lawful at the time he was arrested. To the contrary, as set forth above, Officer Coleman and Sergeant Grubbs believed that Plaintiff had violated California's Gun -Free Zone Act and, as noted above, there was probable cause to believe he had violated a different criminal statute by having a loaded, unsecured weapon on the school campus. Accordingly, Defendants' motion for summary adjudication of the ninth cause of action for false arrest/false imprisonment is **GRANTED**.

  **C.** **Thirteenth Cause of Action: Negligence**

To establish a claim for negligence, Plaintiff "must establish four required elements: (1) duty; (2) breach; (3) causation; and (4) damages." *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1203 (9th Cir. 2003). In general, "the plaintiff must show that the defendant owed a duty to the plaintiff." *See John B. v. Superior Court*, 38 Cal. 4th 1177, 1188 (2006).

    1. Liability of the Officers

Plaintiff's negligence theory is based on the same set of facts giving rise to his Fourth Amendment claim. Public employees—including police officers—generally owe no greater duty to members of the public than that owed by private persons. Cal. Gov't Code § 820. Absent a statutorily

imposed duty providing otherwise, a police officer owes no duty to a member of the public unless that "officer voluntarily assumes a duty to provide a particular level of protection, and then fails to do so, or . . . undertakes affirmative acts that increase the risk of harm to [that member of the public]." *Zelig v. County of Los Angeles*, 27 Cal. 4th 1112, 1129 (citations omitted).

Federal cases are "instructive" in deciding whether an officer's actions are reasonable. *See Brown v. Ransweiler*, 171 Cal.App.4th 516, 534 (2009). Under *Brown*, the Court's conclusions regarding Plaintiff's Fourth Amendment claim are equally applicable in addressing his negligence claim. *See id.* 171 Cal. App. 4th at 534; *see also Young v. County of Los Angeles*, 655 F.3d 1156, 1170 (9th Cir. 2011).

Because the Court finds the officers acted reasonably such to avoid Fourth Amendment liability, Plaintiff cannot prevail on a claim that the officers acted unreasonably for purposes of a negligence cause of action. *Brown* at 534. Consequently, the officers are entitled to judgment on this claim.

### 2. Liability of the City

In the compliant, Plaintiff asserts the City is also liable for negligence. (*See* Doc. 27 at 27-28) Under California law, a "public entity is not liable for an injury," "[e]xcept as otherwise provided by statute." Cal. Gov't Code § 815. "[D]irect tort liability of public entities must be based on a specific statute declaring them to be liable, or at least creating some specific duty of care, and not on the general tort provisions of Civil Code section 1714." *Eastburn v. Regional Fire Protection Authority*, 31 Cal. 4th 1175, 1183 (2003). "Otherwise, the general rule of immunity for public entities would be largely eroded by the routine application of general tort principles." *Id.* (citations omitted). As the California Supreme Court observed, "the intent of the Tort Claims Act is not to expand the rights of plaintiffs in suits against governmental entities, but to confine potential governmental liability to rigidly delineated circumstances[.]" *Zelig v. Cty. of Los Angeles*, 27 Cal. 4th 1112, 1127 (2002).

As Defendants observe, Plaintiff does not identify a specific statute that serves as a basis for his negligence claim against the City. (*See* Doc. 27 at 27-28) Indeed, under California law, "no state statute sets forth a duty of care with respect to the supervision, training, retention, or discipline of [police] officers." *Jaramillo v. City of San Mateo*, 76 F.Supp.3d 905, 926 (N.D. Cal. 2014 ); *see also Munoz v. City of Union City*, 120 Cal. App. 4th 1077, 1111-15 (2004) (reversing judgment against city

for "negligence in the selection, training, retention, supervision and discipline of police officers" and finding no "statutory basis" for the asserted duty of care). However, public entities can also be vicariously liable for injuries caused by their employees. Cal. Gov't Code § 815.2.

Plaintiff argues that the City "has statutory respondeat superior liability under section 815.2(a) not only for the conduct the individual defendants…, but also for the negligent conduct of non-defendant Sergeant [Joe] Grubbs." (Doc. 48 at 17) (citing *Becerra v. County of Santa Cruz*, 68 Cal.App.4th 1450, 1461-62, n.5 (1998). As Plaintiff notes, under Section 815.2:

> A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative.

(*Id.* at 19, quoting Cal. Gov't Code § 815.2(a))

Importantly, Sergeant Grubbs had the same information as Officer Coleman when he directed Officer Coleman to inform Plaintiff of his *Miranda* rights. Sergeant Grubbs knew Plaintiff made comments regarding his mental health—including "being on suicide watch" and "being messed up in the head"—and pantomimed pointing a gun to his head. In addition, Sergeant Grubbs was informed that Plaintiff made the comment, "I will get them before they get me," when showing the staff member the firearm and knew the plaintiff had not sought or obtained permission from the school officials to have the gun at school. Finally, Sergeant Grubbs knew Plaintiff had a loaded weapon on campus in an unsecured backpack. Though Sergeant Grubbs was wrong in his understanding of the law, as noted above, the Ninth Circuit Court of Appeals has found that an officer owes no duty to arrestees to conduct an analysis to determine whether there are exceptions or defenses to the charges for which he may be arrested. *Khachatourian*, 572 Fed. App'x. at 558.

Because Plaintiff fails to show the City is directly liable for negligence or that Sergeant Grubbs' actions would give rise to a claim against him, Defendants' motion for summary adjudication is **GRANTED** on the thirteenth cause of action.

## V. Conclusion and Order

Because the evidence demonstrates the officers had a reasonable belief that Plaintiff had violated California's Gun-Free Zone Act, Defendants have carried their burden to show an absence of a

genuine issue of material fact on the claims remaining in dispute. Accordingly, summary judgment is appropriate. *See Celotex*, 477 U.S. at 323.

Based upon the foregoing, the Court **ORDERS:** Defendants' motion for summary judgment (Doc. 45) is **GRANTED**.

IT IS SO ORDERED.

Dated: **March 3, 2017**              /s/ Jennifer L. Thurston
                                        UNITED STATES MAGISTRATE JUDGE